IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACE American Insurance Company, a Pennsylvania corporation, and ACE Property & Casualty Insurance Co., a Pennsylvania corporation<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Target Corporation ("Target"), for its Complaint against Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co. (collectively, "ACE"), states and alleges as follows:

## INTRODUCTION

1.   This is a civil action for breach of contract and declaratory relief. In December 2013, Target discovered that a hacker had installed malicious software on its computer network ("Data Breach"). The Data Breach enabled the attacker to steal payment card data and personal contact information, thus rendering the related physical payment cards unusable. As a result, numerous banks were required to dedicate substantial resources to cancelling and reissuing physical payment cards. These costs include, for example, the cost of producing the plastic card, mailing the card to consumers, and

otherwise reissuing the physical card. Those banks subsequently sued Target for their losses, including the losses directly caused by the replacement of the physical cards. Target was able to settle all of the claims, including the claim for the replacement of physical payment cards.

2. ACE insures Target against such settlements under a general liability policy that provides coverage for losses because of property damage, defined to include "loss of use of tangible property that is not physically injured." That is precisely this case. Target was held liable for the loss of use of plastic payment cards that were not physically injured.

3. Target provided notice to ACE and has provided detailed accounting of this loss. Despite the clear existence of coverage, ACE nevertheless denied the claim and has refused to pay it.

4. This action is necessary because Defendant has denied coverage for these losses. Plaintiff seeks declaratory relief, compensatory damages, and other relief that may be available.

**PARTIES**

5. Target is a corporation organized and existing under the laws of the state of Minnesota with its principal place of business in Minneapolis, Minnesota.

6. Upon information and belief, Defendant ACE American Insurance Company is a corporation organized and existing under the laws of the state of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and is in the business of providing liability insurance.

7.   Upon information and belief, Defendant ACE Property & Casualty Insurance Co. is a corporation organized and existing under the laws of the state of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and is in the business of providing liability insurance.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332(a)(2), in that the action is between a citizen of Minnesota and citizens of a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.   This Court has jurisdiction over the person of ACE American Insurance Company, in that at all times relevant, it has engaged in business activities within the state of Minnesota and has otherwise purposefully availed itself of this jurisdiction.

10.   This Court has jurisdiction over the person of ACE Property & Casualty Insurance Co., in that at all times relevant, it has engaged in business activities within the state of Minnesota and has otherwise purposefully availed itself of this jurisdiction.

11.   Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the transactions, acts, and/or omissions giving rise to the causes of action asserted herein occurred within the state of Minnesota.

12. An actual justiciable controversy between Target and ACE exists within the meaning of 28 U.S.C. § 2201 regarding whether ACE has a duty to indemnify Target with respect to the claims described below.

## GENERAL LIABILITY POLICIES SOLD TO TARGET

13. ACE issued two general liability policies to Target covering this loss (collectively, the "ACE Policies").

14. ACE issued a general liability policy bearing policy number G27017381 to Target for the policy period February 1, 2013, to February 1, 2014 (the "Primary Policy"). A true and correct copy of the Primary Policy is attached as Exhibit A.

15. The Primary Policy provides broad coverage for liability claims brought against Target relating to its operations. The insuring clause states:

> We will pay the insured for the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies.

16. The Primary Policy defines "property damage" to mean:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

17. The Primary Policy has a $4.5 million per-occurrence limit of liability, with each occurrence subject to a retained limit of $500,000, and a total general aggregate limit of $50 million.

18. Target purchased layers of excess liability insurance above the Primary Policy. The first two layers of excess insurance, each with a $25 million limit of liability, were issued by National Union Fire Insurance Company of Pittsburgh, Pa., bearing policy number 20562027, and by XL Insurance America, Inc., bearing policy number US00064829LI13A.

19. In addition, ACE issued a third-layer excess general liability policy bearing policy number G27048985 to Target for the policy period February 1, 2013 to February 1, 2014 (the "Excess Policy"). A true and correct copy of the ACE Excess Policy is attached as Exhibit B. The Excess Policy also has a $25 million limit of liability.

20. The Excess Policy provides similarly broad coverage for liability claims brought against Target relating to its operations. The insuring agreement states, in pertinent part:

> We will pay, on your behalf, "loss" arising out of an "occurrence" but only after all "underlying insurance" has been exhausted by the payment of the limits of such insurance for covered injury or damage that takes place during our policy period.

21. The Excess Policy defines "loss" to mean:

> [T]he amount paid or payable in cash in the settlement or satisfaction of claims or suits for which the insured is liable, either by adjudication or compromise with our written consent, after making proper deduction for all recoveries and salvages. . . .

22. The Excess Policy defines "occurrence" as follows:

> "Occurrence" in this policy will follow the definition of "occurrence" as defined in the first policy of "underlying insurance" in effect as of the inception date of this policy.

