# Exhibit A



**ace usa**

# Excess Liability

*Policy*

XS-605140   Printed in U.S.A.



**ACE Group**
ACE American Insurance Company
436 Walnut Street
P. O. Box 1000
Philadelphia, PA 19106-3703
(a stock insurance company)

# Excess Commercial
# General Liability Policy
# Declarations

POLICY IDENTIFICATION

| XSL | G27017381 |

**NAME INSURED**

Target Corporation
1000 Nicollet Mall
Minneapolis, MN 55403

**PRODUCER**

CODE: 174016          COMM: Nil
AON Risk Services Central Inc
200 E Randolph Street
Chicago, IL 60601

---

POLICY IS: Renewal                OF   XSL G26438305

NAMED INSURED IS: Corporation                    other _____

BUSINESS OF INSURED:   Department Stores

POLICY PERIOD:     FROM 02/01/2013     TO   02/01/2014
                   12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

---

## PREMIUM COMPUTATION AND PAYMENT CONDITIONS

AUDIT PERIOD:        **Annual**, unless otherwise stated: ☐ Semi-Annual  ☐ Quarterly ☐

---

TOTAL ADVANCE PREMIUM (including surcharges):     ███████

Refer to Surcharge Schedule for surcharge amounts.  No surcharge applies in Puerto Rico.

COUNTERSIGNED: _____     BY: _____
                                                     (Authorized Representative)

XS-6U88e (06/10)

## LIMITS OF INSURANCE

In return for the payment of premium indicated on Page 1 of the Declarations, we agree with you to provide insurance at the limits shown, subject to all of the terms and conditions of this policy.

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 50,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 9,000,000 |
| EACH OCCURRENCE LIMIT | $ 4,500,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ 4,500,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 4,500,000 |

## RETAINED LIMIT

| | |
|---|---|
| EACH OCCURRENCE | $ 500,000 |
| PERSONAL AND ADVERTISING INJURY | $ 500,000 |

FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION:

SCHEDULE OF COVERAGE

| | |
|---|---|
| ALL20887 | ACE Producer Compensation Practices & Policies |
| ILP0010104 | U.S. Treasury Department's Office of Foreign Assets Control |
| XS6U91d | Excess Commercial General Liability Policy |
| ALL4X07 | An Important Notice To Our Alaska Policyholders |
| ALL2Y31b | Arkansas Notice to Policyholders |
| ALL22368 | Colorado Fraud Statement |
| ALL5X45 | Questions About Your Insurance? |
| ALL30152 | Important Information to Idaho Policyholders Regarding Your |
| ALL34772 | Illinois Notice to Policyholders Regarding the Religious |
| ALL18653b | Questions About Your Insurance? (IL) |
| ALL2Y81 | Indiana Notice To Policyholders |
| ALL6X08a | Notice To Our New Mexico Policyholders |
| ALL23445a | Policyholder Notice Commercial Lines Deregulation New York |
| ALL5W06 | Policyholder Notice - Ohio |
| ALL2U78b | Notice To All Oklahoma Policyholders |
| All5S54 | Notice To Pennsylvania Property and Casualty Insurance |
| ALL4Y30b | Information and Complaints (TX) |
| ALL11559d | Risk Control Services for Texas Policyholders |
| ALL7X47a | Important Information to Virginia Policyholders Regarding Your |
| ALL5X51a | Wisconsin Notice to Policyholders |

SCHEDULE OF FORMS AND ENDORSEMENTS

| Endt. No. | Form No. | Description |
|---|---|---|
| 1. | ▮▮▮▮ | Additional Insured - ▮▮▮▮▮▮▮▮▮▮, |
| 2. | ▮▮ | Additional Insured - ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 3. | ▮▮ | Additional Insured - ▮▮▮▮▮▮▮▮ |
| 4. | ▮▮▮ | Additional Insured - ▮▮▮▮▮ |
| 5. | XS6W34 | Waiver of Transfer of Rights of Recovery Against Others To Us |
| 6. | MS113300213 | Schedule of Named Insured Endorsement (without joint ventures) |
| 7. | ALL22421-3 | Surcharge Schedule |
| 8. | MS113310213 | Reimbursement of Deductible Endorsement Allocated Loss |
| 9. | MS113320213 | Amended Contract Definition |
| 10. | MS113330213 | Building Contractors Endorsement |
| 11. | MS113340213 | City of Omaha - Retractable of Fixed Awnings |
| 12. | MS113350213 | City of Omaha - Sign, Canopy or Clock Maintenance |
| 13. | MS113360213 | Definition of Bodily Injury |
| 14. | MS113370213 | Definition of Personal and Advertising Injury |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes the above numbered policy.

FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION:

| Endt. No. | Form No. | Description |
|-----------|----------|-------------|
| 15. | MS113380213 | Druggists - Broadened Coverage |
| 16. | MS113390213 | Employee Benefits Liability Coverage |
| 17. | MS113470213 | Employed Lawyers Coverage |
| 18. | MS113400213 | General Policy Amendatory Endorsement |
| 19. | MS113630213 | Liquor Liability Coverage |
| 20. | MS113410213 | Pedicabs |
| 21. | MS113420213 | Pollution Exclusion - Combination Exception Time Element and |
| 22. | MS113430213 | Professional Liability Insurance Endorsement (Errors And |
| 23. | MS113440213 | Pro Rata Defense, Investigation, Settlement, And Legal |
| 24. | MS113450213 | Threat Scare Endorsement |
| 25. | MS113460213 | Underlying Coverage Erodes Retention Endorsement |
| 26. | LD20283-1 | Amendment of Duties in the Event of Occurrence |
| 27. | LD20036 | Incidental Medical Malpractice Liability Coverage |
| 28. | LD2X62a-1 | Unintentional Failure to Disclose |
| 29. | A1123684 | Cap on Losses From Certified Acts of Terrorism |
| 30. | ALL18845a | Difference in Conditions/Difference in Limits |
| 31. | ALL32677 | Kentucky Local Government Premium Tax Schedule |
| 32. | ALL10617a | Earlier Notice of Cancellation and Non-Renewal Endorsement |
| 33. | ALL18057-1 | Notification of Premium Adjustment |
| 34. | ███████████ | ████████ Additional Insured Endorsement |
| 35. | ██████ | Additional Insured - ████████████████████ |
| 36. | █████ | Additional Insured ████████████████████████ |
| 37. | ████████ | Additional Insured ██████████████████████████ |
| 38. | XS20722a | Alienated Premises Endorsement |
| 39. | XS6W32a-1 | Amendment of Contractual Liability Exclusion for Personal |
| 40. | XS21221 | Care, Custody and Control |
| 41. | XS29885 | Employee Benefits Liability Reimbursement of Deductible |
| 42. | XS18358 | Extended Property Damage |
| 43. | XS21225 | Fellow Employee Coverage |
| 44. | XS18357a | Fire, Explosion, Smoke and Water Damage Legal Liability |
| 45. | XS21226a | Knowledge of Occurrence |
| 46. | XS21227 | Nonowned Watercraft Exception |
| 47. | TRIA11b | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 48. | ALL21101 | Trade or Economic Sanctions Endorsement |
| 49. | ALL5X26 | Alaska Changes - Attorneys Fees |
| 50. | LD2S50b | Alaska Changes - Cancellation and Nonrenewal |
| 51. | LD2S52b | Arkansas Changes - Cancellation and Nonrenewal |
| 52. | LD2S51B | Arizona Changes - Cancellation and Nonrenewal |
| 53. | LD2S53c | California Changes - Cancellation and Nonrenewal |
| 54. | LD2S54a | Colorado Changes - Cancellation and Nonrenewal |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes the above numbered policy.

_____

_____

FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION:

| Endt. No. | Form No. | Description |
|---|---|---|
| 55. | LD2S55 | Connecticut Changes - Cancellation and Nonrenewal |
| 56. | LD2S56a | District of Columbia Changes - Cancellation and Nonrenewal |
| 57. | LD3S08a | Delaware Changes - Cancellation and Nonrenewal |
| 58. | LD2S57b | Florida Changes - Cancellation and Nonrenewal |
| 59. | LD2S58c | Georgia Changes - Cancellation and Nonrenewal |
| 60. | LD2S59a | Hawaii Changes - Cancellation and Nonrenewal |
| 61. | LD2S63 | Iowa Changes - Cancellation and Nonrenewal |
| 62. | LD2S60C | Idaho Changes - Cancellation and Nonrenewal |
| 63. | LD2S61a | Illinois Changes - Cancellation and Nonrenewal |
| 64. | LD2S62a | Indiana Changes - Cancellation and Nonrenewal |
| 65. | LD2S64a | Kansas Changes - Cancellation and Nonrenewal |
| 66. | LD2S65a | Kentucky Changes - Cancellation and Nonrenewal |
| 67. | LD2S66c | Louisiana Changes - Cancellation and Nonrenewal |
| 68. | LD2S68B | Maryland Changes-Cancellation, Nonrenewal |
| 69. | LD2S67a | Maine Changes - Cancellation and Nonrenewal |
| 70. | LD2S69D | Michigan Changes - Cancellation and Nonrenewal |
| 71. | LD2S70a | Minnesota Changes - Cancellation and Nonrenewal |
| 72. | XS22360 | Minnesota Changes Endorsement |
| 73. | LD2S72c | Missouri Changes - Cancellation and Nonrenewal |
| 74. | LD2S71a | Mississippi Changes - Cancellation and Nonrenewal |
| 75. | LD2S73E | Montana Amendatory Endorsement |
| 76. | LD2S78b | North Carolina Changes - Cancellation and Nonrenewal |
| 77. | LD2S79d | North Dakota Changes - Cancellation and Nonrenewal |
| 78. | LD2S74a | Nebraska - Cancellation and Nonrenewal |
| 79. | LD2S75b | New Hampshire Changes - Cancellation and Nonrenewal |
| 80. | LD2S76 | New Jersey Changes - Cancellation and Nonrenewal |
| 81. | LD10247 | New Mexico Changes - Cancellation and Nonrenewal |
| 82. | LD3S07a | Nevada Changes - Cancellation and Nonrenewal |
| 83. | ALL25213 | New York Changes |
| 84. | LD2S77c | New York Changes - Cancellation and Nonrenewal |
| 85. | LD2S80C | Ohio Changes-Cancellation and Nonrenewal |
| 86. | LD2S81C | Oklahoma Changes - Cancellation and Nonrenewal |
| 87. | LD2S82a | Oregon Changes - Cancellation and Nonrenewal |
| 88. | LD2S83a | Pennsylvania Changes - Cancellation and Nonrenewal |
| 89. | LD2S85b | Rhode Island Changes - Cancellation and Nonrenewal |
| 90. | LD2S86B | South Carolina Changes-Cancellation, Nonrenewal |
| 91. | LD2S87B | South Dakota Changes - Cancellation and Nonrenewal |
| 92. | LD2S88a | Tennessee Changes - Cancellation and Nonrenewal |
| 93. | LD2S89a | Texas - Cancellation and Nonrenewal Provisions |
| 94. | LD2S90b | Utah Changes - Cancellation and Nonrenewal |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes the above numbered policy.

FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AT INCEPTION:

| Endt. No. | Form No. | Description |
|---|---|---|
| 95. | LD2S92c | Virginia Changes - Cancellation and Nonrenewal |
| 96. | LD2S93 | Washington Changes - Cancellation and Nonrenewal |
| 97. | LD2S95a | Wisconsin Changes - Cancellation and Nonrenewal |
| 98. | LD2S94a | West Virginia Changes - Cancellation and Nonrenewal |
| 99. | LD2S96a | Wyoming Changes - Cancellation and Nonrenewal |
| 100. | CC1K11g | Signatures |

This declaration and the coverage form(s) and endorsements, if any, listed above and attached, completes the above numbered policy.

_____

_____



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004



**ace group**

**Excess Commercial
General Liability Policy**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V – DEFINITIONS.

## SECTION I – COVERAGES
## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    **a.** We will pay the insured for the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS. But the amount we will pay for the "ultimate net loss" because of damages is limited as described in SECTION III - LIMITS OF INSURANCE.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee' authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury' or "property damage" after the end of the policy period.

    **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

  **a. Expected or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

  **c. Liquor Liability**

    "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    **(1)** Causing or contributing to the intoxication of any person;

    **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

  **d. Workers Compensation and Similar Laws**

    Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

  **e. Employers Liability**

    "Bodily injury" to

    **(1)** An "employee" of the insured arising out of and in the course of:

      **(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business;

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

Any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to "pollution", however caused.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 51 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph f. (2) or f. (3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed or demolition contest or in any stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property:

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - LIMITS OF INSURANCE.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily Injury" arising out of "personal and advertising injury".

**p. Asbestos**

Any loss, demand, claim or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

**q. Lead**

Any injury, damage, expense, cost, loss, liability or legal obligation arising out of or allegedly arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances.

**r. Employment Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination or malicious prosecution directed at the person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Nuclear Energy**

"Bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**(3)** Resulting from the "hazardous properties" of "nuclear material", if:

**(a)** The "nuclear material" (1) is at any "nuclear facility" owned by, operated by or on behalf of, an insured, or (2) has been discharged or dispersed therefrom;

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, disposed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, this exclusion (3)(c) applies only to "property damage" to such "nuclear facility" and any property thereat.

**(4)** As used in this exclusion:

**(a)** "Hazardous properties" include radioactive, toxic, or explosive properties;

**(b)** "Nuclear material" means "source material", "special nuclear material", or "by-product material";

**(c)** "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(d)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(e)** "Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of nuclear facility;

**(f)** "Nuclear facility" means:

**(1)** Any "nuclear reactor";

**(2)** Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste";

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**(3)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(4)** Any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste"; and

**(5)** The site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**(g)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(h)** "Property damage" includes all forms of radioactive contamination of property.

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**u. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions; that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III – LIMITS OF INSURANCE.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay the insured for the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES AND INTEREST ON JUDGMENTS. But the amount we will pay for the "ultimate net loss" because of damages is limited as described in SECTION III - LIMITS OF INSURANCE.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury' committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **13a., b.,** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to "pollution", however caused;

**n. Asbestos**

"Personal and advertising injury" arising out of any loss, demand, claim, or "suit" arising out of or related in any way to asbestos or asbestos-containing materials.

**o. Employment-Related**

**(1)** "Personal and advertising injury"

   **(a)** to a person arising out of any:

   **(i)** Refusal to employ that person;

   **(ii)** Termination of that person's employment; or

   **(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination or malicious prosecution directed at that person; or

   **(b)** To the spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs **(i)**, **(ii)** or **(iii)** above is directed.

   This exclusion applies:

   **(a)** Whether the injury-causing event described in paragraphs **(i)**, **(ii)**, **(iii)** above occurs before employment, during employment or after employment of that person;

   **(b)** Whether the insured may be liable as an employer or in any other capacity; and

   **(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**p. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS

**1. Defense, Investigation, Settlement, Legal Expenses, and Prejudgment Interest**

This insurance does not apply to defense, investigation, settlement or legal expenses, or prejudgment interest arising out of any "occurrence" or offense, but we shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this policy that we believe likely to exceed the "retained limit". In such event we and the insured shall cooperate fully.

**2. Interest on Judgments**

We shall pay interest only on that amount of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limit of insurance shown in the Declarations.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership or joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insured, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers", (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" is an insured for:

**(1)** "Bodily injury" or "personal and advertising injury":

    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph **(1)(a)** above;

    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1) (a)** or **(b)** above; or

    **(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

    **(a)** Owned, occupied or used by,

    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (If you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such.  That representative will have all your rights and duties under this Policy.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE AND RETAINED LIMIT

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay for the "ultimate net loss" in excess of the "retained limit" regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" in excess of the "retained limit" for:

   a. Damages under Coverage A, except damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

   b. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay for "ultimate net loss" in excess of the "retained limit" under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the "ultimate net loss" in excess of the "retained limit" for damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay under Coverage A for the "ultimate net loss" in excess of the "retained limit" for damages because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage to Premises Rented To You Limit is the most we will pay under Coverage A for the "ultimate net loss" in excess of the "retained limit" for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. If the policy aggregate limits, as set forth in **2.** and **3.** above, are paid prior to this policy's termination date, this policy's premium is fully earned.

8. You agree to assume payment of the "retained limit" before the Limits of Insurance become applicable.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties in the Event of Occurrence, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

   b. You must notify us as soon as practicable in writing of any "occurrence" or offense which may result in a claim or claims involving damages which, in the event that you are held liable, are likely to exceed 50% of the "retained limit". Failure to give notice of any "occurrence" which at the time of its happening did not appear to exceed 50% of the "retained limit" but which, at a later date would appear to give rise to a claim under this insurance, shall not prejudice such claim.

   c. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and any witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**d.** If a claim is made or a "suit" is brought against any insured you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**e.** You and any other involved insured must;

    **(1)** Immediately send us copies of any demands, notices, summonses or legal documents received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or any defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**f.** You shall make a good faith evaluation of any claim for settlement purposes.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other insurance is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance, unless that insurance is written specifically to apply in excess of the Limits of Insurance shown in the Declarations.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**a.** The total amount that all such other insurance would pay for the loss in the absence of this insurance;

**b.** The total of all deductible and self-insured amounts under all that other insurance; and

**c.** The "retained limit" shown in the Declarations of this policy.

Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

**5. Premium Audit**

**a.** We will compute all premiums for this policy in accordance with our rules and rates.

**b.** Premium shown in this policy as advance premium is deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.** The   first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance, the application of the "retained limit", and any rights or duties specifically assigned in this policy to the first Named Insured, this policy applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each Insured against whom claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Cancellation**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**b.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;  or

   **(2)** 60 days before the effective date of cancellation if we cancel for any other reason.

**c.** We may mail or deliver our notice to the first Named Insured's last mailing address known to us.

**d.** Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

**e.** If this policy is canceled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

**12. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**13. Inspections and Surveys**

We have the right but are not obligated to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**14. Premiums**

The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**15. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include" mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication.

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failing to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

**9.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**10.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto"; or

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**11.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**14.** "Pollution" includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

**15.** "Products-completed operations hazard"

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products or completed operations are subject to the General Aggregate Limit.

**16.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**17.** "Retained limit" means the limit shown in the Declarations and is the amount you must pay before the Limits of Insurance become applicable. In the event there is other insurance, whether or not applicable to an "occurrence", offense, claim or "suit" within the "retained limit", you will continue to be responsible for the full amount of the "retained limit" before the Limits of Insurance under this policy apply. In no case will we be required to pay the "retained limit" or any portion thereof. "Retained limit" does not include prejudgment interest, interest that accrues after entry of the judgment, nor any expenses incurred by the insured in the defense of any claim or "suit".

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Ultimate net loss" means the total sum, after recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlements, judgments or any arbitration or other alternative dispute method entered into with our written consent and includes interest that accrues after entry of the judgment and deductions for recoveries and salvages which have been or will be paid. "Ultimate net loss" does not include any of the expenses incurred by the insured or us in connection with defending the claim or "suit".

**21.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

Includes copyrighted material of Insurance Services Office, Inc. with its permission

**22.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**23.** "Your work" means:

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

POLICY NUMBER: XSL G27017381


ACE USA

# An Important Notice To Our Alaska Policyholders

**ALASKA DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT
DIVISION OF INSURANCE
ATTORNEY FEES COVERAGE NOTICE A**

**THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES
UNDER ALASKA RULE OF CIVIL PROCEDURE 82**

In any suit in Alaska in which we have a right or duty to defend an insured in addition to the limits of liability, our obligation under the applicable coverage to pay attorney fees taxable as costs against the insured is limited as follows:

Alaska Rule of Civil Procedure 82 provides that if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82. We provide coverage for attorney fees for which you are liable under Alaska Rule or Civil Procedure 82 subject to the following limitation:

**We will not pay that portion of any attorney's fees that is in excess of fees calculated by applying the schedule for contested cases in Alaska Rule Civil Procedure 82(b)(1) to the limit of liability of the applicable coverage.**

*This limitation means the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.*

For example, the attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) are:

20% of the first $25,000 of a judgment;
10% of the amounts over $25,000 of a judgment.

Therefore, if a court awards a judgment against you in the amount of $125,000, in addition to that amount you would be liable under Alaska Rule of Civil Procedure 82(b)(1) for attorney fees of $15,000, calculated as follows:

|  |  |  |  |
|---|---|---|---|
|  | 20% of $25,000 |  | $5,000 |
|  | 10% of $100,000 |  | $10,000 |
| Total Award | $125,000 | Total Attorney Fees | $15,000 |

If the limit of liability of the applicable coverage is $100,000, we would pay $100,000 of the $125,000 award, and $12,500 for Alaska Rule of Civil Procedure 82(b)(1) attorney fees, as calculated as follows:

|  |  |  |  |
|---|---|---|---|
|  | 20% of $25,000 |  | $5,000 |
|  | 10% of $75,000 |  | $7,500 |
| Total Limit of Liability | $100,000 | Total Attorney Fees Covered | $15,000 |

You would be liable to pay, directly and without our assistance, the remaining $25,000 in liability plus the remaining $2,500 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.



# Arkansas
# Notice To Policyholders

## QUESTIONS ABOUT YOUR INSURANCE?

If you have questions about your insurance, need coverage information, or require assistance in resolving complaints, do not hesitate to contact either your insurance agent, or ACE USA, Customer Service Department, 436 Walnut Street, Philadelphia, PA 19106-3703, telephone 1-800-352-4462.

If we fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201
(501) 371-2640 or 800-852-5494

# COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

© ISO Properties, Inc., 2004



**ACE USA**

# Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling ACE USA, Customer Support Service Department, at 1-800-352-4462.



# Important Information to
# Idaho Policyholders
# Regarding Your Insurance

In the event you need to contact someone about this insurance for any reason please contact your agent.  If no agent was involved in the sale of this insurance, or if you have additional questions you may contact the insurance company issuing this insurance at the following address and telephone number

ACE INA Companies
Customer Support Service Department
436 Walnut Street
PO Box 1000
Philadelphia, PA  19106-3703
1-800-352-4462

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Idaho Department of Insurance at:

Idaho Department of Insurance
Consumer Affairs
700 W. State Street, 3rd Floor
PO Box 83720
Boise, ID 83720-0043

1-800-721-3272 or www.DOI.Idaho.gov

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent, company or the Idaho Department of Insurance, have your policy number available.

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.



