UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, | Case No. 19-cv-2916 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| ACE American Insurance Company et al., | |
| Defendants. | |

This matter is before the Court on the parties' cross-motions for summary judgment. (Dkts. 27, 34.)  For the reasons set forth below, Plaintiff's motion for partial summary judgment is denied and Defendants' motion for summary judgment is granted.

## BACKGROUND

In December 2013, Plaintiff Target Corporation (Target) discovered that an unauthorized individual had breached Target's computer networks and stolen the payment card data and personal contact information of Target's customers (Data Breach). Following the Data Breach, multiple banks that had issued the compromised payment cards—the physical plastic credit and debit cards—cancelled and reissued the payment cards to customers, incurring costs associated with these actions.  The banks sued Target for these costs (Payment Card Claims).  Target subsequently resolved the Payment Card Claims through confidential settlements.

The instant dispute pertains to whether Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co. (collectively, ACE), as Target's

insurer, must indemnify Target for part or all of Target's settlement liability related to the Payment Card Claims.  ACE issued two commercial general liability (CGL) policies (collectively, the Policies) to Target.[1]  As relevant to this dispute, the Policies provide insurance coverage to Target "for the 'ultimate net loss' . . . because of 'bodily injury' or 'property damage.' "  The Policies define "property damage" as the "[l]oss of use of tangible property that is not physically injured" and provide that "[a]ll such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."  On January 14, 2014, Target notified ACE of Target's potential liability for costs associated with the Data Breach.  ACE denied coverage under the Policies.

On November 15, 2019, Target commenced this breach-of-contract action against ACE seeking a declaratory judgment that Target's liability for the Payment Card Claims is covered under the Policies.  Target also seeks judgment against ACE for the settlement payments relating to the Payment Card Claims.  The parties now cross-move for summary judgment.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[1]  The Policies' coverage amounts are not presently at issue.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015). A nonmoving party asserting that a fact is genuinely disputed must cite "particular parts of materials in the record" that support the assertion. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts [that] create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

The parties agree that the material facts of this case are not in dispute and, therefore, summary judgment is proper.

## II.     Insurance Policy Interpretation Under Minnesota Law

"Interpretation of an insurance policy is a matter of state law," and here the parties agree that Minnesota law applies. *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (observing that Minnesota law applies because "Minnesota is the forum state and neither party has raised a choice-of-law claim"). Under Minnesota law, interpretation of an insurance policy is subject to the general principle of contract interpretation that unambiguous language is given its usual and accepted meaning. *Id.* at 390–91 (citing *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998)). By contrast, when the language of an insurance policy is ambiguous, such language "will be construed against the insurance company, as the drafter of the contract." *Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 518 (Minn. 2001). Language

of an insurance policy is ambiguous "only if it is reasonably subject to more than one interpretation." *Hammer v. Invs. Life Ins. Co. of N. Am.*, 511 N.W.2d 6, 8 (Minn. 1994).

Insurance coverage disputes ordinarily may be resolved on summary judgment based on a court's interpretation of the disputed insurance policy provisions. *See, e.g.*, *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 860–61 (8th Cir. 2012). The burden of proving allocation of a settlement between covered and uncovered claims rests with the insured party. *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F. Supp. 3d 863, 873 (D. Minn. 2014); *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013).

### III.   Coverage

"Under Minnesota law, an insurer's duty to defend is distinct from and broader than its duty to indemnify the insured." *Eyeblaster, Inc. v. Fed. Ins. Co.*, 613 F.3d 797, 801 (8th Cir. 2010) (citing *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn. 1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910 (Minn. 2009)). The parties agree that this case presents the issue of whether ACE has a duty to indemnify. The duty to defend is not at issue. Instead, the parties dispute whether Target has met its burden of demonstrating claim coverage under the Policies.

To determine whether the insured has met its burden of demonstrating claim coverage, the reviewing court examines the language of the particular policy and the claim or claims actually proven by the third-party claimant in the underlying liability action. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 617 (Minn.

