**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

Target Corporation, a Minnesota corporation,

        Plaintiff,

    v.

ACE American Insurance Company, a
Pennsylvania corporation, and ACE Property
& Casualty Insurance Co., a Pennsylvania
corporation,

        Defendants.

**Case No. 0:19-cv-02916 (WMW/DTS)**

**TARGET CORPORATION'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION TO ALTER OR AMEND JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.   BACKGROUND ........................................................................................... 3

III.  THE LEGAL STANDARDS GOVERNING THIS MOTION ............................ 6

IV.   ARGUMENT ................................................................................................ 7

      A.   The Court Granted Summary Judgment on Grounds Not Raised by the Parties and Without Providing the Notice or Opportunity to Respond Required by Rule 56(f). .................................................. 7

      B.   The Court's Summary Judgment Ruling was Based on a Manifest Error of Minnesota Law. ........................................................... 10

          1.   The ACE Policies Do Not Provide For The Requirement Applied by the Court. ...................................................... 11

          2.   Minnesota Law Does Not Impose the Requirement Applied by the Court. ................................................................ 13

          3.   Target's Losses are for Claims Causally Related to Lost Use of Payment Cards. .............................................................. 20

V.    CONCLUSION ........................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*Atlantic Mut. Ins. Co. v. Judd Co.*,
    367 N.W.2d 604 (Minn. App. 1985)...........................................................................14

*Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*,
    430 F. Supp. 2d 989 (N.D. Cal. 2006) ......................................................................19

*Batts v. Tow-Motor Forklift Co.*,
    66 F.3d 743 (5th Cir. 1995) ......................................................................................19

*Economy Fire & Cas. Co. v. Iverson*,
    445 N.W.2d 824 (Minn. 1989)...................................................................................17

*Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*,
    825 N.W.2d 695 (Minn. 2013)...................................................................................11

*Eyeblaster Inc. v. Federal Insurance Co.*,
    613 F.3d 797 (8th Cir. 2010) ...........................................................................*passim*

*Federated Mut. Ins. Co. v. Concrete Units, Inc.*,
    363 N.W.2d 751 (Minn. 1985)..........................................................................*passim*

*Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc.*,
    762 N.W.2d 572 (Minn. 2009)...................................................................................11

*Haarstad v. Graff*,
    506 N.W.2d 341 (Minn. App. 1993)..........................................................................17

*Heisler v. Metro. Council*,
    339 F.3d 622 (8th Cir. 2003) ......................................................................................6

*Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*,
    141 F.3d 1284 (8th Cir. 1998) ....................................................................................6

*Kokins v. Teleflex, Inc.*,
    621 F.3d 1290 (10th Cir. 2010) .................................................................................19

*Nathe Bros. v. Am. Nat'l Fire Ins. Co.*,
    615 N.W.2d 341 (Minn. 2000)...................................................................................12

*Neidenbach v. Amica Mut. Ins. Co.*,
   842 F.3d 560 (8th Cir. 2016) .................................................. 19

*Reins. Ass'n of Minn. v. Timmer*,
   641 N.W.2d 302 (Minn. App. 2002).......................................... 12

*St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*,
   496 N.W.2d 411 (Minn. App. 1993)...................................... 17, 18

*Sterling State Bank v. Va. Sur. Co.*,
   173 N.W.2d 342 (Minn. 1969)................................................. 13

*Undlin v. City of Minneapolis*,
   2009 WL 3754208 (D. Minn. Nov. 4, 2009) ............................... 7

*UnitedHealth Grp. Inc. v. Exec. Risk Spec. Ins. Co.*,
   870 F.3d 856 (8th Cir. 2017) ............................................... 6, 19

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ............................................................. 12

*Vicor Corp. v. Vigilant Ins. Co*,
   674 F.3d 1 (1st Cir. 2012) ..................................................... 19

*W. World Ins. Co. v. H.D. Eng'g Design & Erection Co.*
   419 N.W.2d 630 (Minn. App 1988)........................................... 12

*Westfield Ins. Co. v. Robinson Outdoors, Inc.*,
   700 F.3d 1172 (8th Cir. 2012) ................................................ 11

*Westfield Ins. Co. v. Weis Builders*,
   2004 WL 1630871 (D. Minn. July 1, 2004) ............................... 12

*Woida v. N. Star Mut. Ins. Co.*,
   306 N.W.2d 570 (Minn. 1981)................................................. 17

*Yeransian v. B. Riley FBR, Inc.*,
   984 F.3d 633 (8th Cir. 2021) .................................................. 6

## OTHER AUTHORITIES

11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.) ...................................... 6

Fed. R. Civ. P. 56(f)............................................................*passim*

Fed. R. Civ. P. 59(e) .................................................... 2, 3, 6, 10

iii

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

The parties filed cross-motions for summary judgment on a narrow legal issue: whether Target's insurance policies provide coverage for any part of the consideration that Target paid to financial institutions to resolve claims asserting that—as a result of Target's alleged negligence in allowing a data breach—the financial institutions had lost the use of, and therefore had to replace, compromised plastic payment cards.

On February 8, 2021, this Court granted summary judgment for ACE.  The Court did so on a ground that neither ACE nor Target nor even this Court had previously raised and that is contrary to Minnesota law:  that, to avoid summary judgment, Target had to "establish[] a connection between the damages incurred for settling claims related to replacing the payment cards and the value of the use of those cards."  Dkt. No. 49 ("Order") at 11.

The Court's ruling was in error for two reasons, each of which independently requires that the opinion be withdrawn and the judgment entered on that opinion be vacated.

*First*, although Rule 56(f)(2) permits a district court to grant summary judgment on grounds not raised by a party, it may only do so if the parties had "notice and a reasonable time to respond."  In this instance, ACE never raised the legal theory on which the Court resolved the motions.  Accordingly, Target did not address the argument in its opposition to ACE's summary judgment motion.  The Court likewise did not raise the argument at the hearing, so Target did not discuss the argument at that time either. Rule 56(f)(2) therefore required the Court to solicit a response (and any additional factual

evidence) from Target before granting summary judgment.  The Court's failure to request a response (and evidence) from Target requires the Court to vacate the Order and judgment to allow Target to address the issue.

**Second**, if Target had been provided with notice and an opportunity to be heard, the outcome of the summary judgment motions would have been different because the ground that the Order articulates for granting summary judgment represents a manifest error of the law justifying alteration or amendment under Rule 59(e).  To obtain insurance coverage under a commercial general liability ("CGL") policy for property damage liabilities in the form of a claim for damages because of "loss of use," Minnesota law requires that the policyholder demonstrate only that the damages be "causally related" to the loss of use.  *See Federated Mut. Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d 751, 757 (Minn. 1985).  The Court, however, went further and imposed an additional requirement on Target to establish a connection between such damages and the value of the use of the property when it was unimpaired.  No Minnesota court has ever imposed this further requirement.  It also is incompatible with the Eighth Circuit's governing interpretation of Minnesota law in *Eyeblaster Inc. v. Federal Insurance Co.*, 613 F.3d 797 (8th Cir. 2010), which the Court failed to apply based on a legal error concerning the difference between the standards that apply to the "duty to defend" and the "duty to indemnify."

For these reasons, Target requests that the Court either (1) vacate its Order and entry of judgment to permit additional briefing, evidentiary submissions, and (potentially) discovery, as contemplated by Rule 56(f)(2); or, in the alternative; (2) alter or amend the

judgment to grant summary judgment for Target consistent with the legal arguments outlined below, as permitted by Rule 59(e); or, in another alternative, (3) alter or amend the judgment to deny both Target's and ACE's motions for summary judgment, which would permit the case to move forward into discovery and, ultimately, to trial.

## II.   BACKGROUND

The following facts are undisputed.  In December 2013, Target discovered that hackers had accessed its computer networks and stolen information associated with tens of millions of payment cards.  *See* Dkt. No. 30 ("Lagatta Decl.") ¶ 5.[1]  Target faced multiple lawsuits as a result of the data breach, including suits from banks that had issued payments cards (the "Issuing Banks").  The Issuing Banks claimed that, as a result of the data breach, the physical payment cards associated with compromised accounts could no longer be used without a significant threat of unauthorized use and fraud, and they sued Target for, among other damages, the substantial cost of replacing and reissuing the unusable cards.  *See id.* Ex. E ¶¶ 85-86.  By May 2016, Target had settled all the Issuing Banks' claims.  *See* Lagatta Decl. ¶¶ 14-15.

Target provided prompt notice of the Issuing Banks' claims to ACE under the two CGL policies in effect at the time of the data breach.  Both policies provide coverage for losses because of "property damage," defined in pertinent part as "loss of use of tangible property that is not physically injured."  Lagatta Decl. Ex. A at 30 of 230; Ex B. at 7 of 21 & Ex. C at 10 of 113.  ACE denied coverage, Lagatta Decl. ¶¶ 6-7, and after resolving

---

[1]     For a more detailed account of the facts material to the summary judgment proceedings underlying this motion, please refer to the Lagatta Declaration, Dkt. No. 30.

its claims against its other CGL insurers, Target instituted this action against ACE under both insurance policies.

At the Rule 26(f) conference in this action, the parties agreed that the question of whether ACE's policies provide coverage for any part of Target's settlement payment could be resolved as a matter of law following an exchange of initial Rule 26 disclosures. *See* Dkt. No. 20 at 7. Accordingly, the parties jointly requested that further discovery be stayed until the resolution of cross-motions for summary judgment on coverage. *See id.* at 5, 7. The parties agreed that if the Court found coverage, "the only remaining issue to be decided would be the amount of damages" properly allocated to the part of the settlement for which there was insurance coverage. *Id.* at 7. That issue, the parties further agreed, would require expert discovery and would be resolved at trial. *Id.* at 5. The Court then entered a briefing schedule for cross-motions for summary judgment in accordance with the parties' proposal. Dkt. Nos. 24 & 26.

The parties proceeded to brief the following issues: whether the data breach constituted an "occurrence"; whether payment cards are "tangible property that is not physically injured"; whether the data breach resulted in the "loss of use" of payment cards; and whether the settlement between Target and the Issuing Banks, which encompassed the cost of replacing payment cards that had permanently lost their use, qualifies as "damages because of loss of use," or whether coverage is limited to property that had temporarily lost use. *See* Dkt. Nos. 29, 36, 39, 42. Damages issues, including the value of those damages and how they were allocated, were reserved for trial. *See* Dkt. No. 20 at 7. Thus, neither party briefed or argued the amount of damages or

4

whether the damages claimed in Target's complaint were causally related to the data breach or, indeed, any other quantum or causation issue.

The Court held a lengthy hearing on October 20, 2020.  The discussion at the hearing was confined to the issues that the parties had briefed.

On February 8, 2021, the Court denied Target's motion and granted ACE's motion.  The Court rejected one argument made by Target and two made by ACE.  First, the Court rejected Target's argument that the Eighth Circuit's *Eyeblaster* decision "confirms that coverage is available for Target's loss."  Dkt. No. 29 ("Target Mem.") at 24.  The Court held that *Eyeblaster* is irrelevant to the cross-motions because the Eighth Circuit was addressing the insurer's duty to defend, not the duty to indemnify at issue in the cross-motions.  Order 6-7.  Second, the Court rejected ACE's argument that Target's claim was for "damages because of loss of value" rather than damages because of loss of use, observing that "the value of the plastic payment cards" is not at issue.  Order 7; Dkt. No. 36 ("ACE Mem.") at 26.  Third, the Court rejected ACE's argument that "Minnesota law requires loss-of-use damages to be measured exclusively by time," observing that no "direct authority" from the Minnesota courts barred coverage for permanent "loss of use."  Order 8-9; ACE Mem. 31.

The Court, however, then went beyond the issues briefed or argued by the parties and interpreted Minnesota law to "suggest" that, in order to show that the claimed damages were "based on" loss of use, an insured must demonstrate the "loss-of-use damages to have some connection to the value of the use of the now-damaged property when it previously was unimpaired."  Order 9, 11 (citing *Federated Mut. Ins. Co. v.*

5

*Concrete Units, Inc.*, 363 N.W.2d 751 (Minn. 1985) and *Atlantic Mut. Ins. Co. v. Judd Co.*, 367 N.W.2d 604 (Minn. App. 1985)).  Because the Court found the record to be "devoid of any allegation or evidence as to what the value of the *use* of the payment cards is," and that value therefore could not be "established or even approximated," the Court held that Target had failed to satisfy its burden of proof and was not entitled to coverage as a matter of law.  Order 11.

## III.    THE LEGAL STANDARDS GOVERNING THIS MOTION

A district court may only grant summary judgment on grounds not raised by a party "after giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f) .  The Eighth Circuit has "repeatedly held" that "a district court commits reversible error when it grants summary judgment on an issue not raised or discussed by the parties."  *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003).  A party subject to such a judgment should "raise its objection" to the district court while the action is still pending if the party has the opportunity to do so.  *UnitedHealth Grp. Inc. v. Exec. Risk Spec. Ins. Co.*, 870 F.3d 856, 866-67 (8th Cir. 2017).

A party seeking a substantive change in a judgment may move under Fed. R. Civ. P. 59(e) to "alter or amend judgment."  *See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998).  A Rule 59(e) motion should be granted when, *inter alia*, the movant demonstrates that the judgment was based on a "manifest error of law."  *See Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 636 (8th Cir. 2021); 11 Fed. Prac. & Proc. Civ. § 2810.1 (3d ed.).  A manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling

precedent." *Undlin v. City of Minneapolis*, 2009 WL 3754208, at *3 (D. Minn. Nov. 4, 2009) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

## IV.    ARGUMENT

### A.    The Court Granted Summary Judgment on Grounds Not Raised by the Parties and Without Providing the Notice or Opportunity to Respond Required by Rule 56(f).

The Court granted summary judgment on the ground that Target had failed to present evidence that its "loss-of-use damages" had sufficient "connection to the value of the use" of the *un-damaged* Payment Cards.  Order 11.  But throughout the briefing and argument in this action, neither party ever raised that issue.  Nor did either party ever assert that Minnesota law requires "loss of use damages to have some connection to the value of the use of the now-damaged property when it previously was unimpaired" in order to constitute "damages because of loss of use."  *Id.*  The Court did not raise the issue at the hearing on the motion and neither party mentioned the issue at the hearing.  The Court therefore resolved the parties' cross motions for summary judgment on a ground that neither party had raised and without providing notice and the opportunity to respond as required by Rule 56(f).

The Court's Order suggested that this legal issue was in fact raised by the parties.  The Court says that "ACE contends that there is no nexus between the loss-of-use damages alleged here and the value of the loss of the use of the payment cards" while Target advanced "a but-for theory of loss-of-use damages."  Order 9-10.  But that summary does not correctly characterize the parties' arguments.  At no point in its written or oral submissions did ACE ever suggest that the "value of the use" of payment cards

*while unimpaired* had any relevance to the "loss of use" insurance coverage dispute the Court had been asked to decide.

Indeed, this Court rejected the two arguments that ACE made that even potentially touch on the value of the use.  ACE's sole argument regarding the import of the phrase "based on" was that *Concrete Units* held that losses must be incurred during "down time" or a period during which property is temporarily unusable, ACE Mem. 27, or otherwise "based on time" or on "delay," Dkt. No. 42 ("ACE Reply") at 23, to be damages because of "loss of use."  The Court rejected that contention.  *See* Order 8-9.  ACE also argued that compromised payment cards lost their value, not their use, and such lost value is not "damages because of loss of use."  ACE Mot. at 26.  But the Court rejected that argument as well.  *See* Order at 7-8.  Neither argument raised the legal question on which the Court granted summary judgment.[2]

Because the parties had agreed to brief specific questions and to postpone damages issues to trial, and ACE therefore never raised any other issue, Target never discussed the legal position that the Court ultimately adopted.  Because it responded only to the arguments that ACE actually made, Target observed that damages are "based on" the lost

---

[2]     In a footnote in the portion of the Order containing that discussion, the Court stated that Target "concedes" that "the issue of [coverage for] consequential damages is not presented in this case."  Order 7 n.3.  But Target never made such a concession and the footnote does not identify any pleading in which the claimed concession was made.  It is possible, however, that the footnote was thinking of Target's Response in which it discussed cases that held that CGL policies covering damages "because of property value" also cover "causally related" economic loss and diminution in value.  *See* Dkt. No. 39 at 29-30 n.7.  But it was the issue of "loss of value" of the payment cards that Target stated "is not presented in this case" (*see id.*)—as the Court itself subsequently agreed, *see* Order 8—not "the issue of consequential damages."

use of property when they are "causally related" to that lost use, not necessarily when they occur during the time period for which property is temporarily unusable. *See* Dkt. No. 39 ("Target Resp.") at 27. The Court *accepted* Target's argument on that point. *See* Order 9 (rejecting ACE position that "loss of use" damages are limited to "rental value or other strictly time-based measures").

The parties argued the motion at some length on October 20, 2020, and the Court posed many questions to counsel, but none concerned the grounds on which the Court ultimately decided the motion.

Critically, because the ground upon which the Court granted summary judgment was (a) not an issue on which Target sought summary judgment and (b) was not a ground for summary judgment that ACE raised, Target accordingly did not submit evidence concerning the "value of the use" of payment cards when they were unimpaired, or how that value might compare to the damages that it seeks in this action. Moreover, to the extent that the Court was looking for a comparison between the amount of the loss Target incurred when it settled with the Issuing Banks and the "value of the use" of millions of payment cards that were compromised, such a showing would have been outside of the express scope of the issues to be addressed by the parties' cross motions for summary judgment. *See* Dkt. No. 20 at 7 (reserving questions as to the "amount of damages" for after early summary judgment motion practice).

It is thus no surprise that, in the Court's words, "the record is devoid of any allegation or evidence as to what the value of the *use* of the payment cards is, either to Target's customers or to the payment card companies" and that "Target has not

established a connection between the damages incurred for settling claims related to replacing the payment cards and the value of the use of those cards, either to the payment-card holders or issuers." Order 11. Those items were not the subject of the cross-motions and neither party briefed or argued them.

Had ACE raised this legal argument, or if the Court had notified Target of the possible ground for entering summary judgment *sua sponte* and had requested briefing on it, Target would of course have (1) addressed the issue; (2) submitted evidentiary support demonstrating such a "connection"; and (3) considered whether a request for further discovery under Rule 56(d) would be appropriate, as the ground upon which the Court granted summary judgment might raise factual issues beyond the purely legal issues that the parties agreed to and did brief in their cross-motions.

For these reasons, Target respectfully requests that the Court vacate its Order and the consequent judgment in this action and permit briefing and argument on the grounds not yet addressed by the parties, as well as permit Target to present evidence that its damages meet the legal standard articulated by the Court.

### B.   The Court's Summary Judgment Ruling was Based on a Manifest Error of Minnesota Law.

Separate and independent from the Rule 56(f)(2) issue discussed above, Target requests that the Court's Order be amended or altered under Rule 59(e) because it is based on a manifestly incorrect interpretation of Minnesota law on damages for "loss of use" as that term is used in a CGL policy. Minnesota law requires only that a policyholder demonstrate that the loss-of-use damages it seeks be "causally related' to the

physical damage to or lost use of the property at issue. *Concrete Units*, 363 N.W.2d at 757 (rejecting the argument that pure "diminution in value" is covered under post-1973 CGL policies but finding a potential for coverage for "claims [that are] … causally related to either (1) the lost use of the [grain] elevator, (2) the damaged reinforcing rods, or (3) the damage slip-forms"). The Minnesota Supreme Court imposed no further requirement in *Concrete Holdings* that those damages also have "some connection to the value of the use" of that tangible property when it was unimpaired (*i.e.*, before its use was lost), and no subsequent Minnesota decision has imposed such a requirement. Moreover, even assuming arguendo that such a requirement existed, the Court erred by holding that the damages Target paid for payment card replacement costs do not satisfy it.

### 1. The ACE Policies Do Not Provide For The Requirement Applied by the Court.

Under well-established Minnesota law, insurance coverage turns on the words that the insurer used in the insurance policy. *See Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). In interpreting the insurance policy language, wording that is "clear and unambiguous" will be read "according to plain, ordinary sense," while ambiguous terms must be construed "in favor of providing coverage to the insured." *Id.* at 704-05. At the same time, "policy words of inclusion will be broadly construed, and words of exclusion are narrowly considered," with the insurance policy language "interpreted liberally in favor of finding coverage." *Gen. Cas. Co. of Wisc. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009); *accord Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012)

(Minnesota law).  In short, courts applying Minnesota law must "avoid an interpretation that will forfeit the rights of the insured under the policy, unless such an intent is manifest in 'clear and unambiguous' language."  *Nathe Bros. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000) (citing *Sterling State Bank v. Va. Sur. Co.*, 173 N.W.2d 342, 346 (Minn. 1969)).

Accordingly, when an insurance policy provides coverage for amounts an insured must pay as damages "because of property damage," and the policy defines "property damage" to include "loss of use," the words "because of" must be given their plain meaning of "causally related,"[3] so that the policy covers "all damages which are causally related" to the "loss of use."  *Concrete Units*, 363 N.W.2d at 757; *see Westfield Ins. Co. v. Weis Builders*, 2004 WL 1630871, at *5, *8 (D. Minn. July 1, 2004) (damages for "suppressed rentals for, vacancies in, or concessions regarding units that were not damaged by water" covered as "damages because of" loss of use, because those categories of damages are "causally related" to property damage resulting from water leakage; amount of damages not considered in analysis of whether damages are "causally related"); *see also Reins. Ass'n of Minn. v. Timmer*, 641 N.W.2d 302, 314 (Minn. App. 2002) ("lost profits flowing from physical injury" are "sums for which [the insured] may be held liable by law because of … property damage"); *W. World Ins. Co. v. H.D. Eng'g*

---

[3]   *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 2502517 (2013) ("'because of' means 'based on' and … 'based on' indicates a but-for causal relationship"; also defining "because of" as "by reason of" or "on account of") (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007)).

*Design & Erection Co.* 419 N.W.2d 630, 633, 635 (Minn. App 1988) ("costs of clean-up, redesign and reconstruction" of collapsed steel decking are covered because they are "causally related" to property damage and "a direct result" of that damage).[4]

In its Order, however, the Court imposed an additional requirement on Target's claim for insurance coverage, not founded in Minnesota precedent:  Target not only had to show that the settlement was "causally related" to the underlying loss of use but it also needed to "establish[] a connection between the damages incurred for settling claims related to replacing the payment cards *and the value of the use of those cards.*"  Order 11 (emphasis added).  The Court identified no language in the ACE Policies imposing the proof requirement that the Court adopted in its Order, and no such language exists.

But neither the Court nor ACE can "rewrite the insurance contract of the parties" now that a claim has arisen.  *Sterling State Bank*, 173 N.W.2d at 346.  Yet, that is what the Court did by imposing an additional requirement on Target to obtain coverage, a requirement without support in the language of the ACE Policies.

## 2. Minnesota Law Does Not Impose the Requirement Applied by the Court.

Nor is there any Minnesota authority authorizing the Court's decision to impose requirements on Target not found in *Concrete Units*.  Despite a diligent search, Target has not identified a single Minnesota decision holding that a policyholder must present a

---

[4]     As the Court recognized, Target raised this point in its Response.  *See* Order 7-8, n.3.  The Court, however, appears to have overlooked the import of this language in the course of stating that Target "concedes" that "the issue of consequential damages is not presented in this case."  *Id.*  As is discussed in this memorandum at footnote 2 *supra*, Target did not make such a concession.

"fair approximate measure" of the value of the underlying property (before its use was impaired) to obtain insurance coverage for damages "based on" the loss of use of that property. In fact, as reflected in the Eighth Circuit's decision in *Eyeblaster*, discussed *infra*, Minnesota law recognizes that the cost of replacing tangible property that has permanently lost its use constitutes loss-of-use damages under CGL policy language identical to that at issue here. The Court's adoption of a legal standard that precludes coverage for such replacement costs is contrary to this Eighth Circuit decision and so represents a manifest error of law.

As a threshold issue, the Court cited two Minnesota decisions as "suggest[ing]" the requirement it ultimately imposed on Target—*Concrete Units* and *Judd*, *see* Order 10-11—but neither of those decisions expressed the principle articulated by the Court, let alone applied that requirement to the facts before it. Instead, both decisions merely followed the well-accepted "causally related" test when determining what damages fairly arose from the relevant "loss of use." *See Concrete Units*, 363 N.W.2d at 757 (insurer must pay all damages "causally related to an item of 'property damage'"); *Judd*, 367 N.W.2d at 608 (coverage turns on what damages are "based on or causally related to property damage").

This broad test is precisely why *Concrete Units* found coverage for four out of the six categories of damages that were claimed. The only categories that did not pass the "causally related" test were the contractor's claims for the profits that it would have earned by working on a different job had it not been required to repair the defective grain elevator, and for interest on sums it borrowed because it had not been fully paid for its

work on the elevator due to the defects.  *See Concrete Units*, 363 N.W.2d at 757.  But *critically*, the Minnesota Supreme Court's decision said nothing about the value of the unimpaired grain elevator.  The concept of the "value of the use" of the grain elevator while unimpaired was never broached, much less compared to the losses sought as an additional requirement to insurance coverage.  Instead, the *Concrete Units* court solely focused on the tenuous connection between the loss of use of the grain elevator and the profits that would have been earned by the contractor at a completely separate job that it turned down, and the interest paid on loans.  Neither is at issue in this case.  Target's claim presents a tight, logical connection between the loss of use of the payment cards, and the costs paid to replace the payment cards so that the Issuing Banks could use them again.

In addition to finding no support in Minnesota case law, the Court's holding cannot be reconciled with Eighth Circuit authority, *Eyeblaster Inc. v. Federal Insurance Co.*, 613 F.3d 797 (8th Cir. 2010).  In that case the Eighth Circuit held that a claim for the replacement cost of a computer whose operations had been permanently limited by a spyware attack could be covered as damages because of "loss of use of tangible property that is not physically injured."  *Eyeblaster*, 613 F.3d at 801-802.

Target has briefed at length why *Eyeblaster* squarely rejects each of the arguments asserted by ACE and requires a finding that—like the payment card replacement costs here—the cost of replacing tangible property that has permanently lost its full use constitutes loss-of-use damages under standard CGL policy language.  *See* Target Mem. 18-21, 29-31; Target Resp. 7-15.  Target will not repeat that lengthy discussion here, as

the Court did not disagree with Target's analysis.  Instead, the Court declined to follow *Eyeblaster* solely because that decision addressed "loss of use" coverage in the context of a CGL insurer's duty to defend, which the Court observed was "distinct" and "broader" duty than the duty to indemnify at issue in this action.  Order 6-7.

While the Court is of course correct that the duty to defend is broader than the duty to indemnify, that distinction is immaterial to the legal issue presented in this case because of the nature of the *Eyeblaster* holding and the nature of the insurance coverage dispute presented by this action.  Contrary to the Court's suggestion, the holding in *Eyeblaster* "necessarily" *does* mean that the "loss covered under the insurer's duty to defend in *Eyeblaster* is covered under ACE's duty to indemnify in this case."  Order 7. The reasoning of *Eyeblaster* compels a different result than that adopted by the Court on February 8, 2021.

As Target explained in its briefing, *see* Target Mem. 24; Target Resp. 13-14, the fact that *Eyeblaster* is a duty to defend decision is, for purposes of the present case, immaterial.  Target agrees, of course, that "some losses covered under a duty to defend"—i.e., defense costs—"fall outside of the narrower duty to indemnify."  Order 7. But that does not mean that the reasoning of a decision on the duty to defend is irrelevant to a duty to indemnify.

In some circumstances, an insurer might have a duty to defend but not a duty to indemnify.  This is because the duty to defend is based on what the underlying claimant *alleges*, while the duty to indemnify is based on what facts are eventually *established* as true.  For example, a claimant may allege facts that would be covered by the insurance

16

policy if proven (triggering the duty to defend), but the plaintiff may not ultimately prove those facts at trial (and so not trigger the duty to indemnify).

The duty to defend and the duty to indemnify thus do not entail fundamentally different inquiries; they are closely intertwined.  When a court finds that an insurer has a duty to defend, it has necessarily found that the underlying plaintiff alleged facts which, if ultimately proven, would in fact trigger the duty to indemnify:  "The duty to defend arises when a claim is brought against the insured alleging facts which, *if established, would support a recovery within the policy's coverage*."  *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co*., 496 N.W.2d 411, 415 (Minn. App. 1993) (emphasis added); *see also Economy Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824, 826 (Minn. 1989) (insurer owes a duty to defend because complaint alleges facts that "if proven, would … fall within the scope of … policy coverage"); *Haarstad v. Graff*, 506 N.W.2d 341, 343 (Minn. App. 1993) (same).  Conversely, when a court finds that an insurer is not obligated to defend, it has necessarily held that the facts alleged by the underlying plaintiff, *even if proven*, would not trigger the duty to indemnify.  *See Woida v. N. Star Mut. Ins. Co*., 306 N.W.2d 570, 574 (Minn. 1981) ("When it can be concluded as a matter of law that there is no basis upon which an insurer may be obligated to indemnify the insured, the insurer is relieved of its duty to defend.").

With this framework in mind, the Court erred in declining to apply *Eyeblaster*, which compels a finding of coverage.  In *Eyeblaster*, the Eighth Circuit held that the insurer had a duty to defend, based on the fact that the underlying plaintiff alleged damages because of "loss of use" by seeking the replacement cost of his computer, which

had been rendered "no longer usable" (but not physically injured) by the alleged

negligence of the policyholder:

> He thus argues that his computer is no longer usable, as he claims among
> his losses "the cost of his existing computer"…
>
> The plain meaning of tangible property includes computers, and the Sefton
> complaint alleges repeatedly the "loss of use" of his computer. We
> conclude that the allegations are within the scope of the General Liability
> policy.

*Eyeblaster*, 613 F.3d at 802.

In other words, by finding a duty to defend on the facts alleged, *Eyeblaster*

necessarily found that a claim for the replacement cost of property that had been rendered

permanently "no longer usable" would—if proven at trial in the underlying case—

constitute "loss of use" damages for which the insurer would be liable ***under the duty to***

***indemnify***.  *See St. Paul Fire & Marine Ins. Co.* 496 N.W.2d at 415.

With *Eyeblaster* back in the mix, the Court must grant summary judgment in favor

of Target because the Eighth Circuit's holding binds this Court.  The Issuing Banks

alleged damages because of "loss of use" by seeking the replacement cost of payment

cards, which had been rendered "no longer usable" (but not physically injured) by the

alleged negligence of Target.  Under *Eyeblaster*, a claim for the replacement cost of the

payment cards which had been rendered permanently no longer usable would—if

proven—constitute "loss of use" damages for which the insurer would be liable ***under***

***the duty to indemnify***.

In this context, where coverage exists for at least some portion of a settlement

amount, Minnesota law provides that the parties must then litigate the appropriate

allocation of the settlement amount as between covered and uncovered claims.  *See UnitedHealth Grp.*, 870 F.3d at 863 (describing standards for allocating settlement amount between covered and non-covered claims settled in the underlying action for purposes of insurance coverage).  This is a fact question, subject to fact and expert evidence.  *See id.*  If the Court were to grant summary judgment for Target, it would not resolve this case; it would simply allow the parties to move forward and address the question of the amount of the settlement that are appropriately allocated to loss of use damages.  That is precisely what the parties contemplated in their case management statement, and it is precisely what should happen here under the authority of *Eyeblaster*.

In sum, it was error for the Court to fail to apply *Eyeblaster* solely on the ground that reached its conclusion when deciding whether an insurer had a duty to defend.  That decision necessarily holds that the facts alleged would (if proven) trigger the duty to indemnify, the duty at issue in the present action.  As controlling Eighth Circuit precedent, this Court must consider and ultimately conform its ruling to *Eyeblaster*'s analysis of loss of use coverage under Minnesota law.[5]  When the reasoning of

---

[5]      *See Neidenbach v. Amica Mut. Ins. Co.*, 842 F.3d 560, 566 (8th Cir. 2016) ("'Absent an intervening opinion by a [state] court,' we are bound by a prior panel's interpretation of state law."); *see also Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (district courts are bound by federal circuit court's prior interpretation of state law); *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995) (same). Accordingly, to the extent that the district court read out-of-state opinions to treat such replacement costs differently, *see Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 430 F. Supp. 2d 989 (N.D. Cal. 2006) and *Vicor Corp. v. Vigilant Ins. Co*, 674 F.3d 1 (1st Cir. 2012), the Court must still apply the reasoning adopted by the Eighth Circuit when interpreting Minnesota law.

*Eyeblaster* is applied to this case, there can be no reasonable dispute that Target is entitled to coverage.  *See* Target Mem. 23-25; Target Resp. 10-14.

> **3.      Target's Losses are for Claims Causally Related to Lost Use of Payment Cards.**

Even if the Court were correct about the relationship between loss of use and the value of the loss of the use, Target's claim adequately satisfies this standard.  As Target has argued, there is a causal relationship between the claimed damages and the loss of use of payment cards, and that causal relationship satisfies the requirements of Minnesota law and the ACE Policy.  This causal relationship also satisfies the additional requirement that the Court imposed *sua sponte* in its Order.

Target demonstrated that there was a direct causal relationship between the loss of use of the payment cards and the Issuing Banks' claims against Target settled by Target. As Target set forth in its Motion, after the data breach, payment cards could no longer fully function, or function as intended, to provide secure access to compromised cardholder accounts.  *See* Target Mem. 25-26; Target Resp. 17-18, 20-21.  The Issuing Banks alleged that, as a result, they were forced to incur significant costs to replace those payment cards.  *See* Target Mem. 11; Lagatta Decl. Ex. E ¶¶ 85-86.  So when Target settled the Issuing Banks' claims against it for *card replacement costs*, it incurred losses "because of," "based on," and "arising out of" that loss of use.

This means that, even if the Court were correct in imposing its requirement of a connection to the value of loss of the use of the property, these facts would more than satisfy that requirement.  The cards were compromised and could not be used, so they

were replaced; that is, the Issuing Banks restored to themselves and to cardholders payment cards with the same functionality, the same usability, as the cards that had been issued before the data breach.

This *causal* relationship—*i.e.*, the replacement of unusable property with a usable equivalent—is exactly the type of causal relationship that Minnesota law recognizes is sufficient for damages to qualify as "because of … property damage."  For example, when the policyholder's alleged negligence results in permanent *physical injury* to a third party's tangible property (for example, negligently dropping and destroying a computer), the damages sought by the third party for the cost of replacing the property that was destroyed are unquestionably damages "because of … property damage."  *See, e.g.*, *Concrete Units*, 363 N.W.2d at 757 ("cost of replacing the metal reinforcing rods" damaged by policyholder's defective concrete was covered claim for "property damage").

There is no basis in Minnesota law for applying a different rule when the "loss of use" portion of the standard form CGL policy definition of "property damage" is at issue. In other words, when the policyholder's alleged negligence results in the permanent *loss of use* of a third party's tangible property (for example, negligently rendering a computer useless by uploading malware), the damages sought by the third party for the cost of replacing the useless property are no less damages "because of … property damage" than in an insurance claim in which the property had been physically injured.  The causal relationship in both hypotheticals is identical.

21

This is precisely the form of damages "because of … property damage" that Target paid when it settled the Issuing Banks' claims for card replacement costs. Target is not seeking insurance recovery on some far-flung theory of causation; for example, a claim—like the contractor's in *Concrete Units*—for lost profits on the theory that the substantial employee time that the Issuing Banks spent addressing and mitigating the harm caused by the "loss of use" of the payment cards could have instead been spent on revenue generating activities. In this action, Target seeks only the portion of the amount it paid to settle the Issuing Banks' claims for the cost of replacing payment cards so that they could once again be used. Minnesota law requires no closer causal connection between the damages sought by the underlying plaintiff and the "loss of use" of the property at issue, and so—even were the Court's interpretation of Minnesota law to apply—Target would still be entitled to coverage under the ACE Policies.

*       *       *       *

When the Court required Target to establish the "value of the use" of payment cards and to demonstrate that its damages for settling claims for card replacement costs were "based on" that value, the Court committed a manifest error of law. No Minnesota court has ever applied the requirement the Court formulated in its Order; it has no basis in the language of the ACE Policies. And even were that interpretation consistent with Minnesota law, Target's showing of causation would meet that standard as well.

## V.   CONCLUSION

For the foregoing reasons, the Court should vacate its Order and the consequent entry of judgment in this action, and either further briefing and argument to address

grounds for summary judgment not raised by the parties in the briefing on their cross-motions for summary judgment, or else alter or amend the judgment and grant summary judgment for Target.  In another alternative, Target requests that the Court alter or amend the judgment to deny both Target and ACE's motions for summary judgment, which would permit the case to move forward into discovery and, ultimately, to trial.

Dated:  March 8, 2021                          Respectfully submitted,

                                               Covington & Burling LLP

                                               */s/  Gretchen Hoff Varner*
                                               David B. Goodwin (pro hac vice)
                                               Gretchen Hoff Varner (pro hac vice)
                                               COVINGTON & BURLING LLP
                                               Salesforce Tower
                                               415 Mission Street, Suite 5400
                                               San Francisco, CA 94105-2533
                                               Tel.:  (415) 591-6000
                                               Fax:  (415) 591-6091
                                               Email:  dgoodwin@cov.com
                                                       ghoffvarner@cov.com


                                               John B. Lunseth II (#065341)
                                               Mira Vats-Fournier (#0399692)
                                               TAFT STETTINIUS & HOLLISTER P.A.
                                               2200 IDS Center
                                               80 South Eighth Street
                                               Minneapolis, MN 55402
                                               Phone:  612-977-8400
                                               Fax:  612-977-8650
                                               Email:  jlunseth@taftlaw.com
                                                       mvats-fournier@taftlaw.com

                                               *Attorneys for Plaintiff*
                                               *Target Corporation*