UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, | Case No. 19-cv-2916 (WMW/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| ACE American Insurance Company and ACE Property & Casualty Insurance Co., | |
| Defendants. | |

Before the Court is Plaintiff Target Corporation's (Target) motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 56(f)(2) and 59(e). (Dkt. 51.) Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co. (collectively, ACE) oppose the motion. For the reasons addressed below, the Court grants Target's motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), vacates the Court's February 8, 2021 Order, denies ACE's motion for summary judgment, and grants Target's motion for partial summary judgment.

## BACKGROUND

In 2013, Target discovered that a hacker stole payment card data and personal contact information of individuals with Target payment cards (Data Breach). Because the Data Breach compromised the payment cards, the banks that issued these payment cards (Issuing Banks) cancelled the payment cards and issued replacement payment cards, incurring costs for which the Issuing Banks sought compensation from Target. Target settled the Issuing Banks' claims.

In this case, Target alleges that under ACE's general liability policies (the Policies), ACE is obligated to indemnify Target with respect to the settlements with the Issuing Banks. The Policies provide coverage for losses resulting from property damage, including "loss of use of tangible property that is not physically injured." The Policies apply to property damage only if the "property damage" is caused by an "occurrence." Target provided ACE with notice and a detailed accounting of the loss. ACE denied coverage as to Target's claim and refused to compensate Target. Target filed this lawsuit against ACE in November 2019, alleging breach of contract and seeking declaratory and compensatory damages.

Target moved for partial summary judgment, seeking a declaration that the Policies covered the costs Target incurred settling the claims for replacement of the payment cards. Target argued that ACE's refusal to provide coverage for these claims lacked any basis in either the Policies' language or Minnesota law. ACE countered that Target failed to meet its burden of establishing the elements required to trigger coverage—specifically, that the settlement satisfied Target's legal obligation to pay "damages because of loss of use of tangible property" caused by an "occurrence." On February 8, 2021, this Court denied Target's motion for partial summary judgment and granted ACE's motion for summary judgment. On March 8, 2021, Target filed the pending motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 56(f)(2) and 59(e), contending that the Court's February 8, 2021 Order contains an error of law.

## ANALYSIS

A party may file a "motion to alter or amend a judgment" within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). A motion to alter or amend a judgment is for the limited purpose of correcting errors of law or fact or presenting newly discovered evidence. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). Rule 59(e) is not a means "to introduce new evidence, tender new legal theories, or raise arguments [that] could have been offered or raised prior to entry of judgment." *Id.* A district court has broad discretion when determining whether to grant a motion to alter or amend. *Id.* But "reconsideration of a judgment after its entry is an extraordinary remedy [that] should be used sparingly." 11 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2810.1 (3d ed. Apr. 2021 update). Target maintains that the Court committed an error of law by misconstruing the duty to indemnify and holding that the inoperability of property that is not physically damaged does not constitute loss of use.

**I.    Coverage**

The parties disagree as to whether Target's settlement of the Issuing Banks' claims is eligible for coverage under the terms of the Policies.

The interpretation of an insurance policy is governed by state law. *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010); *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). General principles of contract interpretation apply to insurance policies. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). The interpretation of insurance policy language is a

question of law appropriate for summary judgment, unless an ambiguity exists. *See Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997); *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990). A district court interprets an insurance policy as a whole and gives unambiguous language its plain and ordinary meaning. *Midwest Fam. Mut. Ins. Co.*, 831 N.W.2d at 636. If an ambiguity exits, the interpretation of the contract presents a question of fact that cannot be decided on a motion for summary judgment. *Michalski v. Bank of Am. Ariz.*, 66 F.3d 993, 996 (8th Cir. 1995). "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

The parties agree that, under the terms of the Policies, to establish coverage for the cost of replacing the payment cards, Target must satisfy three requirements: (1) the losses must have been the result of an "occurrence"; (2) the "occurrence" must have resulted in the "loss of use" of the property; and (3) the property lacking use must have been "tangible property that is not physically injured." The parties dispute whether Target satisfied all three requirements for coverage. The Court previously found that Target could not demonstrate loss of use. In light of Target's motion to alter or amend the judgment, the Court addresses in turn each of the three requirements for coverage.

### A. An Occurrence

The parties dispute whether, under the terms of the Policies, the Data Breach and resulting inoperability of the payment cards were an "occurrence" under the terms of the Policy.

The Policies define an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policies do not define the term "accident." "If undefined terms in an insurance policy are reasonably susceptible to more than one interpretation, the terms must be interpreted liberally in favor of finding coverage." *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 579 (Minn. 2009). The word accident "has a generally understood meaning." *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 478 (Minn. 1992) (interpreting an automobile insurance policy). An accident is "a happening that is unexpected and unintended." *Id.*; *accord. Hauenstein v. Saint Paul-Mercury Indem. Co.*, 65 N.W.2d 122, 126 (1954) (defining "accident," in the context of an accident policy, as "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause"). Minnesota courts have "established that the word accident encompasses both the acts of the insured and the consequences of the insured's acts." *Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001).

The parties do not dispute that Target neither expected nor intended the Data Breach. The Data Breach was an accident, which is an "occurrence" within the terms of the Policies. Under Minnesota law, an accident includes the acts of the insured and "the consequences of the insured's acts." *Id*. The cancellation and resulting inoperability of the payment cards were the consequences of Target's discovery of the accident, the Data Breach. For this reason, the Court concludes that the inoperability of the payment cards—necessitated by the Data Breach—is an "occurrence" within the terms of the Policies.

5

### B. Loss of Use

Under the Policies, ACE must indemnify Target for coverable property damage resulting from an occurrence. The Policies define property damage, in relevant part, as "loss of use" of "tangible property that is not physically injured." The parties dispute what constitutes "loss of use," a term that is not defined in the Policies.

Neither party has presented controlling legal authority squarely addressing whether loss of use includes the inoperability of payment cards following a data breach. The Court's research similarly has not identified legal authority directly on point. But, Target relies on a factually analogous loss of use at issue in *Eyeblaster, Inc. v. Fed. Ins. Co.*, 613 F.3d 797 (8th Cir. 2010). Eyeblaster, an online company, sued its insurer for coverage when a consumer sued Eyeblaster after Eyeblaster's spyware infected the consumer's computer. *Eyeblaster*, 613 F.3d at 802. Although not physically damaged, the infected computer "could not operate," "froze up," and would "stop running or operate so slowly that it . . . in essence [became] inoperable." *Id.* (internal quotation marks omitted). Eyeblaster's general liability insurance policy expressly provided coverage for property damage including "loss of use of tangible property that is not physically injured." *Id.* at 801–02 (internal quotation marks omitted). The United States Court of Appeals for the Eighth Circuit held that the consumer's claims against Eyeblaster were within the scope of the insurance policy, as "[t]he plain meaning of tangible property includes computers, and

6

the [consumer's] complaint alleges repeatedly the 'loss of use' of his computer." *Id.* at 802.[1]

Here, the Data Breach compromised Target's payment cards. By compromising the payment information listed on and associated with the payment cards, the Data Breach caused the Issuing Banks to cancel the compromised payment cards and issue replacement payment cards. Cancellation of the compromised payment cards rendered the payment cards inoperable. The payment cards lost their use. Although the compromised payment cards still existed, like the consumer's computer in *Eyeblaster*, they could no longer serve their function. *See id.* The expense that Target incurred to settle claims brought by the Issuing Banks for the costs of replacing the compromised payment cards was a cost incurred due to the loss of use of the payment cards.[2] As such, Target meets the second requirement for establishing coverage pursuant to the Policies.

---

[1] ACE contends that other courts have found that data breaches do not result in the "loss of use" of payment cards and argues that this Court should do the same, relying primarily on *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008). ACE's argument is unpersuasive for several reasons. First, *BJ's Wholesale* is a case from the United States Court of Appeals for the Third Circuit and is, therefore, at most only persuasive authority for this Court. Second, the claims for compensation for the cost of replacing payment cards brought in *BJ's Wholesale* were alleged pursuant to a theory of negligence—not the breach of a specific term in a liability contract. *BJ's Wholesale*, 533 F.3d at 179–80. Third, the injured party in *BJ's Wholesale* sought to prove "physical damage" to the cards that were compromised in the data breach, unlike here, where Target asserts a claim related to property that was *not* physically injured. *Id.* at 179. For these reasons, *BJ's Wholesale* is distinguishable and unpersuasive.

[2] The parties and this Court's prior order discuss the connection that must exist between the loss of use of the payment cards and the settlement of the Issuing Banks' claims against Target. The Court need not repeat that analysis here as Minnesota case law clearly states that the insured's claims "must be causally related to . . . the lost use." *Federated Mut. Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d 751, 757 (Minn. 1985).

### C. Tangible Property that is not Physically Injured

To establish coverage under the Policies, the claim must be for property damage to "tangible property that is not physically injured." The Policies expressly exclude electronic data from the definition of tangible property. Electronic data is defined as "information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment." ACE contends that Target is actually seeking compensation for the missing data, not the payment cards. But the parties do not dispute that the payment cards, the damaged property for which Target seeks coverage, are "tangible property that is not physically injured." And it is the use of the payment cards, not the use of electronic data, that was lost. Because the payment cards are tangible property *and* the payment cards are not physically injured, Target has met the third requirement to establish a basis for its claim for coverage.

The Court erred in its prior judgment. Because Target's insurance claim for the loss of use of the payment cards compromised in the Data Breach is covered under the terms of the Policies, the Court must determine whether ACE is obligated to indemnify Target's loss.

---

Target's insurance claim is for the expense Target incurred settling the Issuing Banks' legal claims demanding compensation for the cost of replacing the payment cards that lost their use following the Data Breach. There is a sufficient causal connection between Target's claim for coverage and the payment cards' loss of use so as to satisfy the causation requirement of Minnesota law.

8

## II. Duty to Indemnify

The parties disagree as to whether the expenses Target incurred settling the Issuing Banks' claims for compensation for payment-card replacement are covered by ACE's duty to indemnify. This Court previously found that Target's claim was not covered because Target could not demonstrate that its claim was related to the loss of use of tangible property that was not physically injured. Target argues that this finding was an error of law that should be altered pursuant to Federal Rule of Civil Procedure 59(e). The Court agrees. The Court must, therefore, determine whether ACE is obligated to indemnify Target's loss.

The interpretation of an insurance policy, including whether a legal duty to defend or indemnify exists, is governed by state law. *See Progressive*, 608 F.3d at 390; *Wolters*, 831 N.W.2d at 636. As addressed in this Court's February 8, 2021 Order, an insurer's duty to defend is both distinct from and broader than an insurer's duty to indemnify the insured. *Eyeblaster*, 613 F.3d at 801. "The holder of a liability insurance policy has a contractual right to payment—and an insurer the corresponding duty to indemnify the insured—when it is established that the insured's liability to a third party is within the scope of the insurance policy." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012). Although "an insurer has a duty to indemnify when its insured is found liable for a third-party claim within the terms of the liability insurance policy, . . . an insurer has no duty to indemnify when its insured is found liable for a third-party claim that is outside the policy's scope." *Id.* If liability and coverage are established, the insurer is obligated to indemnify the insured. As addressed above, the Court concludes that the

cost of replacing the payment cards is covered under the terms of the Policies. ACE, therefore, is obligated to indemnify Target for Target's settlement with the Issuing Banks for the costs of replacing the payment cards.

The Court now grants Target's motion to alter or amend the judgment and corrects the error of law in its February 8, 2021 Order pursuant to Federal Rule of Civil Procedure 59(e). In doing so, the Court vacates the February 8, 2021 Order, denies ACE's motion for summary judgment and grants Target's motion for partial summary judgment.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Target Corporation's motion to alter or amend the judgment, (Dkt. 51), is **GRANTED**.

2. The February 8, 2021 Order and Judgment, (Dkts. 49, 50), are **VACATED**.

3. Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co.'s motion for summary judgment, (Dkt. 34), is **DENIED**.

4. Plaintiff Target Corporation's motion for partial summary judgment, (Dkt. 27), is **GRANTED**.

5. The Court **DECLARES** that:

    a. the Issuing Banks' payment card claims against Target are covered under the Policies;

    b. Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co. are obligated to indemnify Target Corporation for

      settlement payments relating to the Issuing Banks' payment card claims that were incurred within the Policies' aggregate coverage layers; and

c. the amount of the covered loss is to be determined at trial.

Dated: March 22, 2022　　　　　　　　　　　　　　s/Wilhelmina M. Wright　
　　　　　　　　　　　　　　　　　　　　　　　　Wilhelmina M. Wright
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge