UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, a Minnesota corporation,<br><br>        Plaintiff,<br>v.<br><br>ACE American Insurance Company, a Pennsylvania corporation and<br>ACE Property & Casualty Insurance Co., a Pennsylvania corporation,<br><br>        Defendants. | Court File No. 0:19-CV-2916 (WMW/DTS)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO AMEND ORDER TO CERTIFY FOR APPEAL** |

Defendants ACE American Insurance Company and ACE Property & Casualty Insurance Co. (ACE), respectfully move this Court to amend its Amended Order and Opinion dated March 22, 2022, (the Order) to include a certification allowing an interlocutory appeal under 28 U.S.C. § 1292(b). The Court's order on the parties' cross-motions decided the primary issue presented by this case: where banks chose to cancel and replace payment cards after the card data was compromised in a data breach, are the costs to replace those cards damages because of "property damage" caused by an "occurrence" and therefore covered under the ACE insurance policies. In finding coverage for Target, the Court reversed its own previous decision concluding the opposite.

The issue decided on summary judgment is an issue of law central to this case, and the parties and the Court have all recognized that judicial economy is best served in this

case by determining the legal issues before undertaking discovery. No court has previously addressed the exact issue addressed by the Order before, but competing case law demonstrates a substantial difference of opinion governing the issue, as evidenced by Court's own reversal of its original order. Authorizing appellate review on an interlocutory basis will materially advance the ultimate termination of this action. Declining certification will unnecessarily delay review of this dispositive issue, virtually ensuring significant time and expense to the Court and parties to conduct additional discovery and trial, and risking substantial waste and unnecessary proceedings if the Eighth Circuit later reverses. But certifying this case to permit immediate appeal under section 1292(b) will present a controlling question of law on which there is substantial ground for difference of opinion to the Eighth Circuit for resolution, materially advancing the ultimate termination of this litigation.

In the event this Court grants the motion to certify the order for appeal, Defendants also move to stay all proceedings in this Court until the Eighth Circuit decides its request for an interlocutory appeal, and, if granted, until such time as the Court of Appeals issues its mandate following the appeal. The advantage of potentially avoiding unnecessary litigation expense and utilization of court resources through early appeal would be fully realized only if the proceedings before this Court were held in abeyance.

## **STATEMENT OF FACTS**

This is an insurance-coverage dispute involving insurance policies ACE issued to Plaintiff Target Corporation for the February 1, 2013 to February 1, 2014 policy period. In November and December 2013, hackers breached Target's electronic network, and gained

access to payment information for millions of customers' credit cards. The financial institutions that issued the credit cards cancelled the cards to prevent the hackers from using the payment information contained in the cards' data. As a result of this data breach, Target was sued by the Issuing Banks. Target ultimately settled the Issuing Banks' lawsuits, agreeing to pay $58 million to settle their claims. Target also asserts that it settled claims asserted by several major credit card brands for $80 million.

In this case, Target alleges that ACE is obligated to indemnify Target for the settlement amounts because they include claims for the costs associated with replacing the payment cards. But the general liability policies issued by ACE do not provide coverage unless Target proves that the losses are for "property damage," which includes "loss of use of tangible property that is not physically injured." Target must also prove that the alleged "property damage" was caused by an "occurrence."

Given the nature of the claims, the parties and the Court agreed that it would be most efficient to decide the purely legal coverage issue—whether ACE may owe any coverage for the underlying settlements—before any other factual issues are addressed or further discovery is conducted. The parties brought early cross motions for summary judgment as to whether the Policies covered the costs Target incurred settling the claims for replacement of the payment cards. Target argued that the data breach was an occurrence and that the payment cards could not be used after the data breach. Target asserted that, as a result, the costs associated with the replacement of the payment cards were "property damage" caused by an occurrence, and were covered under the ACE policies. ACE countered that Target's argument glosses over the true facts because (1) the data breach

did not cause any loss of use of the payment cards; and (2) replacement of the payment cards were not damages for any arguable loss of use. As a result, ACE asserted that Target failed to meet its burden of establishing the elements required to trigger coverage—specifically, that the settlement satisfied Target's legal obligation to pay "damages because of loss of use of tangible property" caused by an "occurrence." On February 8, 2021, this Court agreed with ACE, denying Target's motion for partial summary judgment and granting ACE's motion for summary judgment. The Court held "that the connection between the damages claimed and the loss of use of the payment cards is insufficiently direct and, therefore, the damages claimed are not loss-of-use damages covered under the Policies." (Doc. 49, p. 12).

On March 8, 2021, Target filed a motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 56(f)(2) and 59(e), contending that the Court's February 8, 2021 Order contained an error of law. A year later, on March 22, 2022, the Court granted Target's motion, reversing its earlier decision. In diametric opposition to its original order, the Court held that the data breach was an "occurrence," and that the costs to replace the payment cards were damages because of loss of use and were covered under the ACE policies.

## **ARGUMENT**

Under 28 U.S.C. § 1292(b), interlocutory appeals of "controlling questions of law" are permitted when certified by the District Court and when discretionary review is accepted by the Court of Appeals. Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order; Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Id.* That is, to certify an order for interlocutory review, the Court must first determine that: (1) the order involves a "controlling question of law"; (2) there is "a substantial ground for difference of opinion"; and (3) certification will "materially advance the ultimate termination of the litigation." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994) (quoting *Paschall v. Kan. City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979)). The Eighth Circuit has held that "[p]ermission to allow interlocutory appeals should thus be granted sparingly and with discrimination," where such appeals "'might avoid protracted and expensive litigation. . . . [and not] merely . . . review of difficult rulings in hard cases." *Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *United States Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir. 1966)).

Here, the Court's order squarely falls within the criteria for certification for an interlocutory appeal. First, the Order involves "controlling questions of law" because it decided whether Target's settlement payments are covered under ACE's policies. *United Fin. Cas. Co. v. Nelson,* 109 F.Supp.3d 1085, 1089 (D. Minn. 2015) (recognizing insurance

5

coverage issues are matters of law). Second, there is "a substantial ground for difference of opinion" on the issues; this is an issue of first impression in the Eighth Circuit, and indeed, the Court reconsidered and reversed its original order that entered judgment for ACE based on cases considering similar questions and reaching different conclusions. And third, certification will "materially advance the ultimate termination of the litigation," because an appellate reversal would dispose of Target's claims in their entirety and would obviate the need for extensive, wasteful, and unnecessary proceedings on damages issue. ACE requests certification of the Order pursuant to 28 U.S.C. § 1292(b) and a corresponding stay of proceedings before this Court pending the outcome of the interlocutory appeal.

**I.      The Order concerns a controlling question of law.**

Under 28 U.S.C. § 1292(b), a question of law is "controlling" if reversal of the Order could materially affect the outcome of the litigation. In order to be a "controlling question of law," the movant must show that the legal question is not a "matter for the discretion of the trial court." *Nix*, 43 F.3d at 377 (quoting *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096–97 (5th Cir. 1970), *cert. denied*, 401 U.S. 974 (1971)). The degree of discretion granted to the trial court on a legal question is determined by the standard of review adopted by the appellate court for that legal question. *Id*. Where the legal question at issue rests upon an interpretation of an insurance policy under state law, the Eighth Circuit reviews the district court's interpretation de novo. *Hanig v. City of Winner, S.D.*, 527 F.3d 674, 676 (8th Cir. 2008). Issues reviewed with a de novo standard are generally outside the discretion of the

trial court, *see Nix*, 43 F.3d at 377 n.4, therefore a decision interpreting an insurance policy generally presents a "controlling question of law."

Here, the Order presents legal questions that make this case appropriate for an interlocutory appeal. The Court interpreted ACE's insurance policies and ruled that the costs to replace the payment cards were damages due to loss of use of tangible property and were covered under the ACE Policies. The Court's decision involved a question of law that the Eighth Circuit will review de novo. *3M Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 858 F.3d 561, 565 (8th Cir. 2017). Because this question of policy interpretation is not a matter for the discretion of this Court, the first element of the section 1292(b) standard is satisfied.

## II. Existing case law demonstrates substantial grounds for a difference of opinion on the coverage issue presented here.

Under section 1292(b), courts must determine if a "substantial ground for difference of opinion" exists. *Nix*, 43 F.3d at 377. Determining that a "substantial difference of opinion" exists on a question of law requires a finding that "a sufficient number of conflicting and contradictory opinions" exist on the question. *Nix*, 43 F.3d at 378. Where the question of law arises out of state law, the "substantial difference of opinion" must exist on this question between this court and other federal or state courts. *Union Cnty., Iowa*, 525 F.3d at 646. Here, the Order decided legal issues for which there is a substantial difference of opinion.

At the outset, this Court has acknowledged in the Order that there is no Eighth Circuit authority "squarely addressing whether loss of use includes the inoperability of

7

payment cards following a data breach." (Order p. 6). In reaching its conclusion that underlying settlements involved covered claims for property damage caused by an occurrence, the Court primarily relied on the Eighth Circuit decision in *Eyeblaster, Inc. v. Fed. Ins. Co.*, 613 F.3d 797, 802 (8th Cir. 2010), a factually distinguishable case that analyzed whether the inoperability of a computer due to spyware constituted "property damage" for loss of use of tangible property. In *Eyeblaster*, the underlying complaint that alleged that the plaintiff's computer was infected with spyware after the plaintiff visited Eyeblaster's website, which caused the computer to crash and become useless. The *Eyeblaster* Court held that, because the complaint alleged that the plaintiff could not use his computer due to the spyware infection, the complaint alleged "loss of use" of the computer, and the insurer had a duty to defend its insured, a broader duty than the duty of indemnification being decided here. Here, the Court relied on *Eyeblaster* and concluded that the Issuing Banks' claims for the costs to replace the payment cards were covered under the policy because those claims involved the loss of use of the payment cards as a result of the Data Breach.

The Court rejected ACE's arguments, which distinguished *Eyeblaster* and pointed to decisions from other federal courts which held that a data breach does not cause "property damage" to payment cards where the payment cards could still be used for their intended purpose after the data breach. Two other federal courts have held that a data breach that compromises the confidential data encoded on a payment card does not result in property damage to the payment card. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180-81 (3d Cir. 2008); *Camp's Grocery, Inc. v. State Farm Fire & Cas. Co.*,

2016 WL 6217161 (N.D. Ala. Oct. 25, 2016). The *Camp Grocery* Court and *BJ's Wholesale* Court both recognized that payment cards do not lose their usefulness after a data breach. The payment cards at issue in those cases, like the ones at issue here, can still be used to make payments. The issue is not whether they could have been *used* by the consumer, but instead whether continued use of the cards might have caused further damage to the Issuing Banks and credit card companies because their continued use might allow the hackers to use the stolen data.

While no court has squarely addressed the issues presented by this case, the Court's application of the *Eyeblaster* decision on one hand, and other federal courts' holdings in the *BJ's Wholesale* and *Camp's Grocery* decisions on the other, demonstrate two competing bodies of case law that could be applied to reach different conclusions in this case. An interlocutory appeal would resolve this conflict and clarify whether a data breach, which compromises the *data* encrypted on a payment card, causes the loss of use of the payment card itself, even where the data breach itself caused no loss of function of the payment cards.. If the Eighth Circuit follows the reasoning of the *BJ's Wholesale* and *Camp Grocery* cases, Target's claims for recovery of their settlement payments necessarily fail.

**III.  Granting an interlocutory appeal from the Order will materially advance the ultimate termination of the litigation.**

An immediate appeal is appropriate under section 1292(b) if certification will "materially advance the ultimate termination of the litigation." *Nix*, 43 F.3d at 377. The "termination of litigation factor" applies where the appeal is made at an early point in the litigation, and upon reversal, the litigation would end. *McCardle v. Mitchell Sch. Dist.*,

9

No. 03-4092, 2005 WL 1532597, at *1 (D.S.D. June 29, 2005) (citing *Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J. 1993)); *see also United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959) (noting that section 1292(b) was intended to provide appellate relief in early stages of litigation if such relief would end the lawsuit).

Here, interlocutory appeal is appropriate given the early stage in the litigation. Magistrate Judge Schultz recognized that the legal issues presented by the cross-motions for summary judgment should be decided before the parties conducted discovery regarding the claimed damages. (Doc. 24, 26). The parties likewise agreed that the central issue here—whether the ACE policy provides coverage for Target's claimed losses—is a question of law amenable to early resolution. (Doc. 20 p. 7 § 4). If the Eighth Circuit concludes that Target's insurance claims do not seek to recover damages for loss of use of the payments cards that was caused by an occurrence, its claims will be dismissed and this matter will be resolved in its entirety. The same could result from an appeal at the conclusion of litigation, but the time and expense to the Court and the parties will be significant.

## **CONCLUSION**

For the foregoing reasons, ACE requests that the Court amend its March 22, 2022 Order to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b). ACE also requests that this case be stayed if the Eighth Circuit accepts the interlocutory appeal, so that the parties and the Court do not expend time and resources in the event that the decision on the motions for summary judgment is reversed on appeal.

Respectfully submitted,

Dated: April 21, 2022                        *s/ Charles E. Spevacek*
Charles E. Spevacek (#126044)
William M. Hart (#150526)
**Meagher & Geer, P.L.L.P**
33 South Sixth Street, Suite 4400
Minneapolis, Minnesota 55402
(612) 338-0661
(612) 338-8384 Fax
cspevacek@meagher.com
whart@meagher.com
*Attorneys for ACE American Insurance Company and ACE Property & Casualty Insurance Company*