23. The first policy of underlying insurance is the National Union Policy described above. That policy defines "occurrence" to mean "an accident . . . which results in . . . Property Damage neither expected nor intended from the standpoint of the Insured." That policy further defines Property Damage, in pertinent part, as "[l]oss of use of tangible property that is not physically injured."

24. The Excess Policy has a $25 million per-occurrence limit of liability, which attaches in excess of two underlying insurance policies with limits of $25 million each.

25. The policies of insurance underlying the Excess Policy have been exhausted.

## DISPUTED CLAIMS

26. In December 2013, Target discovered that a hacker had installed malicious software on its computer network, resulting in the Data Breach. The Data Breach enabled the attacker to steal payment card data and personal contact information for millions of Target customers, exposing those customers to the risk of fraudulent transactions on their payment card accounts. Once alerted to the Data Breach, Target promptly contained the attack and notified its customers.

27. Target also faced claims from third parties based on the Data Breach. These included claims by payment card networks; claims by financial institutions; and claims by consumers.

28. Several of the financial institutions that issued payment cards affected by the breach ("Issuing Banks") filed class action lawsuits against Target, which were consolidated, along with various consumer suits, before Judge Paul Magnuson in the United States District Court for the District of Minnesota, in *In re: Target Corporation*

*Customer Data Sec. Breach Litig., All Financial Institutions Cases*, MDL No. 14-2522 ("Issuing Banks Litigation").

29. In the Issuing Banks Litigation, the class members alleged damages resulting from the cost of replacing payment cards that had been potentially compromised as a result of the Breach. The Issuing Banks claimed that, as a result of the Data Breach, the physical payment cards associated with compromised accounts could no longer be used. They further claimed that, as a result of the Data Breach, they were forced to dedicate significant resources to cancelling and reissuing these physical payment cards. The Issuing Banks also sought damages for the cost of credit card fraud arising out of the Data Breach that was perpetrated on particular customers, for which Target does not seek indemnity from ACE in this action.

30. In May 2016, Target reached a settlement in the class action lawsuit brought on behalf of a class of Issuing Banks for approximately $58 million, which the district court approved.

31. In addition to settling the class action litigation, Target reached confidential settlements with the major card issuers, including Visa, MasterCard, American Express, and Discover (the "Card Brands"), as well as numerous individual Issuing Banks.

32. In total, Target settled all of these claims for approximately $138 million, of which approximately $118 million was paid to the Issuing Banks. The remaining $20 million was paid in attorneys' fees and class representative payments.

33. At least $74 million of this payment was made to settle the Issuing Banks' claims for the costs associated with replacing payment cards that they alleged had been compromised as a result of the Data Breach (the "Payment Card Claims").

34. The above losses represent a subset of Target's total losses related to the Data Breach. While some of Target's losses related to the Data Breach were paid for or reimbursed by insurers, none of the Payment Card Claims at issue in this litigation were reimbursed by, paid by, or otherwise satisfied by insurers.

## ACE'S WRONGFUL DENIAL OF COVERAGE

35. On January 14, 2014, promptly after the filing of the Issuing Banks Litigation, pursuant to and in accordance with the terms and conditions of the ACE Policy, Target provided notice to ACE of liability claims made against Target in the Issuing Banks Litigation, including the claims for the costs associated with replacing payment cards that had been potentially compromised as a result of the Data Breach.

36. The Issuing Banks Litigation sought damages for, among other things, loss of use of tangible property (i.e., physical plastic payment cards) that, while not physically injured, could not be used without risk to the customer and the bank.

37. The claims made by the Card Brands and Issuing Banks sought damages for the loss of use of tangible property (i.e., physical plastic payment cards) that, while not physically injured, were not able to be used without risk to the customer and the bank.

38. These claims are squarely within the definition and scope of the ACE Policies and are not otherwise excluded by the ACE Policies.

39. On March 24, 2014, ACE denied coverage for the Payment Card Claims.

40. Beginning in 2014, Target has communicated both orally and in writing with ACE, explaining in detail why the Payment Card Claims are, in fact, covered under the terms of the ACE Policy, and has requested that ACE withdraw its written denials of coverage and indemnify Target for its settlement payments with respect to the Payment Card Claims.

41. ACE has refused to acknowledge coverage for the Payment Card Claims and has further disregarded its contractual obligation to indemnify Target for the settlement payments relating to the Payment Card Claims. ACE has improperly refused to indemnify Target for settlement payments falling within its aggregate coverage layer.

42. Because Target's covered settlement payments are sufficient to exhaust Target's retained limit and the ACE Policy's general aggregate limit, and because ACE has refused to indemnify Target for such costs, this matter is ripe for adjudication.

## COUNT I
## DECLARATORY JUDGMENT AS TO THE ACE PRIMARY POLICY

43. Target restates and realleges the facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

44. There is a genuine and bona fide dispute and an actual controversy and disagreement between Target and ACE regarding whether ACE has a duty to indemnify Target for the Payment Card Claims.

45. Target has fully complied with all of the terms and conditions of the Primary Policy relating to the Payment Card Claims and all other claims tendered to ACE.

46. ACE has improperly denied coverage for the Payment Card Claims, which are covered under the Primary Policy, and has improperly refused to indemnify Target for settlement payments relating to the Payment Card Claims.

47. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, Target requests that the Court issue a judicial declaration that the Payment Card Claims are covered under the Primary Policy, and that ACE was and is obligated to indemnify Target for settlement payments relating to the Payment Card Claims within ACE's aggregate coverage layer.

## COUNT II
## BREACH OF CONTRACT OF THE ACE PRIMARY POLICY

48. Target restates and realleges the facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

49. Target has fully complied with all of the terms and conditions of the Primary Policy relating to the Payment Card Claims and all other claims tendered to ACE.

50. ACE has refused and continues to refuse to indemnify Target for settlement payments relating to the Payment Card Claims. ACE's refusal to indemnify Target with respect to such settlement payments constitutes a breach of the Primary Policy.

51. ACE's breach has proximately caused Target harm for which Target is entitled to damages exceeding $75,000.

## COUNT III
## DECLARATORY JUDGMENT AS TO THE ACE EXCESS POLICY

52. Target restates and realleges the facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

53. There is a genuine and bona fide dispute and an actual controversy and disagreement between Target and ACE regarding whether ACE has a duty to indemnify Target for the Payment Card Claims.

54. Target has fully complied with all of the terms and conditions of the Excess Policy relating to the Payment Card Claims and all other claims tendered to ACE.

55. ACE has improperly denied coverage for the Payment Card Claims, which are covered under the Excess Policy, and has improperly refused to indemnify Target for settlement payments relating to the Payment Card Claims.

56. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, Target requests that the Court issue a judicial declaration that the Payment Card Claims are covered under the Excess Policy, and that ACE was and is obligated to indemnify Target for settlement payments relating to the Payment Card Claims within ACE's aggregate coverage layer.

## COUNT IV
## BREACH OF CONTRACT OF THE ACE EXCESS POLICY

57. Target restates and realleges the facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

58. Target has fully complied with all of the terms and conditions of the Excess Policy relating to the Payment Card Claims and all other claims tendered to ACE.

59. ACE has refused and continues to refuse to indemnify Target for settlement payments relating to the Payment Card Claims. ACE's refusal to indemnify Target with respect to such settlement payments constitutes a breach of the Excess Policy.

60. ACE's breach has proximately caused Target harm for which Target is entitled to damages exceeding $75,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Target respectfully prays for relief as follows:

1. That the Court declare that the Payment Card Claims are covered under the Primary Policy, and that ACE was and is obligated to indemnify Target for settlement payments relating to the Payment Card Claims that were incurred within the Primary Policy's aggregate coverage layer;

2. That the Court declare that the Payment Card Claims are covered under the Primary Policy, and that settlement payments relating to the Payment Card Claims do properly exhaust Target's retained limit;

3. That the Court declare that the Payment Card Claims are covered under the Excess Policy, and that ACE was and is obligated to indemnify Target for settlement payments relating to the Payment Card Claims that were incurred within the Excess Policy's aggregate coverage layer;

4. That the Court declare that the Payment Card Claims are covered under the Excess Policy, and that the settlement payments relating to the Payment Card Claims do properly exhaust the aggregate limits of the policies underlying the Excess Policy;

5. That the Court enter a judgment against ACE for the settlement payments relating to the Payment Card Claims that were incurred in ACE's aggregate coverage layers;

6. Prejudgment interest at the maximum legal rate;

7.   Special and incidental damages resulting from ACE's breach of contract in an amount to be determined at trial;

8.   Attorney's fees, costs, and disbursements incurred in obtaining the benefits due under the ACE Policies;

9.   Interest on such attorney's fees, costs, and disbursements; and

10.  That the Court award such other relief as the Court may deem to be just, fair, and equitable under the circumstances of this case.

Dated: November 15, 2019

Respectfully submitted,

*/s/ John B. Lunseth II*
John B. Lunseth II (#065341)
Mira Vats-Fournier (#0399692)
BRIGGS AND MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612-977-8400
Fax: 612-977-8650
Email: jlunseth@briggs.com

Of counsel:

David B. Goodwin
Gretchen Hoff Varner
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Fax: (415) 591-6091

*Attorneys for Plaintiff*
*Target Corporation*

## JURY TRIAL DEMAND

Target Corporation hereby demands a jury trial on all issues so triable.

Dated: November 15, 2019       Respectfully submitted,

*[signature]*

John B. Lunseth II (#065341)
Mira Vats-Fournier (#0399692)
BRIGGS AND MORGAN, P.A.
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone: 612-977-8400
Fax: 612-977-8650
Email: jlunseth@briggs.com

Of counsel:

David B. Goodwin
Gretchen Hoff Varner
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Fax: (415) 591-6091

*Attorneys for Plaintiff*
*Target Corporation*