# QUESTIONS ABOUT YOUR INSURANCE?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by contacting:

ACE Customer Support Services Department:
436 Walnut Street
Philadelphia, Pennsylvania 19106-3703

Telephone Number: 1-800-352-4462

The **Illinois Department of Insurance** may also be contacted for assistance. Insurance analysts are available to answer general questions by phone at our toll-free Consumer Assistance Hotline (866) 445-5364. **However, complaints must be submitted in writing.**

**How to file a complaint with the Insurance Department:**

Complaints may be submitted in the following ways:

- On-line at **www.ins.state.il.us** and by following the instructions posted.
- By fax: (217) 558-2083
- By mail: 320 W. Washington St. Springfield, IL 62767

**POLICY NUMBER: XSL G27017381**



**ACE USA**

**Indiana
Notice To Policyholders**

We are here to serve you.....

As our policyholder, your satisfaction is very important to us. If you have a question about your policy, if you need assistance with a problem, or if you have a claim, you should first contact your insurance agent.

If you are unable to reach your agent, or if you wish to contact us directly, please call our Customer Services Department at 1-800-352-4462. Should you have a valid claim, we fully expect to provide a fair settlement in a timely fashion.

Should you feel you are not being treated fairly with respect to a claim, you may also contact the Indiana Department of Insurance with your complaint.

To contact the Department, write or call:

Consumer Services Division
Indiana Department of Insurance
311 West Washington Street, Suite 300
Indianapolis, IN 46204-2787
317-232-2395 or 1-800-622-4461



# Notice To Our
# New Mexico Policyholders

In accordance with New Mexico Insurance Department regulation Title 13, Chapter 8, Part 5, we are required to notify you that the premium for this policy may include Schedule Rating adjustment for the conditions shown below that are not otherwise reflected in the rating of this policy.

Credit/Debit %                    Explanation

_____                    _____
_____                    _____
_____                    _____
_____                    _____

In addition, the premium for this policy may include an Experience Rating Modification as indicated below based on losses in prior years.

Experience Credit/Debit %          _____
                                   _____

If you have any questions regarding this information, please contact your insurance agent.



ACE USA

# Policyholder Notice
# Commercial Lines Deregulation
# New York

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.  HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# POLICYHOLDER NOTICE – OHIO

**WARNING**: Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

# NOTICE TO ALL OKLAHOMA POLICYHOLDERS

**WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

You are insured by the Company listed on the Signature page which is named on the first page of the Declarations of this policy. It is an ACE USA company and has its principal office at 436 Walnut Street, PO Box 1000, Philadelphia, PA 19106-3703.

# NOTICE

## TO PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE POLICYHOLDERS

A Pennsylvania law known as the "Insurance Consultation Services Exemption Act" has a provision that insurers, their agents, employees or service contractors are not subject to liability for damages from injury, death or loss occurring as a result of any act or omission by any person in the course of performing any survey, consultation, inspection, advisory or related service incident to an application for insurance, a new policy for insurance or an existing policy or insurance for the purpose of reducing the likelihood of injury, death or loss.

This provision shall not apply:

1) If the injury, loss or death occurred during the actual performance of consultation services and was caused by the negligence of the insurer, its agent, employees or service contractors which was a proximate cause of the injury, death or loss.

2) To any consultation services required to be performed under the provisions of a written service contract not incidental to a policy of insurance.

3) In any action against any insurer, its agents, employees or service contractors for damages caused by the act or omission of said insurer, its agents, employees or service contractors in which it is judicially determined that such act or omission constituted a crime, actual malice or gross negligence.

This provision of the "Insurance Consultation Services Exemption Act" applies to all insurance consultation services rendered incident to policies of property or casualty insurance. It does not apply to the immunities and protections provided by section 305, act of June 2, 1915 known as the "Pennsylvania Workmen's Compensation Act."

The provisions of the "Insurance Consultation Services Exemption Act" shall not be effective and applicable unless the insurer furnishes the insured with written notice of the provision of this act at the time the policy is issued or renewed. The Insurance Commissioner has approved the contents of this notice and the manner in which the notice is given.

POLICY NUMBER: XSL G27017381



**ACE USA**

# Information and
# Complaints

This information is being provided to you pursuant to the requirements of Articles 1.35, 1.35D and 21.71 of the Texas Insurance Code relating to our Toll Free information and complaint number.

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call the Company's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de la Compania para informacion o para someter una queja at: |
| **1-(800) 352-4462** | **1 (800) 352-4462** |
| You may also write to the Company at: | Usted tambien puede escribir a la Compania: |
| ACE USA<br>  Customer Services<br>  PO Box 1000<br>  Philadelphia, PA  19106-3703 | ACE USA<br>  Customer Services<br>  PO Box 1000<br>  Philadelphia, PA  19106-3703 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede communicarse con el Departmento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-(800) 252 3439** | **1 (800) 252-3439** |
| You may write the Texas Department of Insurance | Puede escribir at Departamento de Seguros de Texas |
| P.O. Box 149104<br>AUSTIN, TX 78714-9104<br>FAX #(512) 475-1771 | P.O. Box 149104<br>AUSTIN, TX 78714-9104<br>FAX #(512) 475-1771 |
| PREMIUM OR CLAIM DISPUTES: Should you have a dispute concerning your premium or about a claim you should contact your agent or the company first. If the dispute is not resolved you may contact the Texas Departrment of Insurance. | DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa puede entonces communicarse con el departmento de Seguros en Texas |
| ATTACH THIS NOTICE TO YOUR POLICY: This notice is for information only and does not become a part of condition of the attached document. | UNA ESTE AVISO A SU POLIZA: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

**POLICY NUMBER:  XSL G27017381**



**ACE USA**

**ACE USA**
**Risk Control Services**
**436 Walnut Street**
**Philadelphia, PA 19106-3703**

**Phone:  1.866.357.3797**
**Fax:  215.640.5084**
**www.ace-ina.com**

**National Manager, Jurisdictional Services**

RE:  <u>RISK CONTROL SERVICES FOR TEXAS POLICYHOLDERS</u>
**Commercial Automobile Liability, General Liability, Professional Liability, and Medical**
**Professional Liability (other than Hospitals)**

The ACE Companies are required by Texas law and regulations to maintain or provide accident prevention services for its commercial automobile, general liability and professional liability policyholders.  The Ace Companies offer an array of accident prevention services in Texas at no additional charge.  These services are intended to help prevent and/or minimize loss.

These services include but are not limited to:  individual risk surveys; improvement recommendations; loss investigation; specific loss problem identification and recommended improvement actions.

ACE may recommend one or more of these services based upon hazard, experience, and size of your Texas operations.  You have the choice of receiving or declining any of the services offered.  If you wish to decline all of the services or wish to receive only selected risk control service, please indicate that by signing and dating this letter in the space provided below.  Please mail or fax to the captioned address or fax number.  If you decline all of ACE's risk control services or choose only a support service, such as ergonomics survey, driving training, or other services and not a complete risk survey, we still have a responsibility under Texas law and regulation to monitor your losses.  In the event you start to have a loss problem and a trend is established, and/or adverse loss ratio is developed, we will contact you and offer to assist you in addressing the situation.

Sincerely,

National Manager, Jurisdictional & Regulatory Services
ACE USA Risk Control Services
436 Walnut Street, Philadelphia, PA 19106-3703
or call toll free at:  1-866-357-3797

☐    **I am aware of the loss control services offered and decline them.  I have made other arrangements for these services.**

☐    **I wish to obtain the following offered accident prevention services:**

_____

☐    **I have no risk control services needs now.  I reserve the right to request loss control services within the period.**

_____     _____     _____
*(Signature)*                                    *(Phone #)*                                          *(Date)*

**Print Name:** _____     **Policy #** _____

**Company Name:** _____

**Address:** _____

**City, State, Zip:** _____

*One of the ACE Group of Insurance & Reinsurance Companies*
This Company has undertaken a survey of your premises, equipment, or operations (whichever is pertinent to the type of insurance applied for or provided) for the purpose of supporting the functions of risk underwriting.  Any recommendations or information provided is not intended as a substitute for advice from a safety expert or legal counsel you may retain for your own purposes.  It is not intended to supplant any legal duty you may have to provide a safe premises, workplace, product or operation.

ALL- 11559d (10/07)

POLICY NUMBER: XSL G27017381



**ACE USA**

# Important Information to
# Virginia Policyholders
# Regarding Your Insurance

In the event you need to contact someone about this insurance for any reason please contact your agent.  If no agent was involved in the sale of this insurance, or if you have additional questions you may contact the insurance company issuing this insurance at the following address and telephone number

ACE USA Companies
Customer Support Service Department
436 Walnut Street
PO Box 1000
Philadelphia, PA  19106-3703
1-800-352-4462

If you have been unable to contact or obtain satisfaction from the company or the agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

1300 East Main Street
Tyler Building
Richmond, VA  23219
Consumer Hot Line:  1-800-552-7945
Bureau of Insurance:  804-371-9185

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent, company or the Bureau of Insurance, have your policy number available.

ALL-7X47a (2/06) Printed in U.S.A.

POLICY NUMBER: XSL G27017381



**ACE USA**

# Wisconsin Notice
# to Policyholders

### KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

**PROBLEMS WITH YOUR INSURANCE?** – If you are having problems with your insurance company or agent, do not hestitate to contact the insurance company or agent to resolve your problem.

> **ACE USA**
> **Customer Support Service Department**
> **436 Walnut Street**
> **PO Box 1000**
> **Philadelphia, PA  19106-3703**
> **1-800-352-4462**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint.  You can contact the **OFFICE OF THE COMMISSIONER OF INSURANCE** by contacting:

> Office of the Commissioner of Insurance
> Complaints Department
> P.O. Box 7873
> Madison, WI  53707-7873
> 1-800-236-8517
>   608-266-0103

## ADDITIONAL INSURED – 

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 1 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This Endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

_____
Authorized Agent

## ADDITIONAL INSURED — ███████████████████

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 2 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

SCHEDULE

Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## ADDITIONAL INSURED — ██████████████████████

| Named Insured  Target Corporation | | | Endorsement Number  3 |
|---|---|---|---|
| Policy Symbol  XSL | Policy Number  G27017381 | Policy Period  02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)  ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

**SCHEDULE**

_____

Authorized Agent

## ADDITIONAL INSURED - ███████

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 4 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) | |
|---|---|
| ACE American Insurance Company | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

**SCHEDULE**



_____
Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc., with its permission

## WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

| Named Insured    Target Corporation | | | Endorsement Number<br>5 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

**SCHEDULE**

**Name of Person or Organization:**
Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss.

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".  This waiver applies only to the person or organization shown in the Schedule above.

_____
Authorized Agent

XS-6W34 (09/95) Ptd. in U.S.A.

# SCHEDULE OF NAMED INSURED ENDORSEMENT (WITHOUT JOINT VENTURES EXCLUSION)

| Named Insured   Target Corporation | | | Endorsement Number
6 (Page 1 of 2) |
|---|---|---|---|
| Policy Symbol
XSL | Policy Number
G27017381 | Policy Period
02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)
ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

LIQUOR LIABILITY COVERAGE

**The Named Insured in the Declarations is amended to include:**



Named insured also includes Target Corporation and its direct and indirect Subsidiaries as they now exist or may hereafter be constituted or acquired, and other legal entity, and the pension, welfare and incentive plans and related trusts and other benefit plans for the foregoing which are owned or held directly or indirectly by Target Corporation or under the management or control of Target Corporation.

# SCHEDULE OF NAMED INSURED ENDORSEMENT (WITHOUT JOINT VENTURES EXCLUSION)

| Named Insured   Target Corporation | Endorsement Number   6  (Page 2 of 2) |
|---|---|

| Policy Symbol   XSL | Policy Number   G27017381 | Policy Period   02/01/2012  to  02/01/2013 | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

and any organization over which you or any of your subsidiaries currently maintains majority ownership or a minority interest provided there is no other similar insurance available to that organization; and

any other organization you newly acquire or form and over which you maintain majority ownership or a minority interest
provided:

    a)   there is no other similar insurance available to that organization; and

    b)   you notify us of such acquisition not later than __60__ days after the policy period.

As respects newly acquired or formed organizations:

    1.   Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    2.   Coverage B does not apply to "personal and "advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    3.   Liquor Liability coverage does not apply to "injury" that occurred before your acquired or formed the organization.

Authorized Agent

MS113300213

# SURCHARGE SCHEDULE

| Named Insured<br>Target Corporation | | | Endorsement Number<br>7 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The following surcharge(s) have been applied at inception of this policy:

| **State** | **Name of Surcharge** | **Amount** |
|---|---|---|
| FL | Florida Hurricane Catastrophe Fund | |
| KY | Kentucky Domestic, Foreign and Alien Insurers | |
| NJ | New Jersey Insurance Guarantee | |
| WV | West Virginia Insurance Premium | |

Surcharges will be adjusted at audit and concurrent with any other applicable premium adjustment.  The rates used to adjust the surcharges are set by the states.  The formulae for the adjustment bases used to adjust the surcharges are also set by the states.

_____
Authorized Agent

ALL-22421 (10/11)

# REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE") WHERE THE INSURED HAS A PRO RATA REIMBURSEMENT OBLIGATION

| Named Insured **Target Corporation** | | | Endorsement Number **8 (Page 1 of 2)** |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies all insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

I)  DEDUCTIBLE AMOUNT

    1) Indemnity Deductible Amount:   $   2,500,000   ; plus

    2) "ALAE" apportioned between "you" and "us" as follows:

        (a) If the amount of settlement or judgment does not exceed the sum of the Indemnity Deductible Amount plus the "retained limit", or if the claim or "suit" is settled without payment of damages, all such "ALAE" shall be borne solely by "you".

        (b) If the amount of settlement or judgment exceeds the sum of the Indemnity Deductible Amount plus the "retained limit", then all such "ALAE" shall be borne by "you" and "us" in the same proportion as "your" and "our" respective obligations for payment of the amount of judgment or settlement. For purposes of this calculation, "your" obligation for payment of judgment or settlement includes the "retained limit" plus "your" obligation for reimbursement of the Indemnity Deductible Amount.

    3) The Indemnity Deductible Amount applies separately to:

        (a) damages per "occurrence" under Coverage A; and

        (b) damages sustained by any one person or organization under Coverage B.

II) ADDITIONAL PROVISIONS

    1) "We" will pay all sums that "we" become legally obligated to pay in excess of the "retained limit" up to the Limits of Insurance under this policy.

    2) You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

    3) The Deductible Amount will apply as shown in Section I of this endorsement regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

# REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT ALLOCATED LOSS ADJUSTMENT EXPENSE ("ALAE") WHERE THE INSURED HAS A PRO RATA REIMBURSEMENT OBLIGATION

| Named Insured | Target Corporation | | Endorsement Number<br>8 (Page 2 of 2) |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

4) If "you" fail to reimburse "us" for any amount due under this endorsement, or fail to provide "us" any collateral that "we" require, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to drawing on any amount of collateral "we" hold or canceling this policy, if permitted by law.

5) Each Named Insured is jointly and severally liable for all reimbursable amounts under this endorsement.

6) If "we" recover any payment "we" make under this policy from anyone liable for damages or "ALAE", the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".

III) ALLOCATED LOSS ADJUSTMENT EXPENSE DEFINITION

"Allocated Loss Adjustment Expense(s)" or "ALAE" means such claim expenses and costs incurred by the insured or by us in connection with the investigation, administration, adjustment, subrogation, settlement or defense of any claim or lawsuit that we, under our accounting practices, directly allocate to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that "allocated loss adjustment expense" shall not include the salaries and traveling expenses of our employees or our overhead and adjusters' fees.

IV) NO OTHER CHANGES

All other terms of this policy, including those with respect to:

(a) Defense, Investigation, Settlement, Legal Expenses and Interest on Judgments, and

(b) Limits of Insurance, and

(c) Your duties in the event of occurrence, claim or suit remain unchanged.

_____
Authorized Agent

# AMENDED CONTRACT DEFINITION

| Named Insured **Target Corporation** | | | Endorsement Number **9** |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The definition of "insured contract" is deleted and replaced with the following:

"Insured Contract" means:

a. A lease of premises;
b. A sidetrack agreement;
c. Any easement or license agreement;
d. An obligation, as required by ordinance, to indemnify a municipality.

e. An elevator maintenance agreement; or
f. That part of any other oral or written contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality).

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing (except for construction operations of a Target Store in Rockville, Maryland located next to a WMATA railroad and except for construction operations of a Target Store in Kings County, New York location next to the Long Island Railroad Company):
b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
  (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or
  (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;
c. Under which the "insured", if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the "insured's" rendering or failure to render professional services, including those listed in item b. above and supervisory, inspection or engineering services; or
d. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

Authorized Agent

MS113320213

# BUILDING CONTRACTORS ENDORSEMENT

| Named Insured | Target Corporation | | Endorsement Number 10 |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The policy to which this Endorsement is attached is issued and designed to comply with the provisions of Chapter 393, Minneapolis, Code Of Ordinances, and it is hereby understood and agreed that the said policy shall provide coverage for you as required by said ordinance. If anything contained in the policy conflicts with the provisions of the said chapter, then the provisions of said chapter shall prevail to the extent of the coverage or the limits of insurance described in said chapter.

It is understood and agreed that the rights of any person or recovery hereunder shall not be affected by any violation of any of the provisions of the policy but all the terms and conditions of the policy shall remain in full force and be binding between you and us. You agree to reimburse us for any and all loss, cost or expenses paid or incurred by us, which we would not be obligated to pay under the provisions of the policy independently of this Endorsement.

It is also agreed that no cancellation of the policy at the request of you or us shall become effective until after the expiration of thirty (30) days written notice of such proposed cancellation has been filed with the Department of Licenses and Consumer Services of the city of Minneapolis, Minnesota.

Authorized Agent

MS113330213

# CITY OF OMAHA – RETRACTABLE OR FIXED AWNINGS

| Named Insured | **Target Corporation** | | Endorsement Number 11 |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

## Provisions

It is understood and agreed by and between the parties that the classifications of operations, as set forth in the policy to which this Endorsement is attached, shall be construed to include and cover all the operations of the insured in any manner or nature whatsoever incident to or connected with the erection, ownership, maintenance or removal of any retractable or fixed awnings, and that the undersigned insurance company shall (to an extent not exceeding the amount of the indemnity or coverage provided for in the policy to which this Endorsement is attached) defend, save, keep harmless and indemnify the insured and the city of Omaha, a municipal corporation of the state of Nebraska, and its agents, from all liability, claims, damages, judgments, costs and expenses of every nature and description caused by or growing out of the erection, maintenance or removal by the insured of any retractable or fixed awnings within the city of Omaha; the placing of any obstruction, barricade, material, equipment, or apparatus of any nature in any street, highway, alley or thoroughfare, including the sidewalk space, as an incident to or in connection with the erection, maintenance or removal by the insured of retractable or fixed awnings, and any and all negligence on the part of the insured in erection, maintenance or removal of retractable or fixed awnings, in the city of Omaha, which results in damage to the person or property of the said city, or of any person, firm or corporation. The insurance company shall have the right to cancel this Endorsement for future liability upon sixty days' written notice to the city of Omaha.

Authorized Agent

# CITY OF OMAHA — SIGN, CANOPY OR CLOCK MAINTENANCE

| Named Insured | Target Corporation | | | Endorsement Number 12 |
|---|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

Provisions

It is understood and agreed by and between the parties that the classifications of operations, as set forth in the policy to which this Endorsement is attached, shall be construed to include and cover all the operations of the insured in any manner or nature whatsoever incident to or connected with the erection, ownership, maintenance or removal of any sign, canopy or clock, and that the undersigned insurance company shall (to an extent not exceeding the amount of the indemnity or coverage provided for in the policy to which this Endorsement is attached) defend, save, keep harmless and indemnify the insured and the city of Omaha, a municipal corporation of the state of Nebraska, and its agents, from all liability, claims, damages, judgments, costs and expenses of every nature and description caused by or growing out of the erection, maintenance or removal by the insured of any sign, canopy or clock within the city of Omaha; the placing of any obstruction, barricade, material, equipment, or apparatus of any nature in any street, highway, alley or thoroughfare, including the sidewalk space, as an incident to or in connection with the erection, maintenance or removal by the insured of a sign, canopy or clock, and any and all negligence on the part of the insured in erection, maintenance or removal of a sign, canopy or clock, in the city of Omaha, which results in damage to the person or property of the said city, or of any person, firm or corporation. The insurance company shall have the right to cancel this Endorsement for future liability upon sixty days' written notice to the city of Omaha.

Authorized Agent

MS113350213

# DEFINITION OF BODILY INJURY

| Named Insured | **Target Corporation** | | | Endorsement Number 13 |
|---|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

A. The Definition of "bodily injury" is deleted and replaced with the following:

"Bodily injury" means physical injury, sickness or disease sustained by a natural person, including:
(i)    death resulting from any of these at any time; or

(ii)   mental injury, mental anguish, humiliation, shock, fright or emotional distress that subsequently manifests itself after such physical injury, sickness or disease is sustained by a natural person.

_____
Authorized Agent

MS113360213

# DEFINITION OF PERSONAL AND ADVERTISING INJURY

| Named Insured | Target Corporation | | Endorsement Number 14 |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

A. The Definition of "personal and advertising injury" is deleted and replaced with the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement";

g. Trademark infringement or service mark or trade name in your "advertisement"; or

h. Discrimination based upon race, color, creed, religion, age, sex, disability, marital status, sexual orientation, sexual harassment or national origin, but excluding:

(1) Discrimination committed by, at the direction of, or with the consent of the insured against whom claim is made or "suit" is brought.

(2) Claims made or "suits" brought by reason of discrimination against present or past employees of any "insured" or applicants for employment with any insured, or

(3) Claims made or "suits" brought by a person deriving rights by reason of discrimination against present or past "employees" or applicants for employment.

_____
Authorized Agent

MS113370213

# DRUGGISTS - BROADENED COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number 15 |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

DRUGGISTS - BROADENED COVERAGE

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

A. The following is added to Paragraph 1. of Section I - Coverage A - Bodily Injury And Property Damage Liability:

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional health care services as a pharmacist shall be deemed to be caused by an "occurrence".

B. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to "bodily injury" or "property damage" caused by the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of any insured.

C. Paragraph 2.a.(1)(d) under Section II - Who Is An Insured is replaced by the following:

However, none of these "employees" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(d) Arising out of his or her providing of or failure to provide professional health care services, other than professional health care services performed in his or her capacity as a pharmacist.

D. For the purpose of determining the limits of insurance for the coverage provided by this endorsement, any act or omission together with all related acts or omissions in the furnishing of these services to any one person will be considered one "occurrence".


For the purposes of this Druggist Liability Coverage, professional health care services as pharmacist performed for others by your "employees" without compensation, and without the intent to receive compensation, shall be deemed to be within the scope of their employment by you.

_____

Authorized Agent

MS113380213

# EMPLOYEE BENEFITS LIABILITY COVERAGE

| Named Insured **Target Corporation** | | | Endorsement Number **16 (Page 1 of 4)** |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

Schedule

LIMITS OF INSURANCE

Each Claim Limit $ 4,500,000

Aggregate Limit  $ 9,000,000

☐ The Year 2000 Exclusion below does not apply if this box is checked.

INSURING AGREEMENT

**We will pay under this endorsement those sums in excess of the "retained limit" shown in the Declarations that the insured becomes legally obligated to pay as damages because of a claim or "suit" brought by any employee, former employee, or their beneficiaries or legal representatives in connection with any error, omission, or breach of duty in the "administration" of your "employee benefits" programs.**

**We have no duty to defend any "suit" seeking those damages, but we shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this endorsement that we believe likely to exceed the "retained limit". But the amount we will pay for damages is limited as described in the Schedule as Limits of Insurance;**

This insurance applies to errors, omissions, breaches of duty, or misstatements which first occur while this endorsement is in effect.

WHO IS AN INSURED

**With respect to this endorsement, Section II - Who Is An Insured is modified to include employees only while authorized to act in the "administration" of your "employee benefits" programs.**

EXCLUSIONS

Insurance under this endorsement does not apply to any claim or "suit" arising out of:

1. any dishonest, fraudulent, criminal or malicious act;

MS11330213

# EMPLOYEE BENEFITS LIABILITY COVERAGE

| Named Insured | Target Corporation | | Endorsement Number 16 (Page 2 of 4) |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

2. any "bodily injury", "personal injury", "advertising injury", or "property damage";

3. any claim for failure of performance of contract by any insurer;

4. any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any other similar law;

5. any alleged wrongful termination or related allegations;

6. any failure of stock to perform as represented by you;

7. any advice given by you to your employees to participate or not to participate in stock subscription plans;

8. any actual or alleged error or omission or breach of duty, committed or alleged to have been committed by a trustee, in the discharge of fiduciary duties, obligations or responsibilities imposed by the Federal Employee Retirement Income Security Act of 1974 or Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985 (Public Law 99-272) or Section 9319 of the Omnibus Budget Reconciliation Act of 1986 (Public Law 99-509) or any amendment to these Acts; or

9. any claims or "suits" arising directly or indirectly out of the "Year 2000 computer-related and other electronic problems hazard". This exclusion also applies to any claim or "suit" seeking damages due to a failure to foresee, address, remedy, warn, fix, advise or otherwise avoid or mitigate "Year 2000 computer-related and other electronic problems". However, this exclusion does not apply if the box in the Schedule above is checked.

LIMITS OF INSURANCE

The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay for the "ultimate net loss" in excess of the "retained limit" regardless of the number of:

1. Insureds;

2. Claims made or "suits" brought; or

3. Persons or organization making claims or bringing "suits".

The Aggregate Limit is the most we will pay for the "ultimate net loss" in excess of the "retained limit" because of all damages under this endorsement.

Subject to the Aggregate Limit, the Each Claim Limit is the most we will pay for the "ultimate net loss" in excess of the "retained limit" arising out of any one claim or "suit".

MS113390213

# EMPLOYEE BENEFITS LIABILITY COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>**16 (Page 3 of 4)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013    to    02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

ADDITIONAL DEFINITIONS

The following additional definitions are added to Section V - Definitions:

A. "Employee benefits" means group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, employee travel, vacation, or savings plans, workers' compensation, unemployment insurance, social security and disability benefits insurance, and any similar program.

B. "Administration" means any of the following acts that you do or authorize a person to do:

   1. Counseling employees, other than giving legal advice, on "employee benefits" programs;

   2. Interpreting your "employee benefits" programs;

   3. Handling records for your "employee benefits" programs; and

   4. Effecting enrollment, termination or cancellation of employees under your "employee benefits" programs.

   "Administration" does not include:

   a. The failure of performance of any contract by any insurer;

   b. The failure of any investment plan to perform as represented by an insured;

   c. The inability of "employee benefits" programs to meet their obligation due to insolvency.

C. "Year 2000 computer-related and other electronic problems" means the inability of computer hardware, computer software or microprocessors to recognize, distinguish, interpret, accept or process date or time data (including, but not limited to, calculating, comparing, storing, inputting, manipulating, updating, recording, displaying, outputting, transferring or sequencing) from, into or between the twentieth and twenty-first centuries, and the years 1999 and 2000 and leap year calculations.

_____
Authorized Agent

# EMPLOYEE BENEFITS LIABILITY COVERAGE

| Named Insured    Target Corporation | | | Endorsement Number<br>16 (Page 4 of 4) |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | |

D. "Year 2000 computer-related and other electronic problems hazard" means:

   1. Any actual or alleged failure, malfunction or inadequacy of:

      a. Any of the following, whether belonging to any insured or to others:

         (1) Computer hardware, including microprocessors;

         (2) Computer application software;

         (3) Computer operating systems and related software;

         (4) Computer networks;

         (5) Microprocessors (computer chips) not part of any computer system; or

         (6) Any other computerized or electronic equipment or components; or

      b. Any other products, and any services, data or functions that directly or indirectly use or rely on, in any manner, any of the items listed in paragraph a. above.

        due to any potential or actual "year 2000 computer-related and other electronic problems".

   2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided by or done by you or for you to determine, rectify or test for, any potential or actual "year 2000 computer-related and other electronic problems".

# EMPLOYED LAWYERS COVERAGE

| Named Insured | Target Corporation | | | Endorsement Number 17 (Page 1 of 12) |
|---|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This Endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE FORM

THIS ENDORSEMENT PROVIDES CLAIMS MADE AND REPORTED COVERAGE. THE COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD.

In consideration of premium paid, it is agreed that EMPLOYED LAWYERS' LIABILITY COVERAGE is added to the policy, as follows. Terms that appear in quotations are defined in this endorsement, in SECTION V - DEFINITIONS, or elsewhere in this policy:

1. The following Limits of Liability, Retained Limit and Deductible are added to the DECLARATIONS and shall apply to the EMPLOYED LAWYERS' LIABILITY COVERAGE set forth in this endorsement:

   SCHEDULE:

   EMPLOYED LAWYERS' LIABILITY COVERAGE

   LIMITS OF LIABILITY COVERAGE

   $4,500,000               Each "Claim"

   $4,500,000               Aggregate Limit

   Retained Limit: $500,000    Each "Claim"

   DEDUCTIBLE:     $2,500,000   Each "Claim" ("Each Claim Deductible") plus
                   your "pro rata share" of "claim expenses"

   Prior or Pending Proceeding Date: 11/22/2011

2. The following provisions are added to the EXCESS COMMERCIAL GENERAL LIABILITY POLICY:

   - EMPLOYED LAWYERS' LIABILITY COVERAGE

     A. INSURING AGREEMENT

        1. "Employed Lawyers'" Liability

           We will pay all sums in excess of the "retained limit" for which the "insured persons" are not indemnified by the "company" and which the "insured persons" become legally obligated to pay as "damages", and our "pro rata share" of any related "claims expenses", because of a "claim" first made against the "insured persons" and reported to us during the policy period by reason of a "wrongful act" committed before the end of the policy period and taking place within the "coverage territory".

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>**17 (Page 2 of 12)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

2. "Company" Reimbursement

   We will pay all sums in excess of the "retained limit" for which the "company" has indemnified the "insured persons" and which the "insured persons" have become legally obligated to pay as "damages", and our "pro-rata share" of any related "claims expenses", because of a "claim" first made against "insured persons" and reported to us promptly during the policy period by reason of a "wrongful act" committed before the end of the policy period and taking place within the "coverage territory".

3. Defense

   a. We shall have the right but not the duty to defend any covered "claim" brought against the "insured persons" even if the "claim" is groundless, false or fraudulent. We have the right to settle any such "claim". The "insured persons" shall not admit or assume liability or settle or negotiate to settle any "claim" or incur any "claims expense" without our prior written consent. We shall have the right to appoint counsel and to make such investigation, defense, or settlement of a "claim" as we deem necessary.

   b. Our right to defend under subparagraph a. ends when we have used up the applicable Limit of Liability in the payment of "damages". Subject to applicable aggregate Limits of Liability or Limits of Insurance, we shall not be obligated to commence or continue to investigate, defend, pay or settle any "claim" or any "claims expenses" after the applicable Limit of Liability has been exhausted, or after we have deposited the remaining available Limit of Liability with a court of competent jurisdiction. In such case, we shall withdraw from investigation, defense, payment or settlement of such "claim" and shall tender control of such "claim" to the "insured".

   c. We have the right at our sole discretion:

      (1) to pay "damages" under this EMPLOYED LAWYERS' LIABILITY COVERAGE within the "Deductible" and any "claims expenses" within your "pro-rata share"; and

      (2) to pay any amounts within the "Deductible" to settle any "claim".

      You shall promptly reimburse us for any sum we may have paid under this paragraph.

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | Endorsement Number |
| | | **17  (Page 3 of 12)** |

| Policy Symbol | Policy Number | Policy Period | | | Effective Date of Endorsement |
| **XSL** | **G27017381** | **02/01/2013** | **to** | **02/01/2014** | |

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

B. EXCLUSIONS

The following exclusions apply only to this EMPLOYED LAWYERS' LIABILITY COVERAGE; and, for that purpose, supersede any conflicting provision set forth elsewhere in this policy.

This insurance does not apply to:

1. any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an "insured", however, this exclusion shall not apply to "claims expenses" or our right to defend any such "claim" unless and until there is an adverse admission by, finding of fact, or final adjudication against any "insured" as to such conduct. For the purpose of determining the applicability of this exclusion, facts pertaining to and knowledge possessed by one "insured person" shall not be imputed to any other "insured person";

2. any "claim" brought or maintained by, on behalf of, or in the right of any "insured", any entity that is operated, controlled, or managed by the "company", any other current or former director, officer, trustee, partner, joint venture, governor, management committee member, member of the management board, parent, successor or assignee of the "company", any "employee" of the "company", or any security holder or member of the "company", whether directly or derivatively, except, and subject to the terms and conditions of this EMPLOYED LAWYERS' LIABILITY COVERAGE, where such "claim" is:

   a. made by a current or former director, officer, or "employee" of the "company" to whom an "employed lawyer" or an "employee" of the "company" . who supports and works under the direct supervision of such "employed lawyer" provided "professional legal services" with the prior written consent of the "company";

   b. made by a security holder or member of the "company", where such "claim" is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation or intervention of an "insured", the "company", or any director, officer, trustee, governor, management committee member, member of the management board or "employee" of the "company";

   c. brought or maintained by any "insured person" in the form of a cross-claim or a third-party claim for contribution or indemnity which is part of, and results directly from, a "claim" that is covered by this EMPLOYED LAWYERS' LIABILITY COVERAGE; or

   d. brought by any bankruptcy or insolvency trustee, receiver, examiner, liquidator or similar official for the "company";

3. "bodily injury", "property damage", and "personal and advertising injury".

| Named Insured | **Target Corporation** | | Endorsement Number<br>**17  (Page 4 of 12)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013   to   02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

4.  any discrimination on any basis, including, but not limited to, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy or any "wrongful employment practice".

5.  any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of any "foreign" law (whether common or statutory) involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder.

6.  any violation of any "foreign" law (whether common or statutory) relating to or involving any fiduciary obligation owed to "employees" and any rules or regulations promulgated thereunder, or amendments thereto; however, this exclusion shall not apply to "claims" arising out of the actual or alleged rendering of "professional legal services" to a fiduciary  .

7.  the gaining in fact of any profit or advantage to which the insured is not legally entitled, or to the commingling, misappropriation, or improper use of funds; however, this exclusion shall not apply to "claims expenses" or our right to defend any such "claim" unless and until there is an adverse admission by, finding of fact, or final adjudication against any "insured" as to such conduct.  For the purpose of determining the applicability of this exclusion, facts pertaining to and knowledge possessed by one "insured person" shall not be imputed to any other "insured person";

8.  any invalidity, infringement, violation or misappropriation of any patent, copyright, service mark, trademark, trade name, trade secret or any other intellectual property right;

9.  any "wrongful act" committed prior to the beginning of the policy period, if, on or before the earlier of the effective date of this policy or the effective date of any policy issued by us, containing EMPLOYED LAWYERS' LIABILITY COVERAGE such as that contained in this policy, to which this policy is a continuous renewal or replacement, the "insured" had a reasonable basis to believe that such "wrongful act" would result in a "claim";

10. any:

a.  "wrongful act", fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this policy is a renewal or replacement or which it succeeds in time; or

b.  other "wrongful act" whenever occurring which, together with a "wrongful act" which has been the subject of such notice, would constitute "interrelated wrongful acts";

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>17 (Page 5 of 12) |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013  to  02/01/2014** | Effective Date of Endorsement |

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

11. any:

    a. actual or threatened discharge, dispersal, release, escape, seepage, migration or disposal of "pollutants"; or

    b. direction or request that any "insured" test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants", or any voluntary decision to do so;

12. any "wrongful act" committed or attempted by a "subsidiary" or "insureds" thereof before the date the "subsidiary" became an "insured", and after the date the "subsidiary" ceased to be an "insured";

13. advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance;

14. any prior or pending litigation, administrative or regulatory proceeding which was filed against an "insured", and of which an "insured" had notice, on or before the Prior or Pending Proceeding Date shown in the Schedule above, or the same or substantially the same "wrongful act", "interrelated wrongful act", fact, circumstance or situation underlying or alleged therein.

15. any "claim" alleging, based upon, arising out or attributable to the actual or alleged violation of:

    a. the Employee Retirement Income Security Act of 1974;

    b. the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act;

    c. the Racketeering Influenced and Corrupt Organizations Act of 1970;

    and any rules or regulations promulgated thereunder, amendments thereof, or any similar federal, state or common law;

C. LIMITS OF LIABILITY

1. The Limits of Liability shown in the Schedule above and the rules below fix the most we will pay for EMPLOYED LAWYERS' LIABILITY COVERAGE in excess of the "retained limit" regardless of the number of "insureds", the number of "claims" made or brought, or the number of persons or organizations making "claims".

2. The Aggregate Limit shown in the Schedule above is the most we will pay for "damages" in excess of the "retained limit" because of all "claims", including all "claims" alleging any "interrelated wrongful acts", first made and reported during the policy period. This Aggregate Limit is a sub-limit, and is included within, and is not in addition to, the Personal and Advertising Injury Aggregate Limit shown in the DECLARATIONS.

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number |
| | | | **17 (Page 6 of 12)** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **XSL** | **G27017381** | **02/01/2013   to   02/01/2014** | |

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

3. Subject to 2. above, the Each Claim Limit shown in the Schedule above is the most we will pay for all "damages" in excess of the "retained limit" because of each "claim", including each "claim" alleging any "interrelated wrongful acts", first made and reported during the policy period. All "damages" resulting from a single "claim" shall be deemed a single "damage".

4. All "claims" arising out of the same "wrongful act" and all "interrelated wrongful acts" of the "insureds" shall be deemed to be first made on the date the earliest of such "claims" is first made, regardless of whether such date is before or after the policy period.

5. "Deductible"

   a. A single "Deductible" shall apply to "damages" arising out of a "claim" alleging a "wrongful act", and to "damages" arising out of all "claims" alleging "interrelated wrongful acts".

   b. We will pay all "damages" that we become legally obligated to pay in excess of the "retained limit" up to the Limits of Liability and you will reimburse us for the amount of the "Deductible" plus your "pro-rata share" of all "claims expenses".

6. If the Limit of Liability is exhausted by payment of "damages", our obligations under this EMPLOYED LAWYERS' LIABILITY COVERAGE shall be completely fulfilled and extinguished.

D. ADDITIONAL DEFINITIONS

These definitions apply solely to this EMPLOYED LAWYERS' LIABILITY COVERAGE; and, for that purpose, supersede any conflicting definition set forth elsewhere in this policy.

1. "Claim" means:

   a. a written demand against any "insured person" for monetary or non-monetary "damages";

   b. a civil proceeding against any "insured person" for monetary "damages", non-monetary "damages" or injunctive relief, commenced by the service of a complaint or similar pleading;

   c. an arbitration proceeding against any "insured person" for monetary "damages", non-monetary "damages" or injunctive relief; or

   d. a civil, administrative or regulatory investigation against any "insured person" commenced by the filing of a notice of charges, investigative order or similar document.

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>**17 (Page 7 of 12)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013    to    02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

2. "Claims expenses" means

   a. reasonable and necessary attorneys' fees , expert witness fees and other fees, costs and expenses we incur, or that the "insured" incurs with our written consent, in  the investigation, adjustment, and defense of a covered "claim"; and

   b. premiums for any appeal bond, attachment bond or similar bond, provided that we shall have no obligation to apply for or furnish such bond.

   "Claims expenses" shall not include wages, salaries, fees or costs of directors, officers or "employees" of us or the "insured". "Claims expenses" also shall not include: any tax, fine, sanction, penalty, or punitive or exemplary damages; restitution, reduction, or set off of any fees, other consideration or expenses paid to or charged by any "insured" for professional services; matters deemed uninsurable by law; and any damages which are a multiple of compensatory "damages" awarded against the insured, including without limitation an award of double or treble damages.

3. "Company" means the "Named Insured" and any "subsidiary".

4. "Damages" means any compensatory amount which the "insured person" becomes legally obligated to pay on account of a covered "claim", including monetary judgments, any award of prejudgment or post-judgment interest on that part of any judgment paid under this EMPLOYED LAWYERS' LIABILITY COVERAGE, awards, and settlements, but does not include:

   a. any tax, fine, sanction, penalty, or punitive or exemplary damages;

   b. restitution, reduction, or set off of any fees, other consideration or expenses paid to or charged by any insured for professional legal services:

   c. matters deemed uninsurable by law;

   d. any damages which are a multiple of compensatory damages awarded against the insured, including without limitation an award of double or treble damages;

   e. any amount for which the "insured" is not financially liable or legally obligated to pay;

   f. any amount incurred by an "insured" in a proceeding or investigation that is not at that time a "claim", even if such amount also benefits the defense of a "claim" and even if such proceeding or investigation subsequently gives rise to a "claim";

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number **17 (Page 8 of 12)** |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

    g. disgorgement of profits by an "insured", fees, expenses or costs paid to or charged by an "insured", or the costs of an "insured's" correction;

    h. the costs and expenses of complying with injunctive or other form of non-monetary relief; and

    i. any amount relating to any proceeding by a regulatory or disciplinary official, board or agency to investigate charges of professional misconduct by an "employed lawyer" in the performance of "professional legal services".

5. "Deductible" means the DEDUCTIBLE amount shown in the Schedule above.

6. "Employee" means any past, present, or future employee, including any part-time, and "leased employee" of an insured. "Employee" does not include any "temporary employee".

7. "Employed lawyer" means an attorney admitted to practice law anywhere in the world while an "employee".

8. "Foreign" means any country except the United States (including its territories and possessions), Puerto Rico or Canada.

9. "Insured" means the "company" and any "insured person".

10. "Insured person" means an "employed lawyer", together with an "employee" of the "company" who supports an "employed lawyer" in the performance of "professional legal services" for the "company".

11. "Interrelated wrongful acts" means all "wrongful acts" that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

12. "Leased employee" means a worker leased to the "company" by a labor leasing firm under an agreement between the "company" and the labor leasing firm, to perform "professional legal services". "Leased employee" does not include a "temporary employee".

13. "Named insured" means the entity(ies) or person(s) specified in the Named Insured item of the Declarations.

14. "Pro rata share" of "claim expenses'" means:
(a) If the amount of a settlement or judgment does not exceed the sum of the Each Claim Deductible amount plus the "retained limit", or if the "claim" or "suit" is settled without payment of damages, all "claim expenses" shall be borne solely by you.

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>17 (Page 9 of 12) |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013　to　02/01/2014 | Effective Date of Endorsement |

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

(b) If the amount of a settlement or judgment exceeds the sum of the Each Claim Deductible amount plus the "retained limit", then all "claim expenses" shall be borne by you and us in the same proportion as your and our respective obligations for payment of the amount of judgment or settlement. For purposes of this calculation, your obligation for payment of judgment or settlement includes the "retained limit" plus your obligation for reimbursement of the Each Claim Deductible amount.

15. "Professional legal services" means:

   a. legal services provided by an "employed lawyer" for the "company" and in the "employed lawyer's" capacity as an "employee";

   b. pro bono legal services provided by an "employed lawyer" at the direction of and with the prior written consent of the "company", but only if such "employed lawyer" is a full time and permanent "employee"; and

   c. legal services provided by an "employee" of the "company" who supports an "Employed Lawyer" in the performance of "professional legal services" for the "company", but only while acting under the direct supervision of an "employed lawyer".

16. "Retaliation" means retaliatory treatment on account of:

   a. the actual or attempted exercise by an "employee" of any rights of such an "employee" under any "foreign" law (whether statutory or common), including, but not limited to, workers' and employees' compensation laws;

   b. the filing of any claim under any statute, rule or regulation to protect an "employee" from discrimination by his or her employer if such "employee" discloses or threatens to disclose to a superior or a governmental agency, or if such "employee" gives testimony relating to, any activity within such employer's operations which may be in violation of a statute, rule or regulation or any professional code of ethics;

   c. the disclosure or threat of disclosure by an "employee" of the "company" to a superior or to any governmental agency of any act by an "insured", which act is alleged to be a violation of any federal, state, local or "foreign" law, common or statutory, or any rule or regulation promulgated thereunder;

   d. an "employee" assisting, cooperating or testifying in any proceeding or investigation into whether an insured violated any federal, state, local or "foreign" law, common or statutory, or any rule or regulation promulgated thereunder; or

   e. any strike of any "employee" of the "company".

# EMPLOYED LAWYERS COVERAGE

| Named Insured | **Target Corporation** | Endorsement Number<br>**17 (Page 10 of 12)** |
|---|---|---|

| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013    to    02/01/2014** | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)<br>**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

17. "Subsidiary" means any entity that is not formed as a partnership or joint venture of which the "named insured" owns or has the right to vote more than 50% of the outstanding voting securities representing the present right to vote for election of directors, or the managers or members of the board of managers or equivalent executives of a limited liability company, on or before the inception date of the policy, either directly or indirectly, in any combination, by one or more other "subsidiaries".

18. "Temporary employee" means a person who is furnished to the "company" to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Wrongful act" means any actual or alleged negligent act, error, omission, misstatement, or misleading statement committed by an "insured person" in the performance of or failure to perform "professional legal services".

20. "Wrongful employment practices" means, with respect to any "employee" or applicant for employment with the "company", any actual or alleged:

    a. wrongful dismissal or discharge or termination, whether actual or constructive;

    b. employment-related misrepresentation;

    c. violation of any federal, state, local, or foreign laws (whether common or statutory) concerning employment or discrimination in employment;

    d. sexual harassment or other unlawful workplace harassment;

    e. wrongful deprivation of a career opportunity or failure to employ or promote;

    f. wrongful discipline;

    g. "retaliation";

    h. negligent evaluation;

    i. failure to adopt adequate workplace or employment policies and procedures;

    j. employment-related libel, slander, defamation, or invasion of privacy;

    k. employment-related wrongful infliction of emotional distress;

    l. any actual or alleged discrimination or violation of a natural person's civil rights relating to such discrimination, whether direct, indirect, intentional or unintentional.

# EMPLOYED LAWYERS COVERAGE

| Named Insured | Target Corporation | | Endorsement Number 17 (Page 11 of 12) |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

E. CONDITIONS

These Conditions apply to this EMPLOYED LAWYERS' LIABILITY COVERAGE and are in addition to SECTION IV – CONDITIONS of the Excess Commercial General Liability Policy. Solely with respect to this EMPLOYED LAWYERS' LIABILITY COVERAGE, these additional conditions supersede any conflicting provision set forth elsewhere in this policy.

1. Notice

   a. The "insured" shall, as a condition precedent to its rights under this EMPLOYED LAWYERS' LIABILITY COVERAGE, give to us written notice of any "claim" as soon as practicable, but in no event later than 30 days after:

      (1) the end of the policy period; or

      (2) with respect to "claims" first made during any applicable Extended Reporting Period, before the end of such Extended Reporting Period.

   b. If, during the policy period, any "insured" becomes aware of any specific "wrongful act" which may reasonably give rise to a future "claim" covered under this EMPLOYED LAWYERS' LIABILITY COVERAGE, and if the "insureds" give written notice to us during the policy period or the Extended Reporting Period of:

      (1) the identity of the potential claimants;

      (2) a description of the anticipated "wrongful act" allegations;

      (3) the identity of the "insureds" allegedly involved;

      (4) the circumstances by which the "insureds" first became aware of the "wrongful act";

      (5) the consequences which have resulted or may result; and

      (6) the potential monetary "damages";

      then any "claim" which arises out of such "wrongful act" shall be deemed to have been first made at the time we received such written notice. No coverage is provided for fees, expenses and other costs incurred prior to the time such "wrongful act" results in a "claim".

2. Other Insurance

   This provision applies in addition to SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, Other Insurance:

MS113470213

# EMPLOYED LAWYERS COVERAGE

| Named Insured   Target Corporation | Endorsement Number   17 (Page 12 of 12) |
|---|---|

| Policy Symbol  XSL | Policy Number  G27017381 | Policy Period  02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)  ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

If any "damages" or "claims expenses" covered under this EMPLOYED LAWYERS' LIABILITY COVERAGE are covered under any other valid and collectible insurance, then this EMPLOYED LAWYERS' LIABILITY COVERAGE shall cover such "damages" or "claims expenses", subject to its terms and conditions, only to the extent that the amount of such "damages" or "claims expenses" are in excess of the amount of such other insurance, whether such other insurance is stated to be primary, excess, "contingent" or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided for this EMPLOYED LAWYERS' LIABILITY COVERAGE.

F. EXTENDED REPORTING PERIOD

1. We will automatically provide an Extended Reporting Period as described in paragraphs 2. and 3. below if:

   a. This EMPLOYED LAWYERS' LIABILITY COVERAGE is canceled or not renewed; or

   b. We renew or replace this EMPLOYED LAWYERS' LIABILITY COVERAGE with insurance that:

      (1) Has a Prior or Pending Proceeding Date later than the date shown in the Schedule above; or

      (2) Does not apply on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to claims for negligent acts, errors or omissions that occur before the end of the policy period but not before the Prior or Pending Proceeding Date shown in the Schedule above.

   Once in effect, the Extended Reporting Period may not be canceled.

3. The Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for three (3) years.

   The Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

4. The Extended Reporting Period does not reinstate or increase the Limits of Liability.

All other terms and conditions of this policy remain unchanged.

_____

Authorized Agent

MS113470213

# GENERAL POLICY AMENDATORY ENDORSEMENT

| Named Insured | **Target Corporation** | | Endorsement Number<br>18 (Page 1 of 2) |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

A. The following exclusions under SECTION I COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions are deleted:

q. Lead

t. Electronic Data

u. Recording And Distribution Of Material Or Information In Violation Of Law

B. The following exclusions under SECTION I COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions are deleted:

i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

j. Insureds In Media And Internet Type Businesses

k. Electronic Chatrooms Or Bulletin Boards

l. Unauthorized Use Of Another's Name Or Product

q. Recording And Distribution Of Material Or Information In Violation Of Law

C. Paragraph 7. under SECTION III – LIMITS OF INSURANCE AND RETAINED LIMIT is deleted in its entirety.

D. Paragraph b. of 2. Duties in the Event of Occurrence, Claim or Suit under SECTION IV – CONDITIONS is deleted and replaced with the following:

2. b. You must notify us as soon as practicable in writing of any "occurrence" or offense which may result in a claim or claims involving damages which, in the event that you are held liable, are likely to exceed $1,500,000. Failure to give notice of any "occurrence" which at the time of its happening did not appear to exceed $1,500,000 but which, at a later date would appear to give rise to a claim under this insurance, shall not prejudice such claim.

# GENERAL POLICY AMENDATORY ENDORSEMENT

| Named Insured | **Target Corporation** | | Endorsement Number<br>**18 (Page 2 of 2)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

E. Paragraph f. of 2. Duties in the Event of Occurrence, Claim or Suit under SECTION IV – CONDITIONS is deleted in its entirety.

F. The definition of "property damage" is deleted and replaced with the following: "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

All other terms and conditions remain unchanged.

Authorized Agent

MS113400213

# LIQUOR LIABILITY COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>**19 (Page 1 of 11)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

Schedule

Limits of Insurance:                            Retained Limit: $500,000

Each Common Cause: $4,500,000                   Deductible Amount: $2,500,000

Other Pecuniary Loss Limit: $100,000


SECTION I – LIQUOR LIABILITY COVERAGE

   1.  Insuring Agreement

      a.  We will pay the insured those sums, in excess of the "retained limit" shown in the Schedule, that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. This insurance does not apply to defense, investigation, settlement or legal expenses, or prejudgment interest arising out of any "occurrence" or offense, but we shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this policy that we believe likely to exceed the "retained limit". In such event we and the insured shall cooperate fully.

   In addition:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense, Investigation, Settlement, Legal Expenses And Interest On Judgments.

      b.  This insurance applies to "injury" only if:

      (1) The "injury" occurs during the policy period in the "coverage territory"; and

      (2) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or

MS113630213

# LIQUOR LIABILITY COVERAGE

| Named Insured | **Target Corporation** | | Endorsement Number<br>**19 (Page 2 of 11)** |
|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013   to   02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

d.  "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

(1) Reports all, or any part, of the "injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "injury"; or

(3) Becomes aware by any other means that "injury" has occurred or has begun to occur.

2.  Exclusions

This insurance does not apply to:

a.  Expected Or Intended Injury

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

c.  Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

MS113630213

# LIQUOR LIABILITY COVERAGE

| Named Insured | **Target Corporation** | | | Endorsement Number<br>**19 (Page 3 of 11)** |
|---|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013  to  02/01/2014** | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

d. Liquor License Not In Effect

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

e. Your Product

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

f. Other Insurance

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

g. War

"Injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

MS113630213

# LIQUOR LIABILITY COVERAGE

| Named Insured | **Target Corporation** | | | Endorsement Number<br>**19 (Page 4 of 11)** |
|---|---|---|---|---|
| Policy Symbol<br>**XSL** | Policy Number<br>**G27017381** | Policy Period<br>**02/01/2013** to **02/01/2014** | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS

1. Defense, Investigation, Settlement, Legal Expenses and Prejudgment Interest

   This policy does not apply to defense, investigation, settlement, or legal expenses, or prejudgment interest arising out of any "injury", but we shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this policy that we believe likely to exceed the "retained limit". In such event we and the insured shall cooperate fully.

   Should any claim appear likely to exceed the "retained limit", no loss expenses or legal expenses shall be incurred on behalf of us without our prior consent. Should any claim be adjusted prior to trial court judgment for a total amount not more than the "retained limit", then no loss expenses or legal expenses shall be payable by us.

   Should any claim exceed the "retained limit", then only those loss expenses and legal expenses which are incurred after we have been notified of such claim in accordance with paragraph 2. Duties in the Event of Injury, Claim or Suit of SECTION IV – LIQUOR LIABILITY CONDITIONS, shall be apportioned between you and us as provided for in SECTION III – LIMITS OF INSURANCE, RETAINED LIMIT AND DEDUCTIBLE.

2. Interest on Judgments

   We shall pay interest only on that amount of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limit of insurance shown in the Declarations.

SECTION II – WHO IS AN INSURED



MS113630213

# LIQUOR LIABILITY COVERAGE

| Named Insured **Target Corporation** | Endorsement Number **19 (Page 5 of 11)** |
|---|---|

| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

# LIQUOR LIABILITY COVERAGE

| Named Insured | Target Corporation | | Endorsement Number 19 (Page 6 of 11) |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | |

SECTION III - LIMITS OF INSURANCE, RETAINED LIMIT AND DEDUCTIBLE

1.  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;
    b.  Claims made or "suits" brought; or
    c.  Persons or organizations making claims or bringing "suits".

    The Limits of Insurance shown in the Schedule are included within and erode the General Aggregate Limit shown on the Declarations.

2.  Subject to the General Aggregate Limit on the Declarations, the Each Common Cause Limit is the most we will pay for all "injury" in excess of the "retained limit" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

3.  Subject to the General Aggregate Limit on the Declarations, the Other Pecuniary Loss Limit is the most we will pay for all "pecuniary loss" sustained by one or more persons as the result of the selling, serving or furnishing of any alcoholic beverage to any one person. We will pay up to the Other Pecuniary Loss Limit shown in the Schedule and you will reimburse us for amounts that we pay within such limit.

4.  You agree to assume payment of the "retained limit" before the Limits of Insurance become applicable.

5.  We will pay up to the Limit of Insurance for Each Common Cause and you must reimburse us for the Deductible Amount shown in the Schedule above plus loss expense and legal expense apportioned between you and us as follows:

    (a) If the amount of settlement or judgment does not exceed the sum of the Deductible Amount plus the "retained limit", or if the claim or "suit" is settled without payment of damages, all such loss expense and legal expense shall be borne solely by you.

    (b) If the amount of settlement or judgment exceeds the sum of the Deductible Amount plus the "retained limit", then all such loss expense and legal

# LIQUOR LIABILITY COVERAGE

| Named Insured | Target Corporation | | Endorsement Number 19 (Page 7 of 11) |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

expense shall be borne by you and us in the same proportion as your and our respective obligations for payment of the amount of judgment or settlement. For purposes of this calculation, your obligation for payment of judgment or settlement includes the "retained limit" plus your obligation for reimbursement of the Deductible Amount.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - LIQUOR LIABILITY CONDITIONS

1. Bankruptcy
   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Injury, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "injury" took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any "injury".

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

# LIQUOR LIABILITY COVERAGE

| Named Insured | Target Corporation | | Endorsement Number 19 (Page 8 of 11) |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

    e.  If you report an "injury" to an insurer providing other than Liquor Liability insurance, which later develops into a Liquor Liability claim covered under this policy, failure to report such "injury" to us at the time of the "injury" shall not be deemed a violation of these conditions. However, you shall give immediate notification of the "injury" to us, as soon as is reasonably possible, that the "injury" is a Liquor Liability claim.

    f.  Knowledge of "injury", claim or "suit" by the agent, servant or "employee" of any insured shall not in itself constitute knowledge of the insured unless your executive officers or anyone responsible for administering your insurance program shall have received such notice from the agent, servant or "employee".

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

    a.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

    a.  Primary Insurance

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

    b.  Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

# LIQUOR LIABILITY COVERAGE

| Named Insured **Target Corporation** | | | Endorsement Number 19 (Page 9 of 11) |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

5. **Premium Audit**

    a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

    a. The statements in the Declarations are accurate and complete;

    b. Those statements are based upon representations you made to us; and

    c. We have issued this policy in reliance upon your representations.

Your failure to disclose all hazards or prior "injuries" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "injuries" is not intentional.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    a. As if each Named Insured were the only Named Insured; and

    b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

However, we waive any right of recovery we may have against any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less

# LIQUOR LIABILITY COVERAGE

| Named Insured | Target Corporation | | Endorsement Number 19 (Page 10 of 11) |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

SECTION V - DEFINITIONS

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the "injury" arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above; or

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business

      provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

5. "Injury" means all damages, including damages because of "bodily injury" and "property damage", and including damages for care, loss of services, loss of support, or "pecuniary loss".

6. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Pecuniary loss" shall mean financial loss, but does not include "bodily injury", "property damage", loss of services, loss of support, or any fines or penalties under any liquor control law.

8. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

# LIQUOR LIABILITY COVERAGE

| Named Insured | Target Corporation | | | Endorsement Number<br>19 (Page 11 of 11) |
|---|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

9. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

10. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

11. "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

          (a) You;

          (b) Others trading under your name; or

          (c) A person or organization whose business or assets you have acquired; and

       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

       (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

_____
Authorized Agent

MS113630213

# PEDICABS

| Named Insured | Target Corporation | | | Endorsement Number 20 |
|---|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The following is added to SECTION V – DEFINITIONS:

"Pedicab" means a bicycle rickshaw that is not a self-propelled vehicle whose primary purpose is (i) the local transportation of passengers for hire or without charge or (ii) displaying "advertisements".

The following is added to SECTION V – DEFINITIONS, 11. "Mobile Equipment":

g.  "Pedicabs" that are owned or leased by the named insured and are engaged in the business of (i) transporting passengers for hire or without charge or (ii) displaying "advertisements".

_____
Authorized Agent

MS113410213

# POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL

| Named Insured **Target Corporation** | Endorsement Number **21 (Page 1 of 2)** |
|---|---|

| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013 to 02/01/2014** | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies all insurance provided under the following:

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

It is agreed that exclusion 2.f of Section I, Coverage A is deleted and replaced by the following:

Any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to "pollution", however caused.

The definition of "pollution" in the policy is deleted and replaced by the following:

"Pollution" means the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.

The following definitions are added to the policy:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, virus, and waste, as defined herein. However, "pollutants" does not include any bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

"Waste" means any substance that:

a. is left over, or no longer in use, or discarded;

b. is to be reclaimed, reconditioned or recycled; or

c. has been removed, treated, stored or disposed of as part of any environmental remediation effort.

This exclusion does not apply to "bodily injury" or "property damage" caused by "pollution" if the "pollution":

1. is both unexpected and unintended from the standpoint of the insured;

2. commenced abruptly and instantaneously and can be clearly identified as having commenced entirely at a specific time on a specific date during the policy period; and

3. is caused

# POLLUTION EXCLUSION - COMBINATION EXCEPTION TIME ELEMENT AND NAMED PERIL

| Named Insured  Target Corporation | Endorsement Number 21 (Page 2 of 2) | |
|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

a. solely by fire, lightning, explosion, windstorm, vandalism, malicious mischief, riot or civil commotion, sprinkler leakage, or collision or upset of a motor vehicle or an aircraft or arises out of "your product" included in the "products-completed operations hazard"; or

b. by any peril other than those listed in subparagraph 3.a. above, provided that the discharge, dispersal, seepage, migration, release or escape of "pollutants":

(1) is at or from any
   a. premises, site or location which is owned by or occupied by, or rented or loaned to, any insured; or

   b. premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; and

(2) is known by any insured within 20 days of the commencement of the "pollution"; and

(3) is reported to us within 80 days of the commencement of the "pollution".

Explosion does not include:
   1. shock waves caused by aircraft, generally know as "sonic booms";
   2. electric arcing;
   3. rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown;
   4. water hammer;
   5. rupture, bursting, breaking apart, collapse of pipes, tanks, vessels or containment areas;
   6. operation of a pressure release device.

Notwithstanding anything to the contrary in the foregoing paragraphs and regardless of the cause of the "pollution", this policy shall not apply to:

1. loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the insured, and/or removal of, loss or damage to subsurface oil, gas or other substance;

2. any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to actual or alleged "pollution" or contamination in or from a waste site, meaning the part of any premises, site or location which is or was at the time used by any insured or by others for the storage, disposal, processing or treatment of waste of any kind. Waste site includes but is not limited to any landfill, pit or dumping ground, treatment, storage and disposal facility, lagoon or pond, drum storage or disposal area, disposal pipe outfall, injection well or any other repository of "waste" of any kind, whether permitted or not.

Authorized Agent

MS113420213

# PROFESSIONAL LIABILITY INSURANCE ENDORSEMENT (ERRORS AND OMISSIONS)

| Named Insured  Target Corporation | Endorsement Number  22 (Page 3 of 3) |
|---|---|

| Policy Symbol  XSL | Policy Number  G27017381 | Policy Period  02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)
**ACE American Insurance Company**

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

VI.   SCHEDULE

LIMITS OF LIABILITY

$2,500,000  Each claim
$2,500,000 Aggregate

RETAINED LIMIT

$  500,000  Each Claim

DEDUCTIBLE
$2,500,000 Each claim plus all expenses, costs and interest that are incurred in connection with the investigation, administration, adjustment, subrogation, settlement or defense of any claim or "suit".

 All other terms and conditions remain unchanged.

Authorized Agent

MS113430213

# PRO RATA DEFENSE, INVESTIGATION, SETTLEMENT, AND LEGAL EXPENSES

| Named Insured | Target Corporation | | Endorsement Number 23 |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

It is agreed that the provision, DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS, is deleted and replaced by the following:

DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSES, AND INTEREST ON JUDGMENTS COVERAGES A AND B

1. Defense, Investigation, Settlement, Legal Expenses and Prejudgment Interest

This policy does not apply to defense, investigation, settlement, or legal expenses, or prejudgment interest arising out of any "occurrence" or offense, but we shall have the right and opportunity to assume from the insured the defense and control of any claim or "suit", including any appeal from a judgment, seeking payment of damages covered under this policy that we believe likely to exceed the "retained limit". In such event we and the insured shall cooperate fully. Should any claim arising out of an "occurrence" or offense appear likely to exceed the "retained limit", no loss expenses or legal expenses shall be incurred on behalf of us without our prior consent. Should any claim arising from such "occurrence" or offense be adjusted prior to trial court judgment for a total amount not more than the "retained limit", then no loss expenses or legal expenses shall be payable by us. Should any claim arising out of an "occurrence" or offense exceed the "retained limit", then only those loss expenses and legal expenses which are incurred after we have been notified of such claim in accordance with paragraph 2. Duties in the Event of Occurrence, Claim or Suit of SECTION IV - CONDITIONS, shall be apportioned between you and us as provided for in the Reimbursement of Deductible Endorsement attached to this policy..

2. Interest on Judgments

We shall pay interest only on that amount of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limit of insurance shown in the Declarations.

_____

Authorized Agent

MS113440213

# THREAT SCARE ENDORSEMENT

| Named Insured    Target Corporation | | | Endorsement Number 24 |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period    02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |
| Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. | | | |

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

It is agreed that in the event of threat or warning that physical harm will be done
to the insured's store and the insured acts in a reasonable and prudent manner,
then "bodily injury" and "property damage" resulting from the physical harm threatened
or warned of will not be deemed expected or intended from the standpoint of the
insured. Reasonable and prudent manner means notification of proper authorities
(i.e. police or fire departments) and following whatever instructions are given by
such proper authorities.

This Endorsement does not replace exclusion 2.i.War under SECTION I COVERAGES, COVERAGE
A BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

_____
Authorized Agent

MS113450213

# UNDERLYING COVERAGE ERODES RETENTION ENDORSEMENT

| Named Insured **Target Corporation** | | | Endorsement Number 25 |
|---|---|---|---|
| Policy Symbol **XSL** | Policy Number **G27017381** | Policy Period **02/01/2013  to  02/01/2014** | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Excess General Liability Policy**

The following is added to Section IV. 4. Other Insurance of the Liquor Liability Coverage endorsement:

If other insurance as shown in the schedule is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance.

When this insurance is excess over other insurance shown in the schedule or any renewal thereof, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance;    and

(2) The total of all deductible and self-insured amounts under all that other insurance

if that sum is equal to or exceeds the "retained limit" shown in the Declarations of this policy. If that sum is less than the "retained limit", we will pay only our share of the amount of the loss, if any, that exceeds the "retained limit".

Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

Schedule of Other Insurance

| Insured | Policy Number | Policy Carrier | Policy Period |
|---|---|---|---|
| Target Corporation | HDO G2701737A | ACE American Insurance Company | 2/1/13 to 2/1/14 |

_____

Authorized Agent

MS113460213

## AMENDMENT OF DUTIES IN THE EVENT OF OCCURRENCE

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Target Corporation | | | 26 |
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
EXCESS COMMERCIAL GENERAL LIABILITY POLICY
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
RAILROAD PROTECTIVE LIABILITY**

The following is added to Duties In The Event of Occurrence, Claim or Suit of the Conditions Section:

It is agreed that if you report an occurrence to an insurer providing other than General Liability insurance, which later develops into a General Liability claim covered under this policy, failure to report such occurrence to us at the time of the occurrence shall not be deemed a violation of these conditions.  However, you shall give immediate notification of the occurrence to us, as soon as is reasonably possible, that the occurrence is a General Liability claim.

_____
Authorized Agent

## INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

| Named Insured<br>Target Corporation | | | Endorsement Number<br>27 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The following definition is added:

"Incidental Medical Malpractice Injury" means "Bodily Injury" arising out of the rendering of or failure to render the following services:

a.    medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

b.    the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

Section II – WHO IS INSURED, 2, a. (1) (d) is deleted in its entirety and replaced with the following:

(d)    Arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any licensed physician, dentist, nurse or other medical practitioner employed or retained by you and acting within the scope of his or her license. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside of the scope of their duties as your "employees." Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The Coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

_____
Authorized Agent

## UNINTENTIONAL FAILURE TO DISCLOSE

| Named Insured<br>Target Corporation | Endorsement Number<br>28 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY POLICY
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
RAILROAD PROTECTIVE LIABILITY**

It is agreed that the following is added:

Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of the policy shall not prejudice the coverage afforded by this policy provided such failure to disclose all hazards or prior "occurrences" is not intentional.

Authorized Agent

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    **EXCESS COMMERCIAL GENERAL LIABILITY POLICY**
    **CONTRACTUAL INDEMNIFICATION COVERAGE PART**

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceed $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.    The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## DIFFERENCE IN CONDITIONS/DIFFERENCE IN LIMITS

| Named Insured<br>Target Corporation | | | Endorsement Number<br>30 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013　to　02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**BUSINESS AUTO COVERAGE PART**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**GARAGE COVERAGE PART**

**OWNERS CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**

**TRUCKERS COVERAGE PART**

**EXCESS BUSINESS AUTO COVERAGE FORM**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

**EXCESS TRUCKERS COVERAGE FORM**

**MOTOR CARRIER COVERAGE FORM**

If this policy provides greater coverage, limits or conditions than any of the policies listed in the Schedule of Other Policies below (each such scheduled policy referred to as an "Other Policy"), then this policy will provide coverage for loss to the extent of the difference in the coverages, limits or conditions between this policy and the Other Policy, subject to the terms, limitations and conditions of this policy.

This policy provides such coverage on an excess basis for and only to the extent of any such difference in terms, limits and conditions.  In no event will the coverage afforded under this policy, in combination with any one or more of such Other Policies, exceed the applicable Limit of Insurance of this policy.  The most we will pay if this policy has higher limits than any Other Policy is the difference between the applicable Limit of Insurance of this policy and the limit of insurance for any such Other Policies.

Schedule of Other Policies:

Policy Issuing Company　　　　　　　　Policy Number
CNE-Valley Forge Insurance　　　　　4027250464
Company

_____

Authorized Agent

## Kentucky Local Government Premium Tax Schedule

| Named Insured<br>Target Corporation | | | Endorsement Number<br>31 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

The premium shown on the Declarations includes the total tax amount for the Kentucky Local Government Premium Tax which is the sum of the tax amounts for each taxing jurisdiction shown below. Each tax amount includes the tax prescribed by the State of Kentucky in accordance with KRS 91A.080 and a collection fee pursuant to KRS. 91A.080(4) and 806 KAR. 2:090.

**Taxing Jurisdiction**                                    **Tax Amount**
Louisville-Jefferson                                       ██████

_____
Authorized Agent

## EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL ENDORSEMENT

| Named Insured<br>Target Corporation | Endorsement Number<br>32 |
|---|---|
| Policy Symbol<br>XSL     Policy Number<br>G27017381     Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL AUTOMOBILE POLICY
COMMERCIAL UMBRELLA LIABILITY POLICY
EXCESS LIABILITY POLICY
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
EXCESS BUSINESS AUTO COVERAGE FORM
EXCESS TRUCKERS COVERAGE FORM

**A. EARLIER NOTICE OF CANCELLATION**

For any statutorily permitted reason, other than nonpayment of premium, the minimum number of days required for notice of cancellation as provided in either the Cancellation Condition of the policy or as amended by any applicable state cancellation endorsement is increased to   120   days.

If the state cancellation endorsement provides for more than the number of days notice of cancellation shown above, this provision does not apply.

**B. EARLIER NOTICE OF NON-RENEWAL**

If we decide not to renew this policy for any reason other than nonpayment of premium, the minimum number of days for notice of non-renewal as provided by any applicable state non-renewal endorsement is increased to   120   days.

If the state non-renewal endorsement provides for more than the number of days notice of non-renewal shown above, this provision does not apply.

Authorized Agent

# NOTIFICATION OF PREMIUM ADJUSTMENT

| Named Insured<br>Target Corporation | | | Endorsement Number<br>33 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

For the states and lines of business in which regulatory approval has been granted for the NCCI Large Risk Alternative Rating Option, the ISO Large Risk Alternative Rating Option, or the independently filed ACE Large Risk Rating Plan, the premiums for this policy will be adjusted in accordance with the Notice of Election, signed by you.

_____

Authorized Representative



**ADDITIONAL INSURED ENDORSEMENT**

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 34 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**
**BUSINESS AUTO COVERAGE FORM**

Authorized Agent

## ADDITIONAL INSURED – ███████████████

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 35 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

SCHEDULE



_____
Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## ADDITIONAL INSURED – ███████████████

| Named Insured<br>Target Corporation | Endorsement Number<br>36 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | |
|---|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This Endorsement modifies insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

### SCHEDULE



**ADDITIONAL INSURED –** ███████████████████████

| Named Insured<br>Target Corporation | | | Endorsement Number<br>37 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This Endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**



Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## ALIENATED PREMISES ENDORSEMENT

| Named Insured<br>Target Corporation | Endorsement Number<br>38 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013　to　02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | |
|---|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

Subparagraph (2) of Exclusion **j. Damage To Property** under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted.

_____
Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## AMENDMENT OF CONTRACTUAL LIABILITY
## EXCLUSION FOR PERSONAL INJURY

| Named Insured<br>Target Corporation | | | Endorsement Number<br>39 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

Paragraph e. of Exclusion 2. of Coverage B (Section I) is replaced by the following:

e. "Personal and Advertising Injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

(a) liability for damages that the insured would have in the absence of the contract or agreement; or

(b) liability for "personal and advertising injury," arising out of the offenses of false arrest, detention, or imprisonment, undertaken in that part of the contract or agreement pertaining to your business in which you assume the tort liability of another. The contract or agreement must be made prior to the offense. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

_____
                   Authorized Agent

## CARE, CUSTODY AND CONTROL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>40 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

It is agreed that Section I, Coverage A, Exclusion j.(4) is deleted.

All other terms and conditions remain unchanged.

_____
Authorized Agent

XS-21221 (11/06)

## EMPLOYEE BENEFITS LIABILITY
## REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT

| Named Insured<br>Target Corporation | | | Endorsement Number<br>41 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

**I) DEDUCTIBLE AMOUNT**

    1)    Deductible Amount:  $ 2,500,000

        The Deductible Amount applies to the sum of damages under the Employee Benefits Liability Coverage endorsement XS-6W24a, arising out of any one claim or "suit".

**II) ADDITIONAL PROVISIONS**

    1)    "We" will pay all sums that "we" become legally obligated to pay in excess of the "retained limit" up to the Limits of Insurance under Employee Benefits Liability Coverage endorsement XS-6W24a.

    2)    "You" must reimburse us up to the Deductible Amount for any amounts we have paid under Employee Benefits Liability Coverage endorsement XS-6W24a.

    3)    The Deductible Amount will apply as shown in Section I of this endorsement regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

    4)    If "you" fail to reimburse "us" for any amount due under this endorsement, or fail to provide "us" any collateral that "we" require, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to drawing on any amount of collateral "we" hold or canceling this policy, if permitted by law.

    5)    Each Named Insured is jointly and severally liable for all reimbursable amounts under this endorsement.

    6)    If "we" recover any payment "we" make under this policy from anyone liable for damages, the amount "we" recover will first be applied to any payments "we" made in excess of the Deductible Amount and to "our" expenses in obtaining the recovery.  The remainder of the recovery, if any, will reduce the amount that is reimbursable by "you".

All other terms of this policy remain unchanged.

_____
Authorized Representative

Includes copyrighted material of Insurance Services Office Inc., with its permission

## EXTENDED PROPERTY DAMAGE

| Named Insured<br>Target Corporation | Endorsement Number<br>42 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion 2.a. of Section I, Coverage A, "Bodily Injury and Property Damage" is replaced by the following:

a. "Bodily injury'" or "property damage" expected or intended from the standpoint of the insured  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

_____
Authorized Agent

## FELLOW EMPLOYEE COVERAGE

| Named Insured<br>Target Corporation | | | Endorsement Number<br>43 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

Paragraphs (a), (b) and (c) of 2.a (1) of Section II. – "WHO IS AN INSURED" are deleted.

Coverage under this endorsement is excess over any other insurance, whether primary, excess, contingent or on any other basis, unless written specifically to apply in excess of this policy.

_____
Authorized Agent

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# FIRE, EXPLOSION, SMOKE AND WATER DAMAGE LEGAL LIABILITY

| Named Insured<br>Target Corporation | Endorsement Number<br>44 |
|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

The word **fire** is changed to **fire, explosion, smoke or water damage** where it appears in:

1. The last paragraph of **2. Exclusions** under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY;**

2. Paragraph 6. of **LIMITS OF INSURANCE AND RETAINED LIMIT;**

3. Subparagraph a. of the definition of "Insured Contract".

_____
Authorized Representative

XS-18357a (06/10)

# KNOWLEDGE OF OCCURRENCE

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 45 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

It is agreed that the following condition is added to 2. Duties in the Event of Occurrence, Claim or Suit under SECTION IV – CONDITIONS:

Knowledge of an "occurrence", claim, or "suit" by the agent, servant or "employee" of any insured shall not in itself constitute knowledge of the insured unless individuals in the following positions shall have received such notice from the agent, servant or "employee":

Your executive officers or anyone responsible for administering your insurance program.

Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission

## NONOWNED WATERCRAFT EXCEPTION

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Target Corporation | | | 46 |
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

Subparagraph (2) of Exclusion 2.g. of Coverage I.A., Bodily Injury and Property Damage Liability is deleted in its entirety and replaced by the following:

(2)     A watercraft you do not own that is:

    (a)     Less than ___75___ feet long; and

    (b)     Not being used to carry persons or property for a charge;

Authorized Agent

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 47 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium:  $ _____ .

_____
Authorized Agent

TRIA11b (1/08)

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>Target Corporation | | Endorsement Number<br>48 |
|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

Authorized Agent

# ALASKA CHANGES – ATTORNEYS FEES

| Named Insured<br>Target Corporation | | | Endorsement Number<br>49 |
|---|---|---|---|
| Policy Symbol,<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### SCHEDULE

Attorney's Fees

for a Judgment of $                          Additional Premium   $

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

In any "suit" we defend in Alaska, our obligation under SUPPLEMENTARY PAYMENTS to pay all costs taxed against the "insured" is amended by the following:

**A.** We will not pay that portion of the attorney's fees awarded as costs which does exceed the amount allowed for a contested case in the schedule of attorney's fees contained in Alaska Civil Rule 82 for a judgment equal to the applicable Limit of Insurance.

**B.** However, if a premium and a judgment amount are shown in the Schedule, we will pay, instead of the attorney's fees provided in paragraph **A.** above, that portion of the attorney's fees awarded as costs which do not exceed the amount allowed for a contested case in Civil Rule 82 for the judgment amount shown in the Schedule.

 

_____

Authorized Agent

## ALASKA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 50 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If this policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**I.** The **Cancellation** Condition is replaced by the following:

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2.** We may cancel this policy by mailing to you and the agent or broker of record written notice of cancellation. Such notice, stating the reason for cancellation, must be sent by first class mail at least:

   **a.** 10 days before the effective date of cancellation if we cancel for:

   **(1)** Conviction of the insured of a crime having as one of its necessary elements an act increasing a hazard insured against, or

   **(2)** Fraud or material misrepresentation by the insured or a representative of the insured in obtaining the insurance or by the insured in pursuing a claim under this policy; or

   **b.** 20 days before the effective date of cancellation if we cancel for:

   **(1)** Nonpayment of premium, or

   **(2)** Failure or refusal of the insured to provide the information necessary to confirm exposure or determine the policy premium; or

   **c.** 60 days before the effective date of cancellation if we cancel for any other reason.

  **3.** We will mail our notice to your last known address and the last known address of the agent or broker of record.

  **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

  **5.** A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

  **6.** If this policy is cancelled, we will return any premium refund due. If we cancel, we will return, as the refund, the pro rata unearned premium to the first Named Insured or, if applicable, to the premium finance company.

  If the first Named Insured cancels, the refund will be the pro rata unearned premium minus a cancellation fee of 7.5% of the pro rata unearned premium. However, we will not retain this cancellation fee if this policy is cancelled:

   **a.** And rewritten with us or in our company group; or

   **b** At our request; or

   **c.** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of this insurance; or

   **d.** After the first year for a prepaid policy written for a term of more than one year.

**II.** The following Conditions supersede any provisions to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice of nonrenewal, by first class mail, to you and the agent or broker of record at least 45 days before:

   **a.** The expiration date; or

   **b.** The anniversary date if this policy has been written for more than one year or with no fixed expiration date.

2. We need not mail notice of nonrenewal if:

   **a.** We have manifested in good faith our willingness to renew; or

   **b.** The first Named Insured has failed to pay any premium required for this policy; or

   **c.** The first Named Insured fails to pay the premium required for renewal of this policy.

3. Any notice of nonrenewal will be mailed to your last known address and the last known address of the agent or broker of record.  A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

**NOTICE OF PREMIUM OR COVERAGE CHANGES ON RENEWAL**

If the premium to renew this policy increases more than 10% for a reason other than an increase in coverage or exposure basis, or if after the renewal there will be a material restriction or reduction in coverage not specifically requested by the insured, we will mail written notice to your last known address and the last known address of the agent or broker of record at least 45 days before:

1. The expiration date; or

2. The anniversary date if this policy has been written for more than one year or with no fixed expiration date.

_____

Authorized Agent

## ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>51 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The Cancellation condition is replaced by the following:

    **A. Cancellation**

       1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

       2.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

          **a.**   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

          **b.**   30 days before the effective date of cancellation if we cancel for any other reason.

       3.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

       4.   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

       5.   If this policy is cancelled, we will send the first Named Insured any premium refund due.

          **a.**   We will refund the pro rata unearned premium if the policy is:

             **(1)** Cancelled by us or at our request;

             **(2)** Cancelled but rewritten with us or in our company group;

             **(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

             **(4)** Cancelled after the first year of a prepaid policy that was written for a term of more than one year.

          **b.**   If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in 2., (b), (c) or (d) above, we will refund 90% of the pro rata unearned premium.

          **c.**   The cancellation will be effective even if we have not made or offered a refund.

       6.   Cancellation Of Policies In Effect More Than 60 Days

          **a.**   If this policy has been in effect more than  60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

             **(1)** Nonpayment of premium;

             **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

             **(3)** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

(6) A material violation of a material provision of the policy.

**b.** If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured at least 10 days before the effective date of cancellation.

If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured at least 20 days prior to the effective date of cancellation.

**II.** The following conditions are added and supersede any provisions to the contrary:

## A. NONRENEWAL

1. If we decide not to renew this policy, we will mail to the first Named Insured written notice of nonrenewal at least 60 days before:

   **a.** Its expiration date; or

   **b.** Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

   However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____

Authorized Agent

## ARIZONA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>52 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation condition is replaced by the following:

**A.  Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. Cancellation Of Policies in Effect For 60 Days Or More

    If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. Your conviction of a crime arising out of acts increasing the hazard insured against;

    c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this policy, in continuing this policy or in presenting a claim under this policy.

    d. Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

    e. Substantial breach of contractual duties or conditions;

    f. Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

    g. Determination of the Director of Insurance that the continuation of the policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

    h. Acts or omissions by you or your representative which materially increase the hazard insured against.

If we cancel this policy based on one or more of the above reasons, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reason(s) for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

1. **10 days** before the effective date of cancellation if we cancel for nonpayment of premium; or

2. **45 days** before the effective date of cancellation if we cancel for any of the other reasons.

II. The following Condition supersedes any other condition to the contrary:

**RENEWAL**

A. If we elect to renew this policy and the renewal is subject to any of the following:

1. Increase in premium;

2. Change in deductible;

3. Reduction in limits of insurance; or

4. Substantial reduction in coverage;

we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 30 days before the anniversary or expiration date of the policy.

B. If renewal is subject to any condition described in A.1. through A.4. above, and we fail to provide notice 30 days before the anniversary or expiration date of this policy, the following procedures apply:

1. The present policy will remain in effect until the earlier of the following:

   a. **30 days** after the date of mailing or delivery of the notice; or

   b. The effective date of replacement coverage obtained by the first Named Insured.

2. If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates;

   a. The rates applicable to the terminated policy; or

   b. The rates presently in effect.

3. If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this policy's anniversary or expiration date.

**NONRENEWAL**

A. If we elect not to renew this policy, we will mail by certified mail to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 45 days prior to the expiration of this policy.

B. If notice is mailed, proof of mailing will be sufficient proof of notice.

C. If either one of the following occurs, we are not required to provide written notice of nonrenewal:

1. We or a company within the same insurance group has offered to issue a renewal policy; or

2. You have obtained replacement coverage or agreed in writing to do so.

D. If written notice of nonrenewal is mailed less than 45 days prior to expiration of this policy, and neither **C.1.** or **C.2.** applies, the coverage shall remain in effect until 45 days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date of this coverage shall be considered pro rata based upon the previous year's rate.

_____
Authorized Representative

## CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 53 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The **Cancellation** condition is replaced by the following:

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2. All Policies In Effect For 60 Days Or Less**

   If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

   **a.** 10 days before the effective date of cancellation if we cancel for:

   **(1)** Nonpayment of premium; or

   **(2)** Discovery of fraud or material misrepresentation by:

   **(a)** Any insured or his or her representative in obtaining this insurance; or

   **(b)** You or your representative in pursuing a claim under this policy.

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

   **3. All Policies In Effect For More Than 60 Days**

   **a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

   **(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

   **(2)** Discovery of fraud or material misrepresentation by:

   **(a)** Any insured or his or her representative in obtaining this insurance; or

   **(b)** You or your representative in pursuing a claim under this policy.

   **(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

   **(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

   **(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your reprepresentative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for a reason listed in Paragraph **3.a.(1)** or **3.a.(2);** or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

**2.** We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

---

Authorized Agent

## COLORADO CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 54 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If this policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

   **A. Cancellation**

   1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.  If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

       **a.**  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

       **b.**  30 days before the effective date of cancellation if we cancel for any other reason.

   3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

   5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

   6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

   7.  Cancellation Of Policies in Effect For 60 Days Or More

       **a.**  If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy by mailing through first-class mail to the first Named Insured written notice of cancellation:

           **(1)**  Including the actual reason, at least 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

           **(2)**  At least 45 days before the effective date of cancellation if we cancel for any other reason.

       We may only cancel this policy based on one or more of the following reasons:

           **(a)**  Nonpayment of premium;

           **(b)**  A false statement knowingly made by the insured on the application for insurance; or

           **(c)**  A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

**II.** The following Condition supersedes any other condition to the contrary.

**NONRENEWAL**

If we decide not to renew this policy, we will mail through first-class mail to the first Named Insured shown in the Declarations written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this policy unless we mail through first-class mail written notice of our intention, including the actual reason, to the first Named Insured's last mailing address known to us, at least 45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

**A.** Nonpayment of premium;

**B.** A false statement knowingly made by the insured on the application for insurance; or

**C.** A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the first Named Insured has notified us of the change and we accept such change.

_____
Authorized Agent

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>55 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

The Cancellation Condition is replaced by the following:

**Cancellation**

**A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**B.** Cancellation of policies in effect for less than 60 days.

If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

**1.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**2.** 30 days before the effective date of cancellation if we cancel for any other reason.

**C.** Cancellation of policies in effect for 60 days or more.

**1.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

**(4)** Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

**(5)** A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

**b.** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(1)** Physical changes in the property which increase the hazard insured against;

**(2)** A material increase in the hazard insured against; or

**(3)** A substantial loss of reinsurance by us affecting this particular line of insurance.

**2.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph C.1. above.

3. If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

4. Notice of Cancellation will be delivered sent by:

   (a) Registered mail;

   (b) Certified mail; or

   (c) Mail evidenced by a United States Post Office certificate of mailing.

D. We will give notice to you at your last mailing address known to us.

E. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

F. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. The first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

G. If notice is mailed, proof of mailing will be sufficient proof of notice.

The following is added and supersedes any other provision to the contrary:

## WHEN WE DO NOT RENEW

A. If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

B. This notice will be delivered or sent by:

   1. Registered mail;

   2. Certified mail; or

   3. Mail evidence by a certificate of mailing.

   If notice is mailed, proof of mailing is sufficient proof of notice.

C. However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

D. With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

_____
Authorized Agent

## DISTRICT OF COLUMBIA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | Endorsement Number<br>56 |
|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.    The Cancellation condition is replaced by the following:

    **A.  Cancellation**

        **1.**  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

        **2.**  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.  At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy.

        If this policy has been in effect 30 days or less and is not a renewal of a policy we issued, we may cancel this policy for any reason.

        If this policy has been in effect more than 30 days, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

        **a.**  You have refused or failed to pay a premium due under the terms of the policy;

        **b.**  You have made a material and willful misstatement or omission of fact to us or our employees, agents or brokers in connection with any application to our claim against us;

        **c.**  You have transferred your property or other interest to a person other than you or your beneficiary, unless the transfer is permitted under the terms of the policy; or

        **d.**  The property, interest or use of the property or interest has materially changed with respect to its insurability.

        **3.**  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

        **4.**  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

        **5.**  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund with be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

        **6.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the first Named Insured's last mailing address known to us. We will mail or deliver the notice at least 30 days before the expiration of the policy. At least 5 days before sending notice to the first Named Insured, we will notify the agent or broker, if any, who wrote the policy. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

_____
                                              Authorized Agent

Includes copyrighted material of Insurance Services Office Inc.,
with its permission

# DELAWARE CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | Endorsement Number<br>57 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The Cancellation condition is replaced by the following:

   **A. Cancellation**

   **1.**  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2.**  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      **a.**  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **b.**  30 days before the effective date of cancellation if we cancel for any other reason.

   **3.**  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   **4.**  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **5.**  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   **6.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

II.  The following Condition supersedes any other condition to the contrary:

   **WHEN WE DO NOT RENEW**

   **A.**  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at least 60 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.

   **B.**  Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

   **C.**  If notice of nonrenewal is mailed, it will be sent by certified mail.

_____

                   Authorized Agent

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>58 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The Cancellation condition is replaced by the following:

    **A.  Cancellation**

        1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

        2.   **A.**   CANCELLATION FOR POLICIES IN EFFECT 90 DAYS OR LESS

            If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

            1.   10 days before the effective date of cancellation if we cancel for nonpayment of premium.

            2.   20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

                **(a)**   A material misstatement or misrepresentation; or

                **(b)**   A failure to comply with underwriting requirements established by the insurer.

        **B.**   CANCELLATION FOR POLICIES IN EFFECT FOR MORE THAN 90 DAYS

            If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

            1.   Nonpayment of premium;

            2.   The policy was obtained by a material misstatement;

            3.   There has been failure to comply with underwriting requirements within 90 days of the effective date of coverage;

            4.   There has been a substantial change in the risk covered by the policy; or

            5.   The cancellation is for all insureds under such policies for a given class of insureds.

            If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

                **(a)**   10 days before the effective date of cancellation if cancellation is for the reason stated in Paragraph 2.a above; or

                **(b)**   45 days before the effective date of cancellation if cancellation is for the reasons stated in 2.b, c, d or e above.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

A. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

B. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**Renewal Notification.** If we elect to renew this policy, we will let you know, in writing:

a. Of our decision to renew this policy; and

b. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

---------------------------------------------

Authorized Agent

Includes copyrighted material of Insurance Services Office Inc., with its permission

## GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured Target Corporation | | | Endorsement Number 59 |
|---|---|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The Cancellation condition is replaced by the following:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

   a. If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

   b. If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation. Our notice will state the effective date of cancellation, which will be the later of the following:

      (1) 10 days from the date of mailing or delivering our notice, or

      (2) The effective date of cancellation stated in the first Named Insured's notice to us.

   c. Premium Refund

      (1) If this policy is cancelled, we will send the first Named Insured any premium refund due.

      (2) If we cancel, the refund will be pro rata, except as provided in c. below.

      (3) If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

      (4) If the first Named Insured cancels, the refund may be less than pro rata.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any other provisions to the contrary:

If we decide to:

1.  Cancel or nonrenew this policy; or

2.  Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverage(s); or

3.  Change any policy provision which would limit or restrict coverage;

Then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing addresses known to us. We will mail or deliver notice at least:

1.  10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

2.  45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

3.  45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

---

Authorized Agent

Includes copyrighted material of Insurance Services Office Inc., with its permission

# HAWAII CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>60 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The Cancellation condition is replaced by the following:

**A.  Cancellation**

1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.   We may cancel this policy prior to the expiration of the agreed term, or one year from the effective date of the policy or renewal, whichever is less, only for one or more of the following reasons, by delivering to the first Named Insured written notice of cancellation, at least 30 days before the effective date of cancellation:

   **a.**   Nonpayment of premium;

   **b.**   Fraud or material misrepresentation;

   **c.**   Substantial increase in the risk hazard, except to the extent that we should have reasonably foreseen the change when entering into the contract;

   **d.**   Substantial breaches of contractual duties, conditions or warranties;

   **e.**   Violation of any local fire, health or safety statute or ordinance;

   **f.**   Conviction of the Named Insured for a crime having as one of its necessary elements, an act increasing any hazard that is insured against;

   **g.**   Determination by the insurance commissioner that the continuation of the policy places us in violation of chapter 431, Hawaii Revised Statutes; or

   **h.**   Any good faith reason with the approval of the insurance commissioner.

3.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.   If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund with be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.   If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL OF POLICY**

A.   If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, stating the reasons for nonrenewal, at least 45 days prior to the expiration of this policy.

B.   Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us.  If notice is mailed, proof of mailing will be sufficient proof of notice.

_____
                                          Authorized Agent

Includes copyrighted material of Insurance Services Office Inc.,
with its permission

## IOWA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>61 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The CANCELLATION Condition is replaced by the following:

### CANCELLATION

**A.**   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**B.**  **1.**  We may cancel this policy, by mailing or delivering to the first Named Insured and any loss payee written notice of cancellation at least:

      **a.**   30 days before the effective date of cancellation if we cancel due to loss of reinsurance coverage;

      **b.**   10 days before the effective date of cancellation if we cancel for any other reason.

  **2.**  If this policy is a new policy and has been in effect for less than 60 days, we may cancel for:

      **a.**   loss of reinsurance, subject to 4. below; or

      **b.**   any other reason.

  **3.**  If this policy has been in effect for more 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      **a.**   Nonpayment of premium;

      **b.**   Misrepresentation or fraud made by or with your knowledge in obtaining the policy, when renewing the policy, or in presenting a claim under the policy;

      **c.**   Acts or omissions by you that substantially change or increase the risk insured;

      **d.**   Determination by the commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state.

      **e.**   You have acted in a manner which you knew or should have known was in violation or breach of a policy term or condition; or

      **f.**   Loss of reinsurance, subject to 4. below

  **4.**  We may cancel due to loss of reinsurance which provides coverage to us for a significant portion of the underlying risk insured, but only if the commissioner determines that such cancellation is justified,.

**C.**   We will mail or deliver our notice to the first Named Insured's and any loss payee's last mailing address known to us.

**D.**   Notice of cancellation will state:

  **1.**  The reason for cancellation; and

  **2.**  The effective date of cancellation. The policy period will end on that date.

**E.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**F.** If notice is mailed, a post office department certificate of mailing is proof of receipt of notice. However, if cancellation is for non payment of premium, a certificate of mailing is not required.

**II.** The following supersedes any other provision to the contrary:

**NONRENEWAL**

**A.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any loss payee at least 45 days before the expiration date of this policy, except if:

**a.** We have offered to issue a renewal policy; or

**b.** You have failed to pay a premium due or any advance premium required by us for renewal.

**B.** If notice is mailed, a post office department certificate of mailing is proof of receipt of notice.

_____

Authorized Agent

Includes copyrighted material of Insurance Services Office Inc.,
with its permission

## IDAHO CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 62 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.    The Cancellation Condition is replaced by the following:

1.    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.  Cancellation will be effective on the later of the date requested by the first Named Insured or the date we receive the request.

2.    POLICIES IN EFFECT

a.    60 DAYS OR LESS

If this policy has been in effect for 60 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1)    10 days before the effective date of cancellation if we cancel for nonpayment of premium.  If delivered via United States mail, the 10 day notification period begins to run 5 days following the date of postmark; or

(2)    30 days before the effective date of cancellation if we cancel for any other reason.

b.    MORE THAN 60 DAYS

If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1)    Nonpayment of premium; or

(2)    Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3)    Acts or omissions on your part which increase any hazard insured against;

(4)    Change in risk which materially increases the risk of loss after the policy has been issued or renewed including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

(5)    Loss of or decrease in reinsurance which provided us with coverage for all or part of the risk insured;

(6)    A determination by the Director of Insurance that continuation of this policy would jeopardize our solvency or place us in violation of the insurance laws of Idaho or any other state; or

(7)    Violation or breach by the insured of any policy terms or conditions other than nonpayment of premium.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

(a)    10 days before the effective date of cancellation if we cancel for nonpayment of premium.  If delivered via United States mail, the 10 day notification period begins to run 5 days following the date of postmark; or

       **(b)**   30 days before the effective date of cancellation if we cancel for any other reason stated in **2.b.** above.

   **3.**   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   **4.**   Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **5.**   If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The Cancellation will be effective even if we have not made or offered a refund.

   **6.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.**   The following Condition supersede any provisions to the contrary:

## PREMIUM OR COVERAGE CHANGES AT RENEWAL

   **A.**   If we elect to renew this policy, we will mail or deliver written notice of any total premium increase greater than ten (10%) which is the result of a comparable increase in premium rates, change in deductible, reduction in limits or reduction in coverage to the first Named Insured, at the last mailing address known to us.

   **B.**   Any such notice will be mailed or delivered to the first Named Insured at least 30 days before the expiration or anniversary date of the policy.

   **C.**   If notice is not mailed or delivered at least 30 days before the expiration or anniversary date of the policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until the earlier of the following:

   **1.**   30 days after notice is given; or

   **2.**   The effective date or replacement coverage obtained by the first Named Insured.

   **D.**   If the first Named Insured accepts the renewal, the premium increase, if any, and other changes will be effective on and after the first day of the renewal term.

   **E.**   If the first Named Insured elects not to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

   **F.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

## NONRENEWAL

   **A.**   If we elect not to renew this policy, we will mail or deliver to the first Named Insured a written notice of intention not to renew at least 45 days prior to the expiration or anniversary date of the policy.

   **B.**   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   **C.**   If notice is not mailed or delivered at least 45 days before the expiration or anniversary date of this policy, this policy will remain in effect until 45 days after notice is mailed or delivered. Earned premium for the extended period of coverage will be calculated pro rata at the rates applicable to the expiring policy.

   **D.**   We need not mail or deliver this notice if:

   **1.**   You have offered to renew this policy;

   **2.**   You have obtained replacement coverage; or

   **3.**   You have agreed in writing to obtain replacement coverage.

   **E.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

_____

Authorized Representative

## ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 63 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If this policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**I.** The Cancellation condition is replaced by the following:

**CANCELLATION**

**A.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

    **1.** We may cancel this policy by mailing to you written notice stating the reason for cancellation.

    **2.** If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

    **3.** If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

        **a.** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

        **b.** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**B.** If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

    **1.** Nonpayment of premium;

    **2.** The policy was obtained through a material misrepresentation;

    **3.** Any insured has violated any of the terms and conditions of the policy;

    **4.** The risk originally accepted has measurably increased;

    **5.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

    **6.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**C.** Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

**D.** If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund will be less than pro rata.  The cancellation will be effective even if we have not offered a refund.

**II.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**A.** If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date to:

     **1.** You; and

     **2.** The broker, if known to us, or the agent of record.

**B.** Even if we do not comply with these terms, this policy, will terminate:

     **1.** On the expiration date if:

          **a.** You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

          **b.** We have indicated our willingness to renew this policy to you or your representative; or

          **c.** You have notified us or our agent that you do not want to renew this policy.

**C.** Mailing of Notices

     We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us.  Proof of mailing will be sufficient proof of notice.

 

 

_____
                                    Authorized Agent

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>64 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If this policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

### A.  Cancellation

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  **a.**  Cancellation of Policies in Effect for 90 Days or Less

    If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **(1)**  10 days before the effective date of cancellation if we cancel for nonpayment of premium.

    **(2)**  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us;

    **(3)**  30 days before the effective date of cancellation if we cancel for any other reason.

    **b.**  Cancellation of Policies in Effect for More Than 90 Days

    If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **(1)**  10 days before the effective date of cancellation if we cancel for nonpayment of premium.

    **(2)**  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us;

    **(3)**  45 days before the effective date of cancellation if:

    **(a)**  There has been a substantial change the scale of risk covered by this policy; or

    **(b)**  Reinsurance of the risk associated with this policy has been cancelled.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other condition to the contrary.

**NONRENEWAL**

**A.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   **1.** The expiration date of this policy, if the policy is written for a term of one year or less; or

   **2.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**B.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____
Authorized Agent

## KANSAS CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | Endorsement Number<br>65 |
|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

**A. Cancellation**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  a.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

   (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

   (2)  30 days before the effective date of cancellation if we cancel for any other reason.

   b.  If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   (1)  Nonpayment of premium;

   (2)  This policy was issued because of material misrepresentation;

   (3)  You or any other insured violated any of the material terms and conditions of this policy;

   (4)  Unfavorable underwriting factors, specific to you, exist that were not present at the inception of this policy;

   (5)  A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas; or

   (6)  A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other condition to the contrary.

**NONRENEWAL**

**A.** If we decide not to renew this policy we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 60 days prior to the expiration of the policy.

**B.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____
Authorized Agent

## KENTUCKY CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | Endorsement Number<br>66 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of Policies in Effect For 60 Days Or Less

    If this policy has been in effect for 60 days or less, we may cancel this policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least 14 days before the effective date of cancellation.

3. Cancellation of Policies in Effect For More Than 60 Days

    **A.** If this policy has been in effect for more than 60 days or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Discovery of fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

    **(3)** Discovery of willful or reckless acts or omissions on your part which increase any hazard insured against;

    **(4)** The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

    **(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

    **(6)** We are unable to reinsure the risk covered by the policy; or

    **(7)** A determination by the commissioner that the continuation of the policy would place us in violation of the Kentucky insurance code or regulations of the commissioner.

    **B.** If we cancel this policy based on paragraph G.1. Above, we will mail or deliver to the first Named Insured, a written notice of cancellation, stating the reason for cancellation, at least 75 days before the effective date of the cancellation, at least:

    **(1)** 14 days before the effective date of the cancellation, if cancellation is for non-payment of premium; or

    **(2)** 75 days before the effective date of the cancellation, if cancellation is for any reason stated in G.1.b. through G.1.g. above.

    **4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    **5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    **7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other provisions to the contrary.

**XIV.**    **NONRENEWAL**

  **A.** For the purpose of this Condition:

    **1.** Any policy period or term of less than 6 months shall be considered to be a policy period or term of six months; and

    **2.** Any policy period or term of more than 1 year or any policy with no fixed expiration date shall be considered a policy period or term of 1 year.

  **B.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, at the last mailing address known to us, at least 75 days before the expiration date of the policy period.

  **C.** If notice of nonrenewable is not provided pursuant to this Condition, coverage under the same terms and conditions shall be deemed to be renewed the ensuing policy period upon payment of the appropriate premium until you have accepted replacement coverage with another insurer, or until you have agreed to the nonrenewal.

  **D.** If we mail or deliver a renewal notice to the first Named Insured at least 30 days before the end of the policy period, stating the renewal premium and its due date, the policy will terminate without further notice unless the renewal premium is received by us or our authorized agent by the due date.

  **E.** If this policy terminates because the renewal premium has not been received by the due date, we will, within 15 days, mail or deliver to the first Named Insured at his last known address a notice that the policy was not renewed and the date it was terminated.

  **F.** If notice is mailed, proof of mailing is sufficient proof of notice.

 

_____
                         Authorized Agent

---

## LOUISIANA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | Endorsement Number<br>67 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **a.** CANCELLATION OF POLICIES IN EFFECT FOR FEWER THAN 60 DAYS AND NOT RENEWALS.

    If this policy has been in effect for fewer than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason, subject to the following:

    **(1)** Cancellation for nonpayment of premium

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

    **(2)** Cancellation for any other reason

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the effective date of cancellation.

    **b.** CANCELLATION OF RENEWAL POLICIES AND NEW POLICIES IN EFFECT FOR 60 DAYS OR MORE

    If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

    **(3)** Activities or omissions by you which change or increase any hazard insured against;

    **(4)** Change in the risk which increases the risk of loss after we issued or renewed this policy including an increase in exposure due to regulation, legislation, or court decision;

    **(5)** Determination by the Commissioner of Insurance that the continuation of this policy would jeopardize our solvency or would place us in violation of the insurance laws of this or any other state;

    **(6)** The insured's violation or breach of any policy terms or conditions; or

    **(7)** Any other reason that are approved by the Commissioner of Insurance.

We will mail or deliver written notice of cancellation under this item 2. to the first Named Insured at least:

    **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(b)** 30 days before the effective date of cancellation if we cancel for a reason described in 2.a. through g. above.

  **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

  **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

  **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due, subject to paragraphs e.1. and e.2. The cancellation will be effective even if we have not made or offered a refund.

    **a.** If we cancel, the refund will be pro rata.

    **b.** If the first Named Insured cancels, the refund may be less than pro rata, and will be sent to the first Named Insured within 30 days after the effective date of cancellation.

  **6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other provisions to the contrary.

**NONRENEWAL**

  **A.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured, at the last address shown on the policy, at least 60 days before its expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

  **B.** We need not mail or deliver this notice if:

    **1.** We or another company within our insurance group have offered to issue a renewal policy; or

    **2.** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

  **C.** Any notice of nonrenewal will be mailed or delivered to the First Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

  **D.** Our notice of nonrenewal shall include the Named Insured's loss run information for the period the policy has been in force with us, but will not exceed the last three years of coverage.

  **E.** If the nonrenewal notice is mailed less than sixty days before expiration, coverage will remain in effect under the same terms and conditions until sixty days after notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro rata based upon the previous year's rate. The transfer of a policyholder between companies within the same insurance group shall not be a refusal to renew. In addition, changes in the deductible, changes in rate, changes in the amount of insurance, or reductions in policy limits or coverage shall not be refusals to renew.

_____

Authorized Agent

## MARYLAND CHANGES-CANCELLATION, NONRENEWAL

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Target Corporation | | | 68 |
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**A.** The **Cancellation** Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** When this policy has been in effect for 45 days or less and is not a renewal policy, we may cancel this Coverage Part by mailing to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**b.** 15 days before the effective date of cancellation if we cancel because the risk does not meet our underwriting standards.

**3.** When this policy has been in effect for more than 45 days or is a renewal policy, we may cancel this policy by mailing the first Named Insured, at the last mailing address known to us, written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**b.** 45 days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph **b.**, we may cancel only for one or more of the following reasons:

**(1)** When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

**(2)** Change in the condition of the risk that results in an increase in the hazard insured against.

**(3)** A matter or issue related to the risk that constitutes a threat to public safety.

If we cancel pursuant to Paragraph **3.b.**, you may request additional information on the reason for cancellation within 30 days from the date of our notice.

**4.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be calculated as follows:

**a. Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

**b. Policies Written For More Than One Year**

**(1)** If the policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

**(2)** If the policy is cancelled after the first year, we will refund the pro rata unearned premium.

**c. Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the policy is cancelled.

However, if this policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

5. A certificate of mailing will be proof of mailing and sufficient proof of notice.

**B.** The following condition is added and supersedes any provisions to the contrary:

**When We Do Not Renew**

1. We may elect not to renew this policy by mailing notice of nonrenewal to the first Named Insured at the last mailing address known to us at least 45 days before the expiration date of this policy.

2. We will send notice of nonrenewal to the first Named Insured by certificate of mail or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

3. When we elect not to renew a policy that has been in effect for more than 45 days for a reason other than nonpayment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within 30 days from the date of our notice.

4. If we offer to renew at least 45 days before the renewal date and you fail to make the required premium payment by the renewal date, the policy will terminate on the renewal date for nonpayment of premium.

_____
Authorized Representative

## MAINE CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>69 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   If this is a new policy in effect for less than 60 days, the following is added to the Cancellation Condition and supersedes any other provisions to the contrary:

**A.  Cancellation**

1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.   We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured. If we cancel, cancellation will not be effective prior to 10 days after the receipt by the first Named Insured of the notice of cancellation.

3.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.   Notice of cancellation to the first Named Insured will state the effective date of and reasons for cancellation.  The policy period will end on that date.

5.   If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.   A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

II.   If this policy has been in effect for 60 days or more, or if it is a renewal or continuation of a policy issued by Us, the following is added to the CANCELLATION Condition and supersedes any other provisions to the contrary:

1.   We may cancel this policy only for one or more of the following reasons:

**a.**   Nonpayment of premium;

**b.**   Fraud or material misrepresentation made by you or with your consent in obtaining the policy, continuing the policy or in presenting a claim under the policy;

**c.**   Substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

**d.**   Failure to comply with reasonable loss control recommendations;

**e.**   Substantial breach of contractual duties, conditions or warranties; or

**f.**   Determination by the superintendent of insurance that the continuation of a class or block of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Maine or any other state.

**III.** The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver notice of nonrenewal to the first Named Insured. Nonrenewal will not be effective prior to 30 days after the receipt by the first Named Insured of the notice of nonrenewal. A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

_____
Authorized Agent

LD-2S67a (02/01)
Includes copyrighted material of Insurance Services Office Inc.,
with its permission
Page 2 of 2

## MICHIGAN CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>70 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The Cancellation Condition is replaced by the following:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy at any time by giving us or our authorized agent notice of cancellation on or before the date of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

4. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period.

5. If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

_____

Authorized Representative

# MINNESOTA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 71 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The **CANCELLATION** Condition is replaced by the following:

   **A. CANCELLATION**

   1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.  We may cancel this policy subject to the provisions of **A.3.** below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

   3.  **Policies In Effect**

      a.  **Less than 90 days**

         If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

         1.  10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

         2.  30 days before the effective date of cancellation, if we cancel for any other reason.

      b.  **90 Days Or More**

         If this policy has been in effect for 90 days or more, or if it is a renewal of policy we issued, we may cancel only for one or more of the following reasons:

         1.  Nonpayment of premium;

         2.  Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

         3.  An act or omission by you that substantially increases or changes the risk insured;

         4.  Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

         5.  Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

         6.  Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured.  Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

7. A determination by the commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

8. Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

Under this item **A.3.b.**, will give notice at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

(2) 60 days before the effective date, if we cancel for a reason described in **A.3.b.(2)** through **(8) above**. The notice of cancellation will state the reason for cancellation.

4. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

5. Proof of mailing of any notice shall be sufficient proof of notice.

**B.** The following supersedes any provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we may do so by giving the first Named Insured and any agent written notice of our intent not to renew at least 60 days before the expiration date of this policy. Such notice will be delivered or mailed by first class mail to their last mailing addresses known to us.

Proof of mailing of any notice shall be sufficient proof of notice.

We need not mail or deliver this notice if you have:

1. Insured elsewhere;

2. Accepted replacement coverage; or

3. Agreed not to renew this policy.

_____
Authorized Agent

# MINNESOTA CHANGES ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 72 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

Item 1. **Bankruptcy** of Section IV Conditions is replaced by the following:

Bankruptcy or insolvency or dissolution of the insured or of the insured's estate will not relieve us of our obligations under this policy.

Authorized Agent

# MISSOURI CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 73 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**I.** The Cancellation Condition is replaced by the following:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the actual reason for cancellation, at least:

   **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium

   **b.** 30 days before the effective date of cancellation if cancellation is for one or more of the following reasons:

   **(1)** Fraud or material misrepresentation affecting this policy or a claim filed under this policy or a violation of any of the terms or conditions of this policy;

   **(2)** Changes in conditions after the effective date of this policy which have materially increased the risk assumed;

   **(3)** We become insolvent; or

   **(4)** We involuntarily lose reinsurance for this policy.

   **c.** 60 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Condition supersedes any other provisions to the contrary.

**NONRENEWAL**

**A.** We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the actual reason for nonrenewal at least sixty days prior to the effective date of the nonrenewal.

**B.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**III.** The following is added:

Missouri Property and Casualty Insurance Guaranty Association Coverage Limitations

**A.** Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act is we become insolvent.

**B.** The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act.

   **1.** Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than $25 million on the later of the end of the insured's most recent fiscal year or the December thirty-first of the year next preceding the date the insurer becomes insolvent, provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

   **2.** Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

   However, the Association will not:

   **(1)** Pay an amount in excess of the applicable limit of insurance of the policy from which a claim arises; or

   **(2)** Return to an insured any unearned premium in excess of $25,000.

These limitations have no effect on the coverage we will provide under this policy.

_____

Authorized Agent

## MISSISSIPPI CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>74 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

The following Condition supersedes any other provisions to the contrary.

**NONRENEWAL**

A.  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least:

1.  10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

2.  30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

B.  The notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us.  If notice is mailed, proof of mailing will be sufficient proof of notice.

_____
Authorized Agent

LD-2S71a (02/01) Printed in U.S.A.        Includes copyrighted material of Insurance Services Office Inc.,
with its permission

# MONTANA AMENDATORY ENDORSEMENT

| Named Insured<br>Target Corporation | Endorsement Number<br>75 |
|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013 to 02/01/2014 | Effective Date of Endorsement |

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The Cancellation condition is replaced by the following:

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. a. **MIDTERM CANCELLATION**

   We may cancel this policy based on the provisions below, by mailing or delivering written notice to the first Named Insured at least 10 days before the effective date of cancellation.

   **(1)** If this policy has been in effect for less than 60 days, except as provided in B.1.c. below, we may cancel for any reason.

   **(2)** If this policy has been in effect for 60 days or more, we may cancel this policy prior to the expiration of the agreed term or prior to one year from the effective date of the policy or renewal, whichever is less, only for one or more of the following reasons:

   **(a)** Failure to pay a premium when due;

   **(b)** Material misrepresentation;

   **(c)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

   **(d)** Substantial breaches of contractual duties, conditions or warranties;

   **(e)** Determination by the Commissioner of Insurance that continuation of the policy would place us in violation of the Montana Insurance Code;

   **(f)** Financial impairment of us; or

   **(g)** Such other reasons that are approved by the Commissioner of Insurance.

   **(3)** If this policy has been issued for a term longer than one year, and if either the premium is prepaid or an agreed term is guaranteed for additional premium consideration, we may cancel this policy only for one or more of the reasons stated in B.1.b. above.

   b. **ANNIVERSARY CANCELLATION**

   We may cancel any policy with a term or more than one year by mailing or delivering to the first Named Insured written notice of cancellation at least 45 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. However, when a financed insurance policy is canceled, we will send any refund due to the premium finance company on a pro rata basis.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any other provisions to the contrary.

**WHEN WE DO NOT RENEW**

A. If we elect not to renew this policy or Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations and agent, if any, a notice of intention not to renew at least 45 days before the agreed expiration date.

B. We need not mail or deliver this notice if:

1. You have purchased insurance elsewhere;

2. You have accepted replacement coverage;

3. You have requested or agreed to nonrenewal; or

4. This policy is expressly designated as nonrenewable.

**CONFORMITY WITH MONTANA STATUTES**

A. The provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this policy.

B. Any provision of this policy (including endorsements which modify the policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

Authorized Agent

## NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>76 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The Cancellation condition is replaced by the following:

    **A. Cancellation**

        1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

        **2. POLICIES IN EFFECT LESS THAN 60 DAYS**

        If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

          **a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

          **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

        **3. CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

        If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

          **a.** Expiration of the policy term; or

          **b.** Anniversary date,

        stated in the policy only for one or more of the following reasons:

          **(1)** Nonpayment of premium;

          **(2)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

          **(3)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

          **(4)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

          **(5)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

          **(6)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

          **(7)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S.58-41-30;

(8) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

(9) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

(10) You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least;

(a) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

4. Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

5. We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

II. The following Conditions are added and supersede any other conditions to the contrary;

**NONRENEWAL**

A. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

1. Expiration of the policy if this policy has been written for one year or less; or

2. Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

B. We need not mail or deliver the notice of nonrenewal if you have:

1. Insured property covered under this policy, under any other insurance policy;

2. Accepted replacement coverage; or

3. Requested or agree to nonrenewal of this policy.

C. If notice is mailed, proof of mailing will be sufficient proof of notice.

D. The written notice of cancellation or nonrenewal will:

1. Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

2. State the reason or reasons for cancellation or nonrenewal.

.

_____
Authorized Agent

## NORTH DAKOTA CHANGES –
## CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>77 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I. The **Cancellation** Condition is replaced by the following:

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2.** POLICIES IN EFFECT

  **a.** FOR LESS THAN 90 DAYS

  If this policy has been in effect for less than 90 days, we may cancel the policy for any reason by mailing to the first Named Insured, and agent, if any, written notice of cancellation at least:

  **(1)** 10 days before the effective date of cancellation; or

  **(2)** 5 days before the effective date of cancellation for any condition stated in paragraph B. of this endorsement.

  **b.** FOR 90 DAYS OR MORE OR POLICIES WITH TERMS LONGER THAN ONE YEAR OR CONTINUOUS POLICIES

  If this policy has been in effect for 90 days or more, is a renewal of a policy we issued, is a policy issued for a term longer than one year or is a continuous policy, we may cancel the policy only for one or more of the following reasons:

  **(1)** Nonpayment of premiums;

  **(2)** Misrepresentation of fraud made by the "insured" or with the "insured's" knowledge in obtaining the policy or in pursing a claim under the policy;

  **(3)** The "insured's" actions that have substantially increased or substantially changed the risk insured;

  **(4)** The "insured's" refusal to eliminate known conditions that increase the potential for loss, after our notification that the condition must be removed;

  **(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

  **(6)** Loss of reinsurance which provided us with coverage for a significant amount of the underlying risk insured;

  **(7)** A determination by the insurance commissioner that the continuation of the policy could place us in violation of North Dakota insurance laws;

  **(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. Cancellation for this reason does not apply to persons who are retired at sixty-two years of age or older or to any person who is disabled according to social security standards;

  **(9)** A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to Covered Property or the occupancy thereof which substantially increases any hazard insured against; or

**(10)** We will mail written notice of cancellation to the first Named Insured, and agent, if any, at least:

    **(a)** 10 days before the effective date of cancellation for nonpayment of premium; or

    **(b)** 30 days before the effective date of cancellation for any reason stated in paragraphs **2.b.(2)** through **(9)** above.

However, for policies with terms longer than one year or continuous policies, notice of cancellation will be mailed at least 30 days prior to any anniversary date for any reason stated in paragraphs **2.b.(1)** through **(9)** above.

If we cancel for a reason listed in paragraphs **2.b.(1)** through **(9)** above, the notice of cancellation will state our reasons for cancellation.

**3.** We will mail our notice, by first class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**II.** The following Condition supersedes any provision to the contrary.

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail to the first Named Insured shown in the Declarations, and agent, if any, a notice of intention not to renew at least 60 days prior to the expiration date of the policy. The notice of nonrenewal will state our reason for nonrenewal.

**2.** We will mail our notice, by first class mail, to the first Named Insured and agent, if any, at the last mailing address known to us.

**3.** We need not mail or deliver this notice if you have:

    **a.** Insured elsewhere;

    **b.** Accepted replacement coverage; or

    **c.** Requested or agreed to nonrenewal.

 

 

                                                                Authorized Agent

# NEBRASKA – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 78 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The Cancellation Condition is replaced by the following:

   **A. Cancellation**

   1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.   We may cancel this policy by mailing by registered, certified or first class mail to the first Named Insured at the Insured's last known mailing address written notice of cancellation, stating the reasons for cancellation; at least:

       a.   10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

       b.   60 days before the effective date of cancellation if cancellation is for any other reason.

       If sent by First Class Mail, a United States Postal Services certificate of mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate.

       If this policy has been in effect for 60 days or more or is a renewal of a policy written through us, we may cancel this policy only for one or more of the following reasons:

       a.   Nonpayment of premium;

       b.   The policy was obtained through a material misrepresentation;

       c.   You submit a fraudulent claim under this policy;

       d.   Violation by you or any of the terms and conditions of this policy;

       e.   The risk originally accepted has substantially increased;

       f.   Certification to the Director of Insurance of our loss of reinsurance which provided coverage to us for all or a substantial part of the underlying risk insured; or

       g.   The determination by the Director of Insurance that the continuation of the policy could place us in violation of the Nebraska Insurance laws.

   3.   We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   4.   Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

   5.   If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

   6.   If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following Condition supersedes any other provisions to the contrary.

**NONRENEWAL**

**A.** If we decide not to renew this policy, we will mail by registered, certified or first class mail written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at the Insured's last known mailing address, at least 60 days prior to the expiration date of this policy.

**B.** If sent by First Class Mail, a United States Postal Service certificate of mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate.

_____

Authorized Agent

## NEW HAMPSHIRE CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>79 |
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The Cancellation condition is replaced by the following:

   A.   **Cancellation**

      1.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance  written notice of cancellation.

      2.   We may cancel this policy by mailing or delivering  to the first Named Insured written notice of cancellation stating the reasons for cancellation, at least:

         a.   10 days before the effective date of cancellation if we cancel for:

            (1)   Nonpayment of premium; or
            (2)   Substantial increase in hazard;

         b.   60 days before the effective date of cancellation if we cancel for any other reason.

      3.   If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

         a.   Nonpayment of premium;

         b.   Fraud or material misrepresentation affecting the policy or in the presentation of a claim thereunder, or violation of any of the terms or conditions of the policy; or

         c.   Substantial increase in hazard; provided that cancellation for this reason shall be effective only after prior approval of the Commissioner.

      4.   We will mail or deliver our notice to you last address known to us.  If notice is mailed, it will be by:

         a.   Certified mail or certificate of mailing if cancellation is for nonpayment of premium.

         b.   Certified mail if cancellation is for any other reason.

      5.   If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund with be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

      6.   If notice is mailed, proof of mailing will be sufficient proof of notice.

II.  The following Condition supersedes any other provisions to the contrary:

   **NONRENEWAL**

      1.   If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to your last mailing address known to us at least 60 days prior to the expiration of the policy, or its anniversary date if it is a policy written for a term of more than one year.

2. However, we need not mail or deliver this notice if:

   a. We have indicated a willingness to renew:

   b. We refuse to renew due to nonpayment of premium;

   c. You do not pay any advance premium required by us for renewal; or

   d. Any property covered in this policy is insured under any other insurance policy.

3. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____

Authorized Agent

Includes copyrighted material of Insurance Services Office Inc., with its permission

## NEW JERSEY CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | Endorsement Number<br>80 |
|---|---|

| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**Any cancellation or non-renewal provisions contained in the policy to which<br>this endorsement is attached are deleted and replaced by the following:**

I.  Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured.  The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

### A.  CANCELLATION

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured and any person entitled to notice under this policy written notice of cancellation at least:

    a.  10 days before the effective date of cancellation, if we cancel for:

        (1)  Nonpayment of premium; or

        (2)  Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

            (a)  "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds.  Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a "moral hazard'; and

            (b)  The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible.  Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a "moral hazard."

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.   If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**7.** Cancellation of Policies in Effect For 60 Days or More.

    **a.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f):

        **(3)** Material misrepresentation or nondisclosures to us of a material fact at the time of acceptance of the risk;

        **(4)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

        **(5)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

        **(6)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

        **(7)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

        **(8)** Loss of or reduction in available insurance capacity;

        **(9)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

        **(10)** Loss of or substantial changes in applicable reinsurance;

        **(11)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

        **(12)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefor and a reasonable opportunity to respond;

        **(13)** Agency termination, provided:

            **(a)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

            **(b)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

        **(14)** Any other reason in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

    **b.** If we cancel this policy based on paragraph 7.a.(1) or (2) above, we will mail a written notice, stating the reason for cancellation, to the first Named Insured and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice. If we cancel this policy for any other reason listed above, we will mail a written notice, stating the reason for cancellation. to the first Named Insured and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

    **c.** Notice will be sent to the last mailing addresses known to us, by:

        **(1)** Certified mail; or

        **(2)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

    **d.** We need not send notice of cancellation if you have:

       **(1)** Replaced coverage elsewhere; or

       **(2)** Specifically requested termination.

## B. NONRENEWAL

1. We may elect not to renew this policy for any reason permitted to cancel it. If we elect not to renew this policy, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

2. This notice will be sent to the first Named Insured at the last mailing address known to us by:

    **a.** Certified mail; or

    **b.** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the first Named Insured's name and address.

3. We need not mail or deliver this notice if you have:

    **a.** Replaced coverage elsewhere; or

    **b.** Specifically requested termination.

Authorized Agent

## NEW MEXICO CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>81 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

I. The **Cancellation** Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Permissible Reasons And Notice Period**

   a. If this policy is in effect less than 60 days, we may cancel for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

   b. If this policy is in effect 60 days or more, we may cancel only for one or more of the following reasons:

      (1) Nonpayment of premium.

      (2) There has been a substantial change in the risk assumed by us since the policy was issued.

      (3) The policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by us.

      (4) Willful and negligent acts or omission by the insured have substantially increased the hazards insured against.

      (5) You presented a claim based on fraud or material misrepresentation.

   c. If we cancel subject to 2.b. above, we will mail or deliver to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation, for the reason set forth in **2.b.(1)**.

      (2) 30 days before the effective date of cancellation, for the reason set forth in **2.b.(2)**.

      (3) 15 days before the effective date of cancellation, for a reason set forth in **2.b.(3)**, or **2.b.(4)** or **2.b.(5)**.

      The written notice will state the reason for cancellation, except that such statement may be omitted from a notice mailed to an additional insured or lienholder under this policy.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II.   The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of the nonrenewal not less than 30 days before the expiration date of the policy.

---
Authorized Agent

## NEVADA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | Endorsement Number<br>82 |
|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |

| Issued By (Name of Insurance Company)<br>ACE American Insurance Company |
|---|

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The following are added to the CANCELLATION Condition:

    **A.  Cancellation**

        1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

        2.  We may cancel this policy by mailing or delivering  to the first Named Insured written notice of cancellation at least:

            a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

            b.  30 days before the effective date of cancellation if we cancel for any other reason.

        3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

        4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

        5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund with be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

        6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

        **7.  A.  MIDTERM CANCELLATION**

            If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

            1.  Nonpayment of premium;

            2.  Conviction of the insured of a crime arising out of acts increasing in hazard insured against;

            3.  Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

            4.  Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

            5.  A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

6. A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

7. A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

**B. ANNIVERSARY CANCELLATION**

If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

II. The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

A. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the anniversary date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

B. We need not provide this notice if:

1. You have accepted replacement coverage.

2. You have requested or agreed to nonrenewal; or

3. This policy is expressly designated as nonrenewable.

**III. NOTICES**

A. Notice of cancellation or nonrenewal in accordance with I. and II. above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

B. We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

---

Authorized Agent

# NEW YORK CHANGES

| Named Insured<br>Target Corporation | | | Endorsement Number<br>83 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies all insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY
CONTRACTUAL INDEMNITY COVERAGE PART OCCURRENCE CORRIDOR
CONTRACTUAL INDEMNITY COVERAGE PART SLIDING ATTACHMENT
CONTRACTUAL INDEMNITY COVERAGE PART DEDUCTIBLE REIMBURSEMENT
EXCESS BUSINESS AUTOMOBILE POLICY
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
EXCESS CATASTROPHE LIABILITY POLICY
EXCESS LIABILITY POLICY
EXCESS TRUCKERS LIABILITY POLICY

The **Legal Action Against Us Condition** is replaced by the following:

**Legal Action Against Us**

**a.** Except as provided in Paragraph b., no person or organization has a right under this Coverage Part:

   **(1)** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **(2)** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**b.** With respect to "bodily injury" claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage or do not admit liability, we or an insured:

   **1)** Brings an action to declare the rights of the parties under the policy; and

   **2)** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

_____
Authorized Agent

## NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | Endorsement Number<br>84 |
|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013　to　02/01/2014 | Effective Date of Endorsement |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**I.** The **Cancellation** Condition is replaced by the following:

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2. Cancellation Of Policies in Effect**

    **a. 60 Days Or Less**

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **(1)** 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph **2.a. (2)** below.

    **(2)** 15 days before the effective date of cancellation if we cancel for any of the following reasons:

      **(a)** Nonpayment of premium;

      **(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

      **(c)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

      **(d)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

      **(e)** Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

      **(f)** Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

      **(g)** A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

**(h)** Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph **2.a. (2)** above, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation.

**3.** We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**7.** If one of the reasons for cancellation in Paragraph **2.a. (2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**II. The following Conditions supersede any other provisions to the contrary.**

**1. NONRENEWAL**

If we decide not to renew this policy, we will send notice as provided in Paragraph **3.** below.

**2. CONDITIONAL RENEWAL**

If we conditionally renew this policy subject to a:

**a.** Change of limits;

**b.** Change of type of coverage;

**c.** Reduction of coverage;

**d.** Increased deductible;

**e.** Addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph **3.** below.

**3. NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL**

**a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **1.** and **2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reasons(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If we violate any of the provisions of Paragraphs **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

   **(1)** Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

   **(2)** On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

_____
Authorized Agent

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 85 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.   The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

II.  With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **CANCELLATION** Condition is replaced by the following:

A.   We may cancel this policy only for one or more of the following reasons, except as provided in paragraph F. below.

1.   Nonpayment of premium;

2.   Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

3.   Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

4.   The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

5.   Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

6.   Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendation; or

7.   A determination by the Superintendent of Insurance the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

B.   We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us.  Proof of mailing will be sufficient proof of notice.

C.   We will mail the notice of cancellation at least:

1.   10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

2.   30 days before the effective date of cancellation, if we cancel for a reason stated in B.2. through B.7. above.

**D.** **1.** The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **2.** The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

**E.** Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

    If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

**F.** The cancellation will be effective even if we have not made or offered a refund.

**III.** The following Condition supersedes any other provisions to the contrary.

**NONRENEWAL**

**A.** If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent, if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

**B.** We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

**C.** Proof of mailing will be sufficient proof of notice.

_____
Authorized Agent

# OKLAHOMA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | Endorsement Number<br>86 |
|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The **CANCELLATION** condition is replaced by the following:

   A.  **Cancellation**

   1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      b.  45 days before the effective date of cancellation if we cancel for any other reason.

   After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

   (1)  Nonpayment of premium;

   (2)  Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

   (3)  Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

   (4)  The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

   (5)  A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

   (6)  A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

   (7)  Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

   (8)  Loss of or substantial changes in applicable reinsurance.

   3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following conditions are added and supersedes any provisions to the contrary.

**NONRENEWAL**

A. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

1. The expiration date of the policy; or

2. An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

B. Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

C. If notice is mailed:

1. It will be considered to have been given to the first Named Insured on the day it is mailed.

2. Proof of mailing will be sufficient proof of notice.

D. If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

E. We will **not** provide notice of nonrenewal if:

1. We, or another company within the same insurance group, have offered to issue a renewal policy; or

2. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

F. If we have provided the required notice of nonrenewal as described in A. above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

**PREMIUM OR COVERAGE CHANGES AT RENEWAL**

1. If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured at the last mailing address known to us.

2. Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

   a. The expiration date of this policy; or

   b. An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

3. If notice is mailed:

   a. It will be considered to have been given to the first Named Insured on the day it is mailed.

   b. Proof of mailing will be sufficient proof of notice.

4. If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

5. If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

   a. 45 days after notice is given; or

   b. The effective date of replacement coverage obtained by the insured;

   whichever occurs first.

   If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

6. We will **not** provide notice of the following:

   a. Changes in a rate or plan filed with or approved by the State Board for Property & Casualty Rates or filed pursuant to the Property and Casualty Competitive Loss Cost Rating Act and applicable to an entire class of business;

   b. Changes which are based upon the altered nature or extent of the risk insured.

   c. Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

_____
Authorized Agent

## OREGON CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>87 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

**A. Cancellation**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  **a.** If this policy has been in effect for fewer than 60 days and is not a renewal policy, we may cancel for any reason.

    **b.** If this policy has been in effect for 60 days or more or is a renewal policy, we may cancel only for one or more of the following reasons:

    1.  Nonpayment of premium;

    2.  Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

    3.  Substantial increase in the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to rules, legislation or court decision;

    4.  Substantial breach of contractual duties, conditions or warranties;

    5.  Determination by the commissioner that the continuation of a line of insurance or class of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Oregon or any other state; or

    6.  Loss or decrease in reinsurance covering the risk.

    **c.** If this policy has been in effect for 60 days or more or is a renewal policy, we may cancel for any other reason approved by the commissioner by rule.

3.  We will mail or deliver to the first Named Insured written notice of cancellation, stating the reason for cancellation.

4.  Cancellation will not be effective until at least 10 working days after the first Named Insured receives our notice.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**II.** The following Conditions supersedes any other provisions to the contrary.

**NONRENEWAL**

We may elect not to renew this policy by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal before the:

**A.** Expiration date of the policy; or

**B.** Anniversary date of the policy if the policy is written for a term of more than one year or without a fixed expiration date.

However, if this policy is issued for a term of more than one year and for additional consideration the premium is guaranteed, we may not refuse to renew the policy at its anniversary date.

Nonrenewal will not be effective until at least 30 days after the first Named Insured receives our notice.

**MAILING OF NOTICES**

If notice of cancellation or nonrenewal is mailed, a post office certificate of mailing will be conclusive proof that the first Named Insured received the notice of the third calendar day after the day of the certificate of mailing.

_____
Authorized Agent

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>88 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

The CANCELLATION Condition is replaced by the following:

**CANCELLATION**

**A.** The first Named Insured shown in the Declarations may cancel this policy by mailing or giving notice of cancellation.

**B. CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 60 DAYS**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**C. CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

1. You have made a material misrepresentation which affects the insurability of the risk.  Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

2. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit.  Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

3. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

4. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting inforce policies.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

5. Material failure to comply with policy terms, conditions or contractual duties.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

6. Other reasons that the Insurance Commissioner may approve.  Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**D.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  Notice of cancellation will state the specific reasons for cancellation.

**E.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**F.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**G.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

The following supersedes any provisions to the contrary:

**A. NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**B. INCREASE PREMIUM**

If we increase your renewal premium, we will mail or deliver to the first Named Insured;

**1.** Written notice of our intent to increase the premium at least 60 days before the effective date of the premium increase; and

**2.**

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

_____
Authorized Agent

# RHODE ISLAND CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 89 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation condition is replaced by the following:

   **A.  Cancellation**

   1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.  **a.** We may cancel this policy by giving, mailing or delivering to the first Named Insured and agent, if any, written notice of cancellation at least:

      **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

      **b.** If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      **(1)** Nonpayment of premium;

      **(2)** Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

      **(3)** Activities or omissions on your part which increase any hazard insured against; including a failure to comply with loss control recommendations;

      **(4)** Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including but not limited to an increase in exposure due to regulation, legislation or court decision;

      **(5)** Loss or decrease of our reinsurance covering all or part of the risk or exposure covered by the policy;

      **(6)** Determination by the Commissioner of Insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of this state;

      **(7)** Owner or occupant incendiarism;

      **(8)** Violation or breach by you of any policy terms or conditions;

      **(9)** Constructive or actual total loss of the Covered Property;

      **(10)** Such other reasons as may be approved by the Commissioner of Insurance.

   3.  We will give, mail or deliver written notice to the first Named Insured at the last address known to us, and to the agent, if any.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The Cancellation will be effective even if we have not made or offered a refund.

The following sentence is added to paragraph E.:

If this policy is financed under a premium finance agreement and we cancel at the request of the premium finance company upon default of the first Named Insured, any premium refund will be determined on a pro rata basis.

6.  Proof of giving, mailing or delivering notice of cancellation will be sufficient proof of notice.

7.  We will provide you with the reasons for cancellation if:

a.  You request in writing a statement of the reasons for cancellation; and

b.  You agree in writing to hold us harmless from liability for any:

(1)  Communication giving notice of, or specifying the reasons for, cancellation; or

(2)  Statement made in connection with an attempt to discover or verify the existence of conditions which would be a reason for cancellation as provided under paragraph B.1. above.

II.  The following supersedes any provision to the contrary:

**NONRENEWAL**

A.  If we elect not to renew this policy, we will give, mail or deliver to the first Named Insured and agent, if any, written notice of nonrenewal at least 30 days before:

1.  The expiration date of the policy; or

2.  An anniversary date of the policy, if the policy is written for a term longer than one year or with no fixed expiration date.

B.  However, we need not give, mail or deliver this notice if:

1.  We have offered to issue a renewal policy; or

2.  The first Named Insured has obtained, or has agreed in writing to obtain, replacement coverage.

_____
Authorized Agent

Includes copyrighted material of Insurance Services Office Inc., with its permission

## SOUTH CAROLINA CHANGES-CANCELLATION, NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 90 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

**A.** The **Cancellation** Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured and the agent, if any, written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's and agent's last known addresses.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. **Cancellation Of Policies In Effect For 120 Days Or More**

   If this policy has been in effect for 120 days or more, or is a renewal or continuation of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy;

   **c.** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy;

   **d.** Substantial breaches of contractual duties, conditions or warranties; or

   **e.** Loss of our reinsurance covering all or a significant portion of the particular policy insured, or where continuation of the policy would imperil our solvency or place us in violation of the insurance laws of South Carolina.

   Prior to cancellation for reasons permitted in this Item **e.,** we will notify the Commissioner, in writing, at least 60 days prior to such cancellation and the Commissioner will, within 30 days of such notification, approve or disapprove such action.

   Any notice of cancellation will state the precise reason for cancellation.

## SOUTH DAKOTA CHANGES - CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 91 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

   **A.  Cancellation**

   1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 20 days before the effective date of cancellation.

   After 60 days from the effective date of policy issuance a notice of cancellation may not be issued unless it is based upon at least one of the following reasons as stated in South Dakota law:

   (a)  Nonpayment of premium;

   (b)  Discovery of fraud or material misrepresentation made by or with the knowledge of the Named Insured in obtaining the policy, continuing the policy, or in presenting a claim under the policy;

   (c)  Discovery of acts of omissions on the part of the Named Insured which increase any hazard insured against;

   (d)  The occurrence of change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

   (e)  A violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

   (f)  A determination by the director of insurance that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of South Dakota.

   (g)  Your violation or breach of any policy terms or conditions; or

   (h)  Such other reasons as are approved by the director of insurance.

   3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II. The following condition supersedes any provisions to the contrary:

**NONRENEWAL**

A. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal not less than 60 days before:

1. The expiration date; or

2. The anniversary date if this is a continuous policy.

B. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.



_____
Authorized Representative

# TENNESSEE CHANGES -
# CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 92 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

Issued By (Name of Insurance Company)
ACE American Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I.  The **Cancellation** Condition is replaced by the following:

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.

    The refund will be pro rata if:

    a.  We cancel; or

    b.  The policy is cancelled at the request of a premium finance company that has financed this policy under a premium finance agreement.

    The refund may be less than pro rata if the first Named Insured cancels the policy.

    The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

7.  If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a.  Nonpayment of premium, including any additional premium, calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

    b.  Your conviction of a crime increasing any hazard insured against;

    c.  Discovery of fraud or material misrepresentation on the part of either of the following:

        1.  You or your representative in obtaining this insurance; or

        2.  You in pursing a claim under this policy;

    d.  Failure to comply with written loss control recommendations;

    e.  Material change in the risk which increases the risk of loss after we issued or renewed insurance coverage;

f.   Determination by the insurance commissioner that the continuation of the policy would jeopardize our solvency or would place us in violation of the insurance laws of Tennessee or any other state;

g.   Your violation or breach of any policy terms or conditions; or

h.   Other reasons that are approved by the insurance commissioner.

Notice of cancellation will state the reason for cancellation.

II.   The following Conditions supersede any other provisions to the contrary:

## NONRENEWAL

1.   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and agent, at least 60 days before the expiration date unless:

a.   We have offered to issue a renewal policy; or

b.   You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2.   Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

## PREMIUMS

Whenever an insurance policy which is financed with a premium finance company is cancelled, the insurer shall return, within 30 days after the effective date of the cancellation, whatever gross unearned premiums are due under the insurance policy directly to the premium finance company for the account of the first Named Insured.

_____
Authorized Agent

Includes copyrighted material of Insurance Services Office Inc.,
with its permission

## TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS
## FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

| Named Insured Target Corporation | Endorsement Number 93 |
|---|---|
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

I.  The **Cancellation** Condition is replaced by the following:

  **1.**  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

  **2.**  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

    However if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation.  We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

    The permissible reasons for cancellation are as follows:

    **a.**  If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

    **b.**  If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

      **(1)**  Fraud in obtaining coverage;

      **(2)**  Failure to pay premiums when due;

      **(3)**  An increase in hazard within the control of the insured which would produce an increase in rate;

      **(4)**  Loss of our reinsurance covering all or part of the risk covered by the policy; or

      **(5)**  If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

  **3.**  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

  **4.**  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

  **5.**  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

  **6.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

II.  The following Condition supersedes any provision to the contrary:

**NONRENEWAL**

  **1.**  We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

2. This Paragraph **2.**, applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

   **a.** The first Named Insured: and

   **b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

   We will mail or deliver such notice to each last mailing address known to us.

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

_____

Authorized Agent



POLICY NUMBER: XSL G27017381

ENDT. #94

# UTAH CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured<br>Target Corporation | | | Endorsement Number<br>94 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

I.  The **Cancellation** Condition is replaced by the following:

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      **a.** 10 days before the effective date of cancellation if we cancel for Nonpayment of premium.

      **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

   **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   **6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

   **7.** If this policy has been in effect for more than 60 days or if this is a renewal of a policy issued, we may cancel this policy only for one or more of the following reasons:

      **a.** Nonpayment of premium;

      **b.** Material misrepresentation;

      **c.** Substantial change in the risk assumed unless we should reasonably have foreseen the change or contemplated the risk when entering the contract; or

      **d.** Substantial breaches of contractual duties, conditions or warranties.

   **8.** Notice of cancellation must be delivered or mailed by first class mail.

II.  The following Condition supersedes any provisions to the contrary:

   **NONRENEWAL**

   **1.** If we elect to not renew this policy, we will mail, by first class mail, written notice of nonrenewal to the first Named Insured, at the last mailing address known to us, at least 30 days before the expiration or anniversary date of this policy.

   **2.** We need not mail this notice if:

      **a.** You have accepted replacement coverage;

      **b.** You have requested or agreed to nonrenewal; or

      **c.** This policy is expressly designated as nonrenewable.

   **3.** If notice is mailed, proof of mailing is sufficient proof of notice.

Authorized Agent

## VIRGINIA – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 95 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to all Named Insureds written notice of cancellation, stating the reason for cancellation, at least:

    a.  15 days before the effective date of cancellation if we cancel for nonpayment of premium.

    b.  45 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver written notice to the last mailing addresses known to us.  If notice is mailed, it will be sent by ordinary mail for which a Certificate of Mailing has been obtained, or by registered or certified mail.

4. Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5. If we cancel, the refund will be pro rata.  If the Named Insureds cancel, the refund will be 90% of pro rata unless otherwise specified in our filed manual rules.  The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

II.  The following Condition supersedes any other provisions to the contrary:

**NONRENEWAL**

A. If we elect not to renew this policy, we will mail or deliver a notice of nonrenewal to all Named Insureds, stating the reason for nonrenewal, at least:

    1.  15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

    2.  45 days before the expiration date if the nonrenewal is for any other reason.

B. We will mail or deliver written notice of nonrenewal to the last mailing address known to us.  If notice is mailed, it will be sent by ordinary mail for which a Certificate of Mailing has been obtained, or by registered or certified mail.

Authorized Agent

## WASHINGTON CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 96 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation Condition is replaced by the following:

    A.  You may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    B.  We may cancel this coverage part by mailing or delivering to the first Named Insured, the first Named Insured's agent or broker and any other person shown in this policy to have an interest in any loss which may occur under this policy, written notice of cancellation, including the actual reason for the cancellation, to the last mailing addresses known to us, at least:

        1.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        2.  45 days before the effective date of cancellation if we cancel for any other reason.

    C.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    D.  If this policy is cancelled, we will send the Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if we have not made or offered a refund.

    E.  If notice is mailed, proof of mailing will be sufficient proof of notice.

II.  The following Condition supersedes any condition to the contrary:

**When We Do Not Renew**

We may elect not to renew this coverage part by mailing or delivering written notice of nonrenewal to the First Named Insured, the first Named Insured's agent or broker and any other person shown in the policy to have an interest in any loss which may occur under this policy, at the last mailing addresses known to us, provided that we give at least 45 days written notice of nonrenewal, including the actual reason for nonrenewal.

Otherwise, we will renew this coverage part unless:

    A.  The Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured, and the first Named Insured's agent or broker, at least 20 days before the expiration date; or

    B.  Other coverage acceptable to the insured has been procured prior to the expiration date of the policy.

_____

Authorized Agent

# WISCONSIN CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 97 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013　to　02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**I.** The **Cancellation** Condition is replaced by the following:

   **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

   If this policy has been in effect for less than 60 days and is not a renewal policy, we may cancel for any reason.

   If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, except as provided in Paragraph **7.** below, we may cancel this policy only for one or more of the following reasons:

   **a.** The policy was obtained by material misrepresentation;

   **b.** There has been a substantial change in the risk we originally assumed, except to the extent that we should have foreseen the change or considered the risk in writing the policy;

   **c.** There have been substantial breaches of contractual duties, conditions or warranties; or

   **d.** Nonpayment of premium.

   If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, the notice of cancellation will state the reason for cancellation.

   **3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   **4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   **6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

   **7.** If this policy is written for a term of more than one year or has no fixed expiration date, we may cancel this policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

   We may cancel this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of cancellation contains an offer to continue the policy with us if we receive a written request from the first Named Insured prior to the date of cancellation.

**II.** The following Conditions supersede any other provisions to the contrary:

   **1. Nonrenewal**

**a.** If we elect not to renew this policy we will mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us. We may elect not to renew for any reason; the notice will state the reason for nonrenewal. We will mail or deliver the notice at least 60 days before the expiration date of this policy.

We need not mail or deliver the notice if:

**(1)** You have insured elsewhere;

**(2)** You have accepted replacement coverage;

**(3)** You have requested or agreed to nonrenewal of this policy; or

**(4)** This policy is expressly designated as nonrenewable.

**b.** We may refuse to renew this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of nonrenewal contains an offer to renew the policy with us if we receive a written request from the Named Insured prior to the renewal date.

**c.** If you fail to pay the renewal or continuation premium by the premium due date, this policy will terminate on the policy expiration or anniversary date, if we have:

**(1)** Given you written notice of the renewal or continuation premium not more than 75 days nor less than 10 days prior to the due date of the premium; and

**(2)** Stated clearly in the notice the effect of nonpayment of premium by the due date.

**2. Anniversary Alteration**

If this policy is written for a term of more than one year or has no fixed expiration date, we may alter the terms or premiums of this policy by mailing or delivering written notice of less favorable terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the anniversary date.

If we notify the first Named Insured within 60 days prior to the anniversary date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the policy at any time during the 60-day period, in accordance with Paragraph 1. of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

**3. Renewal With Altered Terms**

If we elect to renew this policy but on less favorable terms or at higher premiums, we will mail or deliver written notice of the new terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the renewal date.

If we notify the first Named Insured within 60 days prior to the renewal date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the renewal policy at any time during the 60-day period, in accordance with Paragraph 1. of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

We need not mail or deliver this notice if the only change adverse to you is a premium increase that:

**a.** Is less than 25% and is generally applicable to the class of business to which this policy belongs; or

**b.** Results from a change based on your action that alters the nature or extent of the risk insured against, including but not limited to a change in the classification or the units of exposure, or increased policy coverage.

_____

Authorized Agent

Includes copyrighted material of Insurance Services Office Inc.,
with its permission

## WEST VIRGINIA CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 98 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I.  The Cancellation condition is replaced by the following:

**A. Cancellation**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.**  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.**  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

_____

Authorized Agent

Includes copyrighted material of Insurance Services Office Inc., with its permission

## WYOMING CHANGES – CANCELLATION AND NONRENEWAL

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 99 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013  to  02/01/2014 | |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

If the policy or coverage part to which this endorsement applies contains cancellation or nonrenewal provisions more favorable to the Named Insured than this endorsement, then those provisions apply.

I. The Cancellation Condition is replaced by the following:

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **a.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **(1)** 10 days before the effective date of a cancellation if we cancel for nonpayment of premium;

   **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **b.** If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **(1)** Nonpayment of premium.

   **(2)** Material misrepresentation of fact which, if known to us, would have caused us not to issue the policy.

   **(3)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the policy.

   **(4)** Substantial breaches of contractual duties, conditions or warranties.

   If we cancel, we will mail or deliver to the first Named Insured and the agent, if any, written notice of cancellation, stating the reason for cancellation at least:

   **(a)** 10 days before the effective date of cancellation if cancellation is for the reason stated in b.(1). above; or

   **(b)** 45 days before the effective date of cancellation if cancellation is for the reasons stated in b.(3) or (4) above.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If we cancel this policy in accordance with paragraph I. of this endorsement, any unearned premium will be refunded to the first Named Insured prior to the effective date of cancellation.

II. The following Condition supersedes any other provisions to the contrary.

### NONRENEWAL

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and the agent, if any, at least 45 days before:

   a. The expiration date; or

   b. The anniversary date if this is a continuous policy.

2. Notice of nonrenewal will state the reason for nonrenewal.

3. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's and agent's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____

Authorized Agent

## SIGNATURES

| Named Insured<br>Target Corporation | | | Endorsement Number<br>100 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

CARMINE A. GIGANTI, Secretary                JOHN J. LUPICA, President

Authorized Representative

CC-1K11g (01/11)

## EXCLUSION OF LIABILITY INSURANCE AFFORDED UNDER ANOTHER POLICY

| Named Insured<br>Target Corporation | | | Endorsement Number<br>101 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013   to   02/01/2014 | Effective Date of Endorsement<br>02/01/2013 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" for which liability insurance is afforded under the policy(ies) designated below, including any replacement, renewal or extension thereof, or would have been afforded but for the exhaustion of the limits of liability or cancellation or expiration of such policy(ies).

DESIGNATED POLICY(IES):

ProSight Specialty Insurance

Commercial General Liability
Policy:  PK201300002521

Umbrella & Excess Liability
Policy:  UM201300000700

Authorized Agent

## ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 102 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | 02/01/2013 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

#### SCHEDULE

**Name of Person or Organization:** ████████████████████████
████████

SECTION II – WHO IS AN INSURED is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf.

A.     In the performance of your ongoing operations; or

B.     In connection with your premises owned by or rented to you.

_____

Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission

XS-6W25a (06/10)

## NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 103 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | 02/01/2013 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE

**Schedule**

Organization

Additional Insured Endorsement

XS6W25a – Endt. 102

*(If no information is filled in, the schedule shall read: "All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title)*

For organizations that are listed in the Schedule above that are also an Additional Insured under an endorsement attached to this policy, the following is added to Section IV.4:

If other insurance is available to an insured we cover under any of the endorsements listed or described above (the "Additional Insured") for a loss we cover under this policy, this insurance will apply to such loss and we will not seek contribution from the other insurance available to the Additional Insured. Your "retention amount" still applies to such loss, and we will only pay the Additional Insured for the "ultimate net loss" in excess of the "retained limit" shown in the Declarations of this policy.

_____

Authorized Agent

## EXCLUSION OF LIABILITY INSURANCE AFFORDED UNDER ANOTHER POLICY

| Named Insured<br>Target Corporation | | | Endorsement Number<br>104 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013 to 02/01/2014 | Effective Date of Endorsement<br>06/01/2013 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### EXCESS COMMERCIAL GENERAL LIABILITY POLICY

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" for which liability insurance is afforded under the policy(ies) designated below, including any replacement, renewal or extension thereof, or would have been afforded but for the exhaustion of the limits of liability or cancellation or expiration of such policy(ies).

DESIGNATED POLICY(IES):

Carrier: Columbia Casualty Company
Coverage: Commercial General Liability
Policy Number: HMA 4032082435-0

Authorized Agent

# EXCLUSION OF LIABILITY INSURANCE AFFORDED UNDER ANOTHER POLICY

| Named Insured<br>Target Corporation | | | Endorsement Number<br>105 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013 to 02/01/2014 | Effective Date of Endorsement<br>06/01/2013 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" for which liability insurance is afforded under the policy(ies) designated below, including any replacement, renewal or extension thereof, or would have been afforded but for the exhaustion of the limits of liability or cancellation or expiration of such policy(ies).

DESIGNATED POLICY(IES):

Carrier: Columbia Casualty Company
Coverage: Umbrella Liability
Policy Number: HMC 4032082449-0

_____
Authorized Agent

# UNDERLYING COVERAGE ERODES RETENTION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Target Corporation | | | 106 |
| Policy Symbol XSL | Policy Number G27017381 | Policy Period 02/01/2013 to 02/01/2014 | Effective Date of Endorsement 12/15/2013 |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**Excess General Liability Policy**

The following is added to Section IV. 4. Other Insurance of this policy:

If other insurance as shown in the schedule is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance.

When this insurance is excess over the other insurance shown in the schedule or any renewal thereof, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all such other insurance,

but only if that sum is equal to or exceeds the "retained limit" shown in the Declarations of this policy. If that sum is less than the "retained limit", we will pay only our share of the amount of the loss, if any, that exceeds the "retained limit".

Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of any other insurance including the insurance listed in the Schedule below.

Schedule of Other Insurance

| Insured | Policy Number | Policy Carrier | Policy Period |
|---|---|---|---|
| | | | |

_____
Authorized Agent

MS-26423 (12/13) Ptd. In U.S.A.

# ENDORSEMENT CHANGE

| Named Insured | Endorsement Number |
|---|---|
| Target Corporation | 107 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013   to   02/01/2014 | 12/15/2013 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

Insert the policy number.  The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**This endorsement modifies all insurance provided under the following:**

**EXCESS COMMERCIAL GENERAL LIABILITY POLICY**

It is agreed that effective   12/15/2013   ,

The following endorsement(s) are deleted from the policy:

Endorsement #14 (MS 11337 02/13)
Definition of Personal and
Advertising Injury

And, if applicable, are replaced with the following endorsement(s) where noted:

Endorsement #108 (MS 26954 12/13)
Definition of Personal and
Advertising Injury

Authorized Agent

Includes copyrighted material of Insurance Services Office, Inc. with its permission

# DEFINITION OF PERSONAL AND ADVERTISING INJURY

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Target Corporation | | | 108 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| XSL | G27017381 | 02/01/2013 to 02/01/2014 | 12/15/2013 |

| Issued By (Name of Insurance Company) |
|---|
| ACE American Insurance Company |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EXCESS COMMERCIAL GENERAL LIABILITY POLICY

A. The following is added to the Definition of "personal and advertising injury":

h. Discrimination based upon race, color, creed, religion, age, sex, disability, marital status, sexual orientation, sexual harassment or national origin, but excluding:

(1) Discrimination committed by, at the direction of, or with the consent of the insured against whom claim is made or "suit" is brought.

(2) Claims made or "suits" brought by reason of discrimination against present or past "employees" of any insured or applicants for employment with any insured, or

(3) Claims made or "suits" brought by a person deriving rights by reason of discrimination against present or past "employees" or applicants for employment.

_____

Authorized Agent

**MS-26954 (12/13). In U.S.A.**

## UNDERLYING COVERAGE ERODES RETENTION ENDORSEMENT

| Named Insured<br>Target Corporation | | | Endorsement Number<br>109 |
|---|---|---|---|
| Policy Symbol<br>XSL | Policy Number<br>G27017381 | Policy Period<br>02/01/2013  to  02/01/2014 | Effective Date of Endorsement<br>10/01/2013 |
| Issued By (Name of Insurance Company)<br>ACE American Insurance Company | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### Excess General Liability Policy

The following is added to Section IV. 4. Other Insurance of this policy:

If other insurance as shown in the schedule is available to the insured for a loss we cover under this policy, this insurance is excess over that other insurance.

When this insurance is excess over the other insurance shown in the schedule or any renewal thereof, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all such other insurance,

but only if that sum is equal to or exceeds the "retained limit" shown in the Declarations of this policy. If that sum is less than the "retained limit", we will pay only our share of the amount of the loss, if any, that exceeds the "retained limit".

Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of any other insurance including the insurance listed in the Schedule below.

**Schedule of Other Insurance**

| Insured | Policy Number | Policy Carrier | Policy Period |
|---|---|---|---|
| | | | |

<hr>

Authorized Agent