2012).² The insurer's scope of indemnity is defined by the terms of the insurance policy. *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 244 (Minn. 2005). "Specifically, an insurer has a duty to indemnify when its insured is found liable for a third-party claim within the terms of the liability insurance policy, but an insurer has no duty to indemnify when its insured is found liable for a third-party claim that is outside the policy's scope." *Remodeling Dimensions*, 819 N.W.2d at 616. Therefore, whether ACE must indemnify Target depends on the scope of the Policies.

To meet its burden of demonstrating claim coverage under the Policies, Target must demonstrate that the identified losses arose out of an "occurrence" and resulted in Target's legal obligation to pay damages because of the "loss of use" of "tangible property that is not physically injured." These requirements of the Policies, and the parties' respective arguments as to each, are analyzed in turn.

### A. "Occurrence"

In order to obtain coverage under the Policies, Target first must demonstrate that there was an "occurrence." The parties dispute whether the Data Breach constitutes an "occurrence." The Policies define an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Because the Policies do not define "accident," the Court may rely on case law definitions. *See Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609–10 (Minn. 2001) (analyzing case law definitions of "accident" in the absence of a contractual definition).

---

² Here, the parties do not dispute whether the Payment Card Claims have been proven.

5

The Court need not resort to such definitions in this case, however. As addressed below, Target has not satisfied its burden to demonstrate that the Data Breach resulted in Target's legal obligation to pay damages because of the "loss of use" of "tangible property that is not physically injured." Thus, assuming without deciding that the Data Breach constitutes an "occurrence" under the Policies, Target cannot prevail.

**B.     "Loss of Use"**

The second requirement that Target must satisfy to demonstrate a claim for coverage under the Policies is that the damages incurred were because of "loss of use." As to this requirement, the parties advance numerous arguments, each of which is analyzed in turn.

Target argues that the United States Court of Appeals for the Eighth Circuit's decision in *Eyeblaster* "confirms that coverage is available for Target's loss." *Eyeblaster* involved an insurance company's duty to defend, which under Minnesota law "is distinct from and broader than [an insurer's] duty to indemnify the insured." *Eyeblaster*, 613 F.3d at 801. To avoid its duty to defend, an insurer must show that "each claim asserted in the lawsuit clearly falls outside the policy." *Id*. at 804 (quoting *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008)). This is a "heavy burden." *Id.* (quoting *Murray*, 533 F.3d at 649).

Here, Target's reliance on *Eyeblaster* is misplaced. *Eyeblaster* involved the "distinct" and "broader" duty to defend, *id.*, not the duty to indemnify, which is at issue here. Despite this distinction, Target argues that "the Eighth Circuit could not have reached its decision in *Eyeblaster* without holding that the plaintiff in that case alleged a loss within the scope of coverage as a matter of law." Target's argument incorporates a critical flaw,

6

however. Because the duty to defend is broader in scope than the duty to indemnify, some losses covered under a duty to defend fall outside of the narrower duty to indemnify. As such, it is not necessarily so that the loss covered under the insurer's duty to defend in *Eyeblaster* is covered under ACE's duty to indemnify in this case. For this reason, *Eyeblaster* does not confirm that coverage is available for Target's loss.

ACE's position rests on the distinction between property damage and the diminution in property value. ACE argues that the payment cards that were compromised by the Data Breach lost their *value*, not their *use*. And because only loss-of-use damages are compensable under the Policies, Target's claim for coverage fails.

ACE's position is founded on the Minnesota Supreme Court's analysis in *Federated Mutual Insurance Co. v. Concrete Units, Inc.*, 363 N.W.2d 751 (Minn. 1985). In *Concrete Units*, the trial court had concluded that a grain elevator was damaged by "incorporation of the defective concrete and the measure of that damage was the resulting diminution in the market value of the elevator." 363 N.W.2d at 756. The Minnesota Supreme Court disagreed, concluding that " 'diminution in value' is not 'property damage' when defined as either '*physical* injury to . . . *tangible* property' or as 'loss of use of *tangible* property' " and, therefore, the diminution in value was not a recoverable damage under a loss-of-use policy. *Id.* (alteration in original).[3]

---

[3] Target also relies on the Minnesota Supreme Court's conclusion in *Concrete Units* that an insurer must "pay all damages which are causally related to an item of 'property damage' " that meets the policy definitions. *Id.* at 757. But the court then rejected consequential damages in the form of lost interest and lost profits on the basis that, in that case, those consequential damages were "simply too tenuously related" to the loss of use to be recoverable. *Id.* As Target concedes, the issue of consequential damages is not

7

The facts of this case, however, do not involve the value of the plastic payment cards. As such, the question of a diminution of the value of the payment cards also is not presented. No party submits that the value of the plastic payment cards diminished after the Data Breach. This distinguishes this case from the facts presented in *Concrete Units,* in which the grain elevator had an initial value that diminished after the incorporation of defective concrete. *Id.* Because the loss-of-value issue is not presented here, the analysis in *Concrete Units* does not govern this Court's analysis.

The parties also dispute whether Minnesota law requires loss-of-use damages to be measured exclusively by time. ACE maintains that this is the case. And because replacing payment cards is not a time-based damage, ACE argues that the Policies do not cover this damage. Target disputes the proposition that Minnesota law requires loss-of-use damages to be exclusively time-based.

ACE presents no Minnesota case law holding that loss-of-use damages are exclusively time-based. *See, e.g.*, *MCI Commc'ns, Inc. v. Maverick Cutting & Breaking LLC*, 374 F. Supp. 3d 789, 803 (D. Minn. 2019) (stating that the "reasonable rental value of substitute property *may* be used to determine the amount of loss-of-use damages" (emphasis added)). ACE argues that the Minnesota Supreme Court exclusively recognized time-based damages as loss-of-use damages in *Concrete Units*. But this argument is unfounded. *Concrete Units* recognized loss-of-use damages "based on" the loss of use of a grain elevator. 363 N.W.2d at 756–57. It is true that two of the three types of loss-of-

---

presented in this case. Therefore, arguments pertaining to consequential damages need not be considered.

use damages at issue in *Concrete Units* were time-based, namely, the cost of storing corn for one month and the inability to dry corn for 24 days. *Id.* at 754, 756. But the third type of loss-of-use damages, the cost per bushel of piling corn, was not time-based. *Id.* at 754. Rather, the *Concrete Units* court measured these loss-of-use damages by volume. *Id.*

Other federal courts, although applying the law of other states, have rejected similar arguments presented by insurance companies seeking to limit "loss of use" damages under CGL policies to rental value or other strictly time-based measures. *See, e.g.*, *Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 430 F. Supp. 2d 989, 994 (N.D. Cal. 2006) ("The Court does not hold, as urged by [the defendant], that loss of use damages can *only* consist of rental value or its equivalent."); *see also Vicor Corp. v. Vigilant Ins. Co*, 674 F.3d 1, 12 n.7 (1st Cir. 2012) (observing that "no cases have explicitly found the temporal limitation suggested by the insurers"). In the absence of direct authority from Minnesota courts expressly limiting loss-of-use damages to time-based damages, this Court declines to impose such a limitation here. Therefore, under Minnesota law, loss-of-use damages are not exclusively measured by time.

As addressed above, the Minnesota Supreme Court has recognized loss-of-use damages that were "based on" the loss of use of the impaired grain elevator. *Concrete Units*, 363 N.W. 2d at 756–57. Here, the parties dispute whether damages arising out of the Payment Card Claims are damages "based on" loss of use of the payment cards. ACE contends that there is no nexus between the loss-of-use damages alleged here and the value of the loss of the use of payment cards. Target's theory appears to be that, because the payment cards allegedly lost their use and Target resolved the Payment Card Claims by

9

paying a settlement, the settlement of that liability necessarily constitutes damages because of a loss of use. This is, in essence, a but-for theory of loss-of-use damages.

Other courts considering similar loss-of-use damages claims under similar CGL policies have concluded that there must be a nexus between (1) the value of the customer's or company's ability to use the product or service that has been lost and (2) the damages associated with that loss of use. *See Vicor Corp.*, 674 F.3d at 11–13; *Atmel Corp.*, 430 F. Supp. 2d at 994–95 (requiring a "more direct connection between the damages claimed and the loss of use of the property in order to establish coverage under the CGL policies" and rejecting loss-of-use damages that did "not require a nexus with [company's or customers'] inability to *use*" damaged devices); *Cont'l Cas. Co. v. Gilbane Bldg. Co.*, 461 N.E.2d 209, 214 (Mass. 1984) (suggesting that loss-of-use damages could be measured by economic harm resulting from inability to access restaurant impacted by street closure). In doing so, courts have rejected a "but for" test for loss-of-use damages. *Vicor Corp.*, 674 F.3d at 13; *Atmel Corp.*, 430 F. Supp. 2d at 994 ("Although Atmel is correct that these damages would not have been incurred *but for* the failure of the Atmel [products], that does not compel a finding that these damages are 'loss of use' damages." (emphasis added)).

Although a but-for theory of loss-of-use damages has not been expressly articulated, Minnesota courts have held that loss-of-use damages must be "based on" the alleged loss of use. *See Concrete Units*, 363 N.W. 2d at 756–57 (discussing loss-of-use damages "based on lost use" of grain elevator); *see also Atl. Mut. Ins. Co. v. Judd Co.*, 367 N.W.2d 604, 608 (Minn. Ct. App. 1985) (observing that whether loss-of-use insurance policy coverage applies "turns on whether the claimed damages are based on or causally related

10

to property damage"), *aff'd*, 380 N.W.2d 122 (Minn. 1986). This suggests that Minnesota law requires loss-of-use damages to have some connection to the value of the use of the now-damaged property when it previously was unimpaired. A "commonly used measure of loss-of-use" damages—reasonable rental value—illustrates this point. *Jacobs v. Rosemount Dodge-Winnebago S.*, 310 N.W. 2d 71, 78 (Minn. 1981). Renting a vehicle allows for *use* of a vehicle when another vehicle has been rendered unusable and, as such, vehicle-rental costs typically are recognized as loss-of-use damages. *See Barbarossa & Sons, Inc. v. Iten Chevrolet, Inc.*, 265 N.W. 2d 655, 662–63 (Minn. 1978) ("Fair rental value of a replacement vehicle has generally been recognized by courts . . . as a fair approximate measure of damages incurred by the loss of the use of a vehicle.").

Here, the record is devoid of any allegation or evidence as to what the value of the *use* of the payment cards is, either to Target's customers or to the payment card companies. And as the value of the *use* is not established or even approximated, *see id.* (addressing the "fair approximate measure of damages"), damages cannot be "based on" the loss of use because there is no nexus between the damages and the loss of use, *see Atmel Corp.*, 430 F. Supp. at 995 (requiring a "more direct connection between the damages claims and the loss of use of the property in order to establish coverage under the CGL policies"). Target has not established a connection between the damages incurred for settling claims related to replacing the payment cards and the value of the use of those cards, either to the payment-card holders or issuers. *Contra Concrete Units,* 363 N.W.2d at 756 (involving loss-of-use damages measured based on the inability to *use* the grain elevator); *Jacobs*, 310 N.W. 2d at 78 (involving loss-of-use damages based on to cost to *use* a rental vehicle in

11

lieu of a vehicle owner's unusable vehicle). For this reason, the connection between the damages claimed and the loss of use of the payment cards is insufficiently direct and, therefore, the damages claimed are not loss-of-use damages covered under the Policies.

Accordingly, Target has not established that its settlement liability arising out of the Payment Card Claims constitutes loss-of-use damages.

### C. "Tangible Property That is Not Physically Injured"

Although the parties agree that plastic payment cards constitute "tangible property," this final element also need not be addressed because Target has not established loss-of-use damages. In summary, Target has not met its burden of demonstrating coverage under the Policies. Accordingly, Target's motion for partial summary judgment is denied, and ACE's motion for summary judgment is granted.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Target Corporation's motion for partial summary judgment, (Dkt. 27), is **DENIED**.

2. Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co.'s motion for summary judgment, (Dkt. 34), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 8, 2021                           s/Wilhelmina M. Wright
                                                  Wilhelmina M. Wright
                                                  United States District